# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI-DADE DIVISION

### Case No. 20-cv-22957

| | |
|---|---|
| SCANZ TECHNOLOGIES, INC., fka EQUITYFEED CORPORATION, A Canadian (Quebec) Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> JEWMON ENTERPRISES, LLC, a Florida limited liability corporation; TIMOTHY SYKES, an individual; ZACHARY WESTPHAL, an individual; TIMOTHY BOHEN, an individual; MILLIONAIRE PUBLISHING, LLC, a Florida limited liability corporation; MILLIONAIRE PUBLISHING, LLC, a Colorado limited liability corporation; MILLIONAIRE MEDIA, LLC, a Florida limited liability corporation; and STOCKSTOTRADE.COM INC., a Delaware corporation, <br><br> Defendants. | **JURY TRIAL DEMANDED** <br><br> [INJUNCTIVE RELIEF DEMANDED] |

## COMPLAINT

Plaintiff Scanz Technologies, Inc., fka EquityFeed Corporation, a Canadian (Quebec) Corporation ("Scanz"), hereby files this Complaint against defendants Jewmon Enterprises, LLC ("Jewmon"), Timothy Sykes, an individual ("Sykes"),  Zachary Westphal, an individual ("Westphal"), Timothy Bohen, an individual ("Bohen"), Millionaire Publishing, LLC, a Florida and Colorado limited liability corporation ("Millionaire Publishing"), Millionaire Media, LLC, a Florida limited liability corporation ("Millionaire Media") and StocksToTrade.com Inc., a Delaware corporation ("StocksToTrade"), and claims and alleges as follows:

1

## THE PARTIES

*A. Plaintiff*

1.      Scanz is a corporation organized and existing under the laws of Quebec, Canada with its principal place of business located in Quebec, Canada.

2.      Scanz is in the business of developing, marketing, offering to sell, distributing and selling digital technology-based solutions and platforms utilized by constituents of the securities industry, including consumers and members of the general public engaged in analyst and for-profit trading activities involving and within the public capital markets. Scanz' business is promoted nationally and internationally, including within both the United States and this Judicial District. The business products owned by Scanz are identified throughout this Complaint and are referred to in this Complaint as "the Scanz Assets;" and the foundation and proprietary basis of the Scanz Assets involve numerous technological and device-oriented trade secrets as that term is defined under state and federal law, and these trade secrets are also identified throughout this Complaint and are referred to in this Complaint as "Scanz Trade Secrets."

3.      For nearly 20 years, Scanz has been the industry leader in scanning technology used by traders and other similar constituents of the securities industry involving the public capital markets, initially the OTC micro-cap markets and later in all U.S. capital markets where securities trade. Scanz' unique proprietary technologies have been recognized by scores of loyal clients who have utilized the Scanz technologies and products technology to garner significant trading profits for years, some for over a decade.  And the Scanz business model and valuable technology have both been recognized by leading industry publications as being of significant efficacy.

*B. Defendants*

4.      Defendant Jewmon is a limited liability company organized and existing under the laws of the State of Florida with its last principal place of business having been reported to officials in Florida as being located at 80 SW 8th St., Miami, Florida 33130.  During the period referenced in this Complaint, Jewmon has also utilized and reported its business as being also located at 110 Washington Avenue, Miami Beach, Florida 33139.

5.      Defendant Sykes is an individual who is one of the two members of Jewmon and resides in South Florida.

6.      Defendant Westphal is an individual who is the other member of Jewmon and resides in both California and Utah.  Westphal does significant business in Florida and engaged in the conspiracy described in this Complaint in Florida.

7.      Defendant Bohen is an individual who alleges that he is a "part-time trader who makes full-time income from trading" but is actually an agent in fact for all defendants named in this Complaint.  Bohen resides in Minnesota and does significant business ties to South Florida and engaged in the conspiracy described in this Complaint in Florida.

8.      Defendant Millionaire Publishing is a limited liability company organized under the laws of the State of Florida and maintains what it refers to as a "branch" that exists as a purportedly separate entity using the exact same trade name organized under the laws of the State of Colorado. Millionaire Publishing reports its last principal place of business as being located at 80 SW 8th St., Miami, FL 33130, and another location identified by it as existing at 110 Washington Avenue, Miami Beach, Florida 33139.

9.     Defendant Millionaire Media is a limited liability company organized under the laws of the State of Florida with its last principal place of business having been reported to officials in Florida as being located at 80 SW 8th St., Miami, FL 33130.

10.    At all times material to the allegations in this Complaint, defendant StocksToTrade -- pursuant to the wrongful intentions of Timothy Sykes and his co-conspirators identified throughout this Complaint -- has undergone numerous iterations of incorporation, registration and domicile in order to hide and camouflage its (and the defendants') theft and pirating of assets from Scanz as alleged throughout this Complaint.  These include registrations under the laws of California, Utah and Delaware and also include the reporting of registered offices in each such jurisdiction, as well as holding offices within the State of Florida.  The locations of StocksToTrade includes each of the offices for Jewmon and Millionaire Publishing and Millionaire Media set forth above as well as an office located at 135 S. State College Boulevard, Brea, California 92821.

11.    Defendants Sykes, Westphal and Bohen actively participated in, controlled and benefited from the tortious conduct of Jewmon, Millionaire Publishing, Millionaire Media and StocksToTrade as alleged in this Complaint, acting at all times with malice and in reckless disregard for Scanz's legal rights.

12.    Defendants, and each of them, are involved in many enterprises including, without limitation, the business of developing, marketing, offering to sell, distributing and selling digital technology-based solutions and platforms utilized by constituents of the securities industry, including consumers and members of the general public engaged in analyst and for-profit trading activities involving and within the public capital markets.

13.    In connection with their activities, the Defendants have engaged in a civil conspiracy as more fully set forth in this Complaint to conduct their business enterprises using the Scanz Assets

and Scanz Trade Secrets which they illegally stole from Scanz for profit, with malice and in reckless disregard for Scanz's legal rights.

14.   At all times relevant and material to the allegations in this Complaint, defendants JewMon, Millionaire Publishing, Millionaire Media and StockstoTrade were each the alter ego of Sykes, who dominated and controlled the affairs of JewMon, Millionaire Publishing,  Millionaire Media and StockstoTrade to the extent that the separate existence of these entities was and is in fact non-existent.  With the assistance of defendants Westphal and Bohen, Sykes has been able to perpetuate the fraud of a separate existence for each of these entities though the defendants, and each of them, operated each of the entities by disregarding their separateness and otherwise commingling and confusing their assets, properties and business affairs.

15.   In engaging in the wrongful conduct alleged in this Complaint, defendants Sykes, Westphal and Bohen acted in concert with one another to intentionally and willfully injure Scanz as alleged herein, conducting themselves as joint venturers with respect to the theft of the Scanz Assets and the Scanz Trade Secrets as well as the additional misappropriations and other misconduct alleged herein.

## JURISDICTION AND VENUE

16.   This Action arises under Acts of Congress relating to: (a) misappropriation of trade secrets under 18 U.S.C. §§ 1832 and 1836, (b) violations of the Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001 through 688.009, (c) violations of the Lanham Act, 15 U.S.C. § 1125, in and with respect to the wrongful diversion of trade secrets and active interference with Scanz's business as specifically described in this Complaint, (d) constructive fraud, (e) breach of fiduciary duty, (f) tortious interference with business relations, (g) unjust enrichment, (h) conversion and (j) breach of the covenant of good faith and fair dealing.

17.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332, as well as each of 15 U.S.C. § 1125, 18 U.S.C. §1836(c) and 28 U.S.C. § 1367(a).  This Court has supplemental jurisdiction over Scanz's state law claims, because these claims arise from the same case and controversy and transactions and occurrences, derive from a common nucleus of operative facts and would ordinarily be expected to be adjudicated along with the federal statutory claims raised in this Complaint.

18.     Defendants, and each of them, are subject to the general and specific jurisdiction of this Court under both federal and state law, including, without limitation, the due process clause of the United States Constitution and Florida's long-arm statute at and with specific respect to the following provisions:  Fla. Stat. § 48.193(1)(a) subsections 1, 2 and 6; Fla. Stat. § 48.193(2); Fla. Stat. §48.193(3); Fla. Stat. § 48.193(5); and Rule 4 of the Federal Rules of Civil Procedure.

19.     Defendants, and each of them, have separately or in concert engaged in the acts giving rise to the claims enunciated in this Complaint within this jurisdiction, in this Judicial District and throughout the United States utilizing the international wire and mail systems including, but not limited to, the worldwide web.

20.     This action arises out of and relates to the personal and business transactions, commission of injury and other specific and general activities of the defendants in Florida, including in the Southern District of Florida, and throughout the United States. These transactions, commissions of injuries, and activities are described in detail throughout this Complaint.  As a result of these transactions, unlawful activities and intentional commission of injury purposefully directed at Scanz, the defendants are subject to personal jurisdiction in the Southern District of Florida.

21.     Each corporate and individual defendant named in this Complaint acted conspiratorially and intended to cause devastating and indeed permanent damage to Scanz within and outside

Florida, both into the whole of the United States and throughout the world, by engaging in a scheme comprising specific and intentional torts for their own self-aggrandizement and financial profit as described in great detail throughout this Complaint.

22.     Each corporate and individual defendant has conspired to repeatedly market, offer to sell and then actually distribute products inside and outside of the State of Florida that infringe upon Scanz's proprietary intellectual property, including, but not limited to, the Scanz Assets.

23.     Venue is proper under 28 U.S.C. §§ 1391.

## BACKGROUND

24.     The Scanz Assets and Scanz Trade Secrets were originally developed starting in early 2003 after Scanz' principals recognized that an overwhelming number of stock traders required significant technological assistance in finding and locating companies meeting their investment criteria within the ever-expanding and complex national public capital markets, initially with a specific business emphasis particularly limited to the OTC micro-cap markets, otherwise known as the penny stock marketplace.  After confirming its efficacy and uniqueness, Scanz began marketing the Scanz Assets, Scanz Trade Secrets and related products to the national and international general public in or about the middle of 2004 for the OTC micro-cap markets, resulting in accolades, fanfare and the development of a very loyal customer base, *inter alia*, because of the special and distinctive functionality of the Scanz Assets, Scanz Trade Secrets and all associated Scanz product offerings in and for these markets.  Though Scanz' technologies quickly achieved an expanded application to all national securities markets, Scanz has always remained the major player and leader in and with respect to the OTC micro-cap and penny stock marketplace.

25.     Toward the end of 2012, Scanz was contacted by Sykes who sought to have access to the Scanz Assets, Scanz Trade Secrets and associated Scanz product offerings beyond the normal subscription and license agreement offered by Scanz to members of the general public. Specifically, Sykes claimed to represent Jewmon and claimed to be seeking "white label" licensure of a significant portion of the Scanz Assets and Scanz Trade Secrets for use in connection with Jewmon's alleged business model of promoting and selling to the general public various strategies for becoming successful traders in the OTC micro-cap and penny stock marketplaces.

26.     In the spring of 2013, Scanz and Jewmon entered into an agreement whereby Scanz agreed to provide Jewmon with a worldwide, non-transferable, non-assignable, non-exclusive license to use certain of the Scanz Assets and Scanz Trade Secrets, including (without limitation) computer software, so that Jewmon could offer to its client-stock-traders a desktop market analysis platform via "white label" at a website Jewmon allegedly owned, *to wit*: www.stockstotrade.com. In connection with this agreement, Scanz provided access to numerous elements of the Scanz Assets and Scanz Trade Secrets, including, *inter alia*, access to Scanz' licensed subscription management back-office infrastructure as well as continually updated versions of the object code of the computer software making up the core of the Scanz Assets and related product offerings. This agreement is referred to hereinafter as "the license agreement."

27.     Pursuant to the terms of the license agreement, Scanz was to also provide billing and support services and remit back to JewMon its share of all subscription-based revenues arising from the license agreement, which was approximately 30%.  The remaining 70% of subscription revenues resulting from JewMon's use of the Scanz Assets and Scanz Trade Secrets under the license agreement was to be owned exclusively by Scanz.

28.    The license agreement provided that JewMon shall not utilize any portion of the Scanz Assets, Scanz Trade Secrets and related technologies furnished through the license agreement other than in the manner specifically contemplated by the license agreement.  The license agreement further provided that Jewmon shall not, at any time -- even following termination of the license agreement -- copy the "look and feel" of any portion of the Scanz Assets, the Scanz Trade Secrets or the user interfaces associated therewith.  It further provided that Scanz retains ownership of all right, title and interest in and to the Scanz Assets and Scanz Trade Secrets licensed under the agreement, including (without limitation) all technology and other intellectual property as well as all data, materials, ideas, concepts, designs, techniques, know-how, inventions, works of authorship and any other information resulting from or arising from the contractual relationship between the parties.  In addition, JewMon further acknowledged through the license agreement that the Scanz Assets and Scanz Trade Secrets, as well as any updates, upgrades, customizations and modifications thereto provided to JewMon by Scanz, shall at all times remain proprietary to Scanz.  In addition to that acknowledgment, JewMon agreed not to reverse engineer, decompile, disassemble, or otherwise reduce to human-perceivable form the portions of the Scanz Assets or Scanz Trade Secrets provided to it under the agreement.

29.    The parties agreed that upon termination of the license agreement for any reason, all use of the Scanz Assets, Scanz Trade Secrets, and related Scanz technologies and product offerings utilized by Jewmon appertaining to the license agreement shall cease, and further that Jewmon shall either return these properties to Scanz or destroy all such proprietary information received in the course of the contractual relationship.  The parties agreed that the Scanz Assets and Scanz Trade Secrets shall be protected in the event of any sort of termination, *inter alia*, stipulating that after termination for any reason JewMon is forbidden both from utilizing any portion of the Scanz

Assets or Scanz Trade Secrets or copying the "look and feel" of any, each and every portion of the Scanz Assets, Scanz Trade Secrets as well as any and all product offerings regularly seen by, or otherwise available to, the general public.

30.    The parties voluntarily terminated the license agreement in late April of 2015, Scanz and Jewmon agreeing that Jewmon is no longer authorized to operate market analysis platforms using any portion of the Scanz Assets or Scanz Trade Secrets.   At that time, Jewmon and Scanz signed a two-page document entitled Termination Notice, a true and correct copy of which is appended hereto as Exhibit "A" ("Termination Notice").  As a result of the parties' voluntary termination of the license agreement, the contractual stipulations and covenants agreed to by Jewmon and Scanz provided that Jewmon was perpetually bound by numerous prohibitions that the parties expressly agreed survived the license agreement.  Among others, Jewmon remained bound in perpetuity after termination of the license agreement with respect to the following obligations:

a.    The obligation to keep confidential and not disclose to any third party or use (except as contemplated by this Agreement), any and all designated non-public information obtained from Scanz as a result of the operation of the license agreement;

b.    The obligation to cease and desist from using the Scanz Assets and Scanz Trade Secrets and to either return such proprietary information to Scanz or forever destroy that information;

c.    The obligation to indemnify and hold Scanz harmless from and against any claims, liabilities, costs, losses, settlements, damages, and expenses, including reasonable attorneys' fees, in connection with any claim or action arising from or relating to any lawful or unlawful use of the Scanz Assets or Trade Secrets by any person;

d.      The obligation to refrain from asserting that it had or has any rights of any kind into the Scanz Assets or the Scanz Trade Secrets or any portion thereof, including, but not limited to, Jewmon's confirmation and acknowledgment in writing (i) that Scanz shall at all times retain ownership of all right, title and interest in and to the Scanz Assets and Scanz Trade Secrets as well as all associated intellectual property, as well as all data, materials, ideas, concepts, designs, techniques, know-how, inventions, works of authorship and any other information resulting from or arising in the course of performance of the license agreement, and all intellectual property rights related to the foregoing, and (ii) that the Scanz Assets and the Scanz Trade Secrets, including, without limitation, any updates, upgrades, customizations and modifications thereto provided by Scanz during the term of the license agreement, shall remain  proprietary to Scanz.

e.      The obligation (i) to refrain from using in any manner the Scanz Assets or Scanz Trade Secrets, or any part thereof, in an outsourcing arrangement in support of any third-party, (ii) to refrain from selling, leasing, sublicensing or distributing the Scanz Assets or Scanz Trade Secrets, or part thereof, or otherwise transferring that or any related technology to any person, (iii) to refrain from reverse engineering, decompiling, disassembling or otherwise reducing to human-perceivable form any portion of the source code (including the object code) appertaining or relating to the Scanz Assets and Scanz Trade Secrets, (iv) to refrain from modifying, revising, enhancing or altering the Scanz Assets or the Scanz Trade secrets, (v) to refrain from claiming any rights to or ownership of any portion of the Scanz Assets or Scanz Trade Secrets and (vi) to refrain from copying the "look and feel" of any portion of the Scanz Assets, Scanz Trade Secrets, or any of Scanz' historical product offerings.

31.   At the time of executing the Termination Notice, evidently recognizing both the significance and the breadth and scope of the foregoing obligations, the principals of JewMon and

Scanz -- respectively, Timothy Sykes and Zachary Westphal, on the one hand, and Stephan Touizer, on the other hand -- had several discussions in which Sykes and Westphal both thanked Scanz and both expressly stated that JewMon intended to proceed in its future business endeavors using a market analysis technology completely different and "totally distinguishable" from Scanz.

32.    For a significant period following the execution of the Termination Notice, Scanz and its principals noticed that neither JewMon nor Sykes was utilizing any sort of robust market analysis technology of the kind offered by Scanz or previously "white labeled" by Jewmon, whether through the name "Jewmon" or through the names Timothy Sykes, Zachary Westphal or Timothy Bohen.

33.    In December of 2016, Scanz learned that Sykes had begun actively utilizing a series of company and product names different from the one he was utilizing, during the license agreement, to  house ownership of the technology-solutions portion of his business.  Scanz further concluded that Sykes may have also started deploying a market analysis technology product similar to the Scanz Assets, Scanz Trade Secrets and associated product offerings. Scanz therefore began an investigation into the Sykes-related market analysis product offering to determine whether it was violative of either the surviving provisions of the license agreement or applicable law.

34.    Specifically, throughout the first half of 2017, Scanz investigated the modules, functionality, software language and associated computer logic related to the new Sykes product offerings throughout.  In late August, 2017, Scanz learned that the new Sykes' market analysis platform contains not only similar functionality as the Scanz Assets, Scanz Trade Secrets and related Scanz product offerings, but actually contains virtually identical functionality as the Scanz Assets, Scanz Trade Secrets and associated Scanz product offerings.

35.     Subsequently, throughout the balance of 2017 and continuing up to May of 2018, Scanz continued its investigation and learned that Sykes' product offerings were actively changing and morphing into systems and products that even further mimicked the Scanz product offerings. Ultimately, in or about May of 2018, Scanz' concluded that the Sykes market analysis platform not only had progressed to an imitation of Scanz' product offerings but that the Sykes' platform had progressed to containing a virtually identical "look and feel" as compared to the most important core features embraced by the Scanz Assets, the Scanz Trade Secrets and the associated Scanz product offerings that were embraced by the express terms of the license agreement.

36.     Scanz then carefully evaluated the publicly available portions of Sykes' market analysis technology platforms and backbone and ultimately discovered that the technological basis for Sykes' market analysis products contained components and elements that were substantially identical in comparison to the ones included in the Scanz Assets, the Scanz Trade Secrets and the associated Scanz' product offerings covered under the license agreement.

37.     Based upon Scanz' further evaluation continuing up to the date of filing this Complaint, Scanz is informed and believes and thereon alleges that the Sykes market analysis platform was stolen from Scanz in violation of the surviving termination provisions of the license agreement, as well as in violation of federal and state law as more fully alleged in this Complaint.

## COUNT I

**(Violations of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 -
Against Defendants Jewmon, Millionaire Publishing, Millionaire
Media, StocksToTrade, Sykes, Westphal and Bohen)**

38.     Scanz incorporates paragraphs 1 through 37 of this Complaint as though fully set forth at length.

39.     At all times material hereto, defendants Jewmon, Millionaire Publishing, Millionaire Media, StocksToTrade, Sykes, Westphal and Bohen engaged in a civil conspiracy to misappropriate the Scanz' Assets and Scanz Trade Secrets and utilize them for profit in their penny stock trading business to the detriment of Scanz and its principals.  They did this through Sykes' domination, control and *alter ego* status over the affairs of Jewmon, Millionaire Publishing, Millionaire Media and StocksToTrade in such a way as Sykes cooperated with Westphal and Bohen to formulate and utilize each of these entities to hide the real party in interest with respect to the object of the conspiracy and thereby buy themselves enough time to perfect their theft of the Scanz Assets and Scanz Trade Secrets.  And they further achieved the objects of their civil conspiracy by agreeing to mislead Scanz and its principals at and following execution of the Termination Notice by falsely leading Scanz to believe that each of these defendants had no intention to utilize product offerings anywhere close to the offerings represented by the Scanz Assets, Scanz Trade Secrets and related technologies and products.  As set forth more fully herein, although these defendants' pirating and theft of Scanz' Assets and Scanz Trade Secrets did not initially cause injury to Scanz inasmuch as defendants market analysis product offering did not initially penetrate Scanz' actual or prospective customer bases, from and following the second half of 2018 Scanz has suffered devastating financial and business injury as a result of the illegal acts of these defendants described in this Complaint.

40.     The Scanz Assets, Scanz Trade Secrets and related product offerings referenced throughout this Complaint, including, without limitation, Scanz licensed subscription management back-office infrastructure as well as its continually updated versions of the object code of the computer software and each and every product offering of Scanz as well as the hardware and software components thereof made available to these defendants throughout the term of the license

agreement, are legally classified as trade secrets pursuant to both federal and state common law and statutory law.

41.   The Scanz Trade Secrets (a) were all developed and continually updated using a great expenditure of time and effort by Scanz over the course of nearly 20 years and (b) are comprised of financial, business, technical, economic and engineering information, including patterns, plans, compilations, program devices, formulas, designs, methods, techniques, processes, procedures, programs and codes that Scanz (i) has taken reasonable measures to keep secret including, without limitation, assuring that all persons utilizing the Scanz Assets sign license agreements carefully proscribing their rights to utilize the Scanz Assets and (ii) derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of such information.

42.   Each of the defendants named in this Count conspired to, and did in fact, misappropriate the trade secreted protected Scanz Assets and Scanz Trade Secrets knowing that he or it was committing trade secret theft through improper means for the following reasons:   (a) these defendants were bound by the surviving provisions of the license agreement, which forbade any such use of those Scanz Assets and Scanz Trade Secrets that the defendants had access to during the term of the license agreement and (b) the defendants were bound by applicable law precluding them from utilizing their confidential relationship arising out of the license agreement to first gain access to the Scanz Assets and Scanz Trade Secrets and then taking and utilizing such proprietary assets for monetary gain after termination of the license agreement, all without Scanz' consent.

43.   Notwithstanding knowing and understanding their duties under the Termination Notice, and under applicable federal and state law, to maintain inviolate the secrecy of the Scanz Assets and Scanz Trade Secrets, each of the defendants named in this Count did steal the Scanz Assets

and Scanz Trade Secrets and expropriated these proprietary assets and technologies for their own use in developing a virtually identical market analysis platform as the one they had access to under the license agreement that was developed by Scanz and has been exclusively owned by Scanz for nearly 20 years.  At all times material hereto, each of the defendants named in this Count knew the Scanz Assets and Scanz Trade Secrets were trade secret protected under federal and state law, were owned exclusively by Scanz and further that each of the defendants have a duty of secrecy with respect to each of the Scanz Assets and Scanz Trade Secrets.

44.    Each of these defendants boarded and then engaged in the aforementioned conspiracy with the intention and knowledge that their unlawful conduct would ultimately result in serious injury to Scanz, but nevertheless these defendants engaged in the theft and taking of the Scanz Assets and Scanz Trade Secrets with actual malice and for their own profit as described throughout this Complaint.   The theft of these defendants included, without limitation, duplication, downloading, uploading, replication, copying and other unlawful patterns and methodologies regularly utilized in similar illegal activities nationally and internationally usually accompanying business-espionage activity relating to theft of valuable business trade secrets.

45.    As a proximate and foreseeable result of these defendants' misappropriation of the Scanz Assets and Scanz Trade Secrets as alleged herein, Scanz has been damaged from and after the second half of 2018 in the sum of at least $10 million, according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

46.    The foregoing compensatory damages cannot compensate Scanz for the unjust enrichment inuring to the defendants named in this Count, and Scanz is entitled to recover the full measure of these defendants' unjust enrichment as a result of the significant benefits inuring to each of these defendants as a result of their utilization of the Scanz Assets and Scanz Trade Secrets

over the course of at least the past two years.  Such damages based upon unjust enrichment are in a presently unknown sum according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

47.    As an alternative to the foregoing damages calculation, Scanz is also entitled to recover damages measured by a reasonable royalty for each of these defendants' unauthorized use of the Scanz Assets and Scanz Trade Secrets in a sum according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

48.    In affecting their misappropriation and other unlawful activity set forth in this Count, the defendants named in this Count acted willfully, with reckless disregard for the interests of Scanz and with actual malice, entitling Scanz to exemplary and punitive damages in the sum of exactly double the amount of damages awarded as a result of Scanz prevailing on this Count.

49.    The wrongful conduct of defendants named in this Count with respect to their misappropriation of the Scanz Assets and Scanz Trade Secrets, unless and until enjoined by order of this Court, will cause great and irreparable damage to Scanz' business insofar as Scanz' is in grave danger of being injured in the following ways:  (a) Scanz will lose customers and accounts, (b) Scanz will have even more of the Scanz Assets and Scanz Trade Secrets stolen and pirated by the defendants over time and (c) Scanz will suffer other irreparable injury according to proof at either pre-trial hearings or at trial before a duly empanelled jury.  Accordingly, Scanz is entitled to temporary, preliminary and permanent injunctive relief pursuant to 18 U.S.C. § 1836 (b)(3)(A)(i).

50.    In addition to the monetary and injunctive remedies identified in paragraphs 45 through 49 of this Complaint, Scanz also is entitled to a Court order providing for the seizure of all property possessed or controlled by the defendants named in this Count to the extent such seizure is

necessary or legally justified to prevent the propagation or further theft, pirating or other dissemination of the Scanz Assets and Scanz Trade Secrets that are the subject of this Complaint.

## COUNT II

### (Violations of the Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001 through 688.009 - Against Defendants Jewmon, Millionaire Publishing, Millionaire Media, StocksToTrade, Sykes, Westphal and Bohen)

51.    Scanz incorporates paragraphs 1 through 44 of this Complaint as though fully set forth at length.

52.    In connection with its business, Scanz has developed, maintained and used proprietary and confidential technology used by constituents of the securities industry, including, but not limited to, the Scanz Assets and Scanz Trade Secrets.  The Scanz Assets and Scanz Trade Secrets are specifically described in the incorporated paragraphs, e.g.,  2, 3, 25, 27, 28, 29, 35, 36, 40 and 41 of this Complaint.  Prior to the acts complained of herein and continuing up to the date of filing this Complaint, these proprietary Scanz Assets and Scanz Trade Secrets had, and continue to have, substantial economic value deriving from the fact that such proprietary and confidential technologies and other non-public aspects of Scanz' product offerings are not generally known to the public or to Scanz' competitors who could obtain substantial economic value from their use or disclosure.

53.    Scanz has undertaken reasonable efforts to ensure that the Scanz Assets and Scanz Trade Secrets remain secret, confidential and proprietary to Scanz by: (a) disclosing such information only to Scanz' employees who need to know the information in order to perform their jobs or who are under confidentiality obligations; (b) emphasizing to each employee of Scanz the need to keep all such information secret; (c) requiring, as a condition to allowing the utilization of its proprietary stock scanning products and offerings, that its customers and others with which it does business

enter written agreements of confidentiality or non-disclosure expressly acknowledging that the Scanz Assets and Scanz Trade Secrets are proprietary and confidential and that all of these properties of Scanz will not be used or disclosed in any manner except for the benefit of Scanz, unless Scanz consents or authorizes otherwise in writing.

54.    By and through the specific misconduct recited in the paragraphs incorporated by reference, e.g., 34, 35, 36, 37, 39, 42, 43, 44, 45, 46 and 48, each of the defendants named in this Count, without permission or authorization from Scanz, knowingly misappropriated the Scanz Assets and Scanz Trade Secrets and for their own personal gain and with malice.  This unlawful misappropriation occurred in several ways identified in this Complaint, all made possible by the confidential relationship created by the license agreement entered into between the parties through which each of the defendants had both access to the Scanz Assets and Scanz Trade Secrets as well as a contractual and resulting legal obligation to maintain the secrecy of the Scanz Assets and Scanz Trade Secrets.

55.    Through the conspiracy described in detail within this Complaint, each of the defendants named in this Count knowingly misappropriated and pirated the Scanz Assets and Scanz Trade Secrets for their own personal gain and continue to do so up to and including on the very date of filing of this Complaint.

56.    By and through the specific factual conduct recited in the paragraphs incorporated into this Count, which paragraphs are specifically identified in paragraph 54 of this Count, defendants' knowing and intentional acts violate Fla. Stat Ann. §§ 688 et seq.

57.    As a proximate and foreseeable result of these defendants' misappropriation of the Scanz Assets and Scanz Trade Secrets, Scanz has been damaged from and after the second half of 2018

in the sum of at least $10 million, according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

58.    As a further proximate result of the foregoing misappropriation, defendants named in this Count have been unjustly enriched, thus entitling Scanz to an additional award of damages resulting therefrom in a presently unknown sum according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

59.    In the alternative, Scanz is entitled to a reasonable royalty from transactions entered into by these defendants as a result of the use of the Scanz' Assets and Scanz' Trade Secrets in a sum according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

60.    The aforementioned acts of defendants were willful and malicious insofar as defendants committed such acts with the intent to injure Scanz' business, including injury in Florida, and to increase their own success in the same competing business involving market analysis product offerings, including in Florida, with conscious disregard for Scanz' legal rights, thereby warranting an award of punitive damages not to exceed twice any amount of actual damages proven pursuant to Fla. Stat Ann. §§ 688.004, to punish these defendants and to deter others from engaging in similar misconduct.

61.    The wrongful conduct of defendants in misappropriating the Scanz Assets and Scanz Trade Secrets, unless and until enjoined by order of this Court, will cause great and irreparable injury to Scanz' business insofar as Scanz is in grave danger of losing customers and accounts to an extent that if defendants' misconduct is not enjoined and restrained, Scanz' business will be irreparably harmed as alleged herein. Accordingly, Scanz is entitled to temporary, preliminary and permanent injunctive relief pursuant to Fla. Stat Ann. §§ 688.

62.     These defendants' misappropriation of the Scanz Assets and Scanz Trade Secrets was and still is being conducted willfully and maliciously, thereby entitling Scanz to recover its attorneys' fees as the prevailing party pursuant to Fla. Stat Ann. §§ 688.005.

## COUNT III

**(Violations of Lanham Act, 15 U.S.C. § 1125(a) - Against Defendants Jewmon, Millionaire Publishing, Millionaire Media, StocksToTrade, Sykes, Westphal and Bohen)**

63.     Scanz incorporates paragraphs 1 through 37 of this Complaint as though fully set forth at length.

64.     After expropriating the Scanz' Assets and Scanz Trade Secrets and then developing their own market analysis platform using such assets and trade secrets, the defendants named in this Count began issuing, and are continuing to issue, false and misleading statements of fact to the marketplace while omitting substantial disclosures the market and Scanz were entitled to know. These include the defendants representations and omissions to the effect that they had lawfully developed and now owned their own market analysis software and product lines for use by national and international constituents of the securities investing public.  These statements, coupled with the omissions the defendants have implemented to go along with the statements, are literally false and create an untrue impression in the marketplace.

65.     Thereafter, in connection with the marketing and sale of their pirated market analysis platform and similar product offerings, the defendants named in this Count have used in national and international commerce words, symbols and devices of false designation of origin and have propagated false and misleading descriptions of fact and false and misleading representations of fact, *to wit*: the outright lie that these defendants have themselves lawfully developed a virtually identical market analysis product line as the market analysis product offerings sold nationally and internationally by Scanz for nearly 20 years utilizing the Scanz Assets and the Scanz Trade Secrets.

66.    The misconduct of the defendants identified in paragraphs 64 and 65 has already caused confusion and deceived the public with respect to the origin, sponsorship and approval of these defendants' pirated stock trading platform: though these defendants are specifically marketing their platform as having been ingeniously developed solely through their own lawful efforts, the truth and reality is that they are nothing but common thieves who have and continue to engage in day-to-day pirating of the Scanz Assets and Scan Trade Secrets, little by little, until they complete and perfect their total theft of those proprietary technologies and trade secrets of Scanz and destroy the Scanz proprietary business model.  In connection with these unlawful activities, the defendants named in this Count have and continue to engage in commercial advertising and promotion in which they consistently misrepresent the nature and characteristics of their market analysis products.

67.    The foregoing statements have been, and are continuing to be, utilized in commercial advertisements to the international public including primarily the worldwide web.  The defendants named in this Count use their false representations to promote their entire business, including the expropriated and infringing market analysis software.  These untrue representations and associated deceit by these defendants are a part of an organized campaign to penetrate the marketplace for Scanz' legitimate market analysis product offerings.  Their representations and omissions deceive and are likely to continue to deceive the public which is now under the impression that there is nothing special about Scanz' market analysis products since the defendants named in this count falsely contend they have lawfully in a non-infringing manner developed their own market analysis products which turns out to be substantially identical to Scanz' product offerings.

68.    Through their wrongful conduct, these defendants and their false acts and fraudulent omissions have caused and are likely to continue to cause competitive and commercial injury to

Scanz for a variety of reasons expressed in this Complaint and for the additional reason that the defendants named in this Count are marketing their expropriated, infringing market analysis products, in the foregoing unlawful manner, to a substantial portion of Scanz' existing and prospective customer base.

69.     The defendants named in this Count have and continue to exploit their expropriation of the Scanz Assets and the Scanz Trade Secrets in the manner set forth in paragraphs 63 through 68 while engaging in commercial competition with Scanz and for the purpose of influencing consumers to buy these defendants' market analysis product offerings instead of the Scanz product offerings.

70.     All of the foregoing misrepresentations have been made repeatedly, and continue to be made repeatedly, by the defendants named in this Count, and this dissemination to the relevant purchasing public constitutes advertising and promotion within the identical industry as the one in which Scanz' products are offered.

71.     The aforestated deception used by the defendants named in this Count has both been utilized on a substantial portion of Scanz' existing customer base and has had a material effect on the purchasing decisions of members of the general public beyond Scanz' existing customer base with respect to the acquisition of market analysis product offerings within and beyond interstate commerce.

72.     As a proximate and foreseeable result of the misconduct of the defendants named in this Count, set forth in paragraphs 63 through 71 above, Scanz has been damaged in the sum of at least $10 million according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury, and these damages are continuing.

73.     The wrongful conduct of defendants named in this Count in violating the Lanham Act in the foregoing manner, unless and until enjoined by order of this Court, will cause great and irreparable injury to Scanz' business insofar as Scanz is in grave danger of losing customers and accounts to an extent that if defendants' misconduct is not enjoined and restrained, Scanz' business will be irreparably harmed as alleged herein. Accordingly, Scanz is entitled to temporary, preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT IV

**(Constructive Fraud - Against Defendants Jewmon, Millionaire Publishing, Millionaire Media, StocksToTrade, Sykes, Westphal and Bohen)**

74.     Scanz incorporates paragraphs 1 through 62 of this Complaint as though fully set forth at length.

75.     By reason of the confidential relationship arising from and as a result of the license agreement, each of the defendants named in this Count owed fiduciary duties of the highest character to Scanz to faithfully and steadfastly honor the confidentiality, non-disclosure and non-piracy provisions of the license agreement. Such provisions survived the license agreement and the relevant ones are listed in paragraphs 29, 30 and 31 of this Complaint. These surviving provisions of the license agreement that extend in perpetuity include covenants beyond those comprising the textual definitions under federal and state trade secret statutes identified in Counts I and II of this Complaint, including, but not limited to, the following obligations by these defendants going well beyond what has historically been defined as a trade secret under the law:

a.     The obligation on the part of the defendants named in this Count to restrain from reversing engineering any portion of the Scanz Assets and Scanz Trade Secrets; and

b.      The obligation on the part of the defendants named in this Count to restrain from copying the 'look and feel' of the Scanz Assets, Scanz Trade Secrets and Scanz' related product offerings.

76.    Knowing full well of their fiduciary duties, the defendants named in this Count intentionally abused those fiduciary duties by breaching not only the actual contractual and legal provisions of law prohibiting them from pirating the Scanz Assets and Scanz Trade Secrets, but also breaching the spirit of those provisions.  Such breaches are set forth in detail throughout paragraphs 34, 35, 36, 37, 39, 43, 44, 48, 54, 55, 60, 62, 64, 65, 66, 67, 68, 69, 70 and 71 of this Complaint, and specifically extend to violations of the obligations identified in paragraphs 75a and 75b of this Complaint.

77.    The defendants named in this Count, by their misconduct alleged in detail throughout this Complaint, have taken unconscionable advantage of Scanz in the exact manner alleged in this Complaint.

78.    As a proximate and foreseeable result of the constructive fraud of the defendants named in this Count, Scanz has been damaged in the sum of at least $10 million, according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

## COUNT V

**(Breach of Fiduciary Duty - Against Defendants Jewmon, Millionaire Publishing, Millionaire Media, StocksToTrade, Sykes, Westphal and Bohen)**

79.    Scanz incorporates paragraphs 1 through 62 of this Complaint as though fully set forth at length.

80.    By reason of the confidential relationship arising from and as a result of the license agreement, each of the defendants named in this Count owed a fiduciary duty of the highest character to Scanz to faithfully and steadfastly honor the confidentiality, non-disclosure and non-

piracy provisions of the license agreement.  These defendants' fiduciary duties to both avoid disclosing, and to also refrain from pirating, the Scanz Assets and Scanz Trade Secrets survived the Termination Notice and are set forth in detail within paragraphs 30 and 31 of this Complaint. These surviving provisions of the license agreement that extend in perpetuity include covenants beyond those comprising the textual definitions under federal and state trade secret statutes identified in Counts I and II of this Complaint, including, but not limited to, the following obligations by these defendants going well beyond what has historically been defined as a trade secret under the law:

    a.   The obligation on the part of the defendants named in this Count to restrain from reversing engineering any portion of the Scanz Assets and Scanz Trade Secrets; and

    b.   The obligation on the part of the defendants named in this Count to restrain from copying the 'look and feel' of the Scanz Assets, Scanz Trade Secrets and Scanz' related product offerings.

81.   As a proximate and foreseeable result of these defendants' breaches of fiduciary duty alleged at paragraphs 34, 35, 36, 37, 39, 43, 44, 48, 54, 55, 60, 62, 64, 65, 66, 67, 68, 69, 70 and 71 of this Complaint, and specifically extending to violations of the obligations identified in paragraphs 80a and 80b of this Count, Scanz has been damaged in the sum of at least $10 million, according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

## COUNT VI

**(Tortious Interference With Business Relations - Against Defendants Jewmon, Millionaire Publishing, Millionaire Media, StocksToTrade, Sykes, Westphal and Bohen)**

82.   Scanz incorporates paragraphs 1 through 62 of this Complaint as though fully set forth at length.

83.   As well known by each of the defendants named in this Count, Scanz has numerous business relationships with clients located in Florida, located throughout the United States and located throughout the world; and these relationships have been fostered over the period encompassing nearly the past two decades ("the Scanz clients").

84.   The business relationships described in paragraph 83 of this Count represent a substantial portion of Scanz' for-profit business activities and involve the utilization by the Scanz clients of the Scanz Assets and the Scanz Trade Secrets pursuant to licensing arrangements at all times acknowledging the proprietary nature of all such technology as well as Scanz exclusive ownership over such.

85.   At all times material hereto, the defendants named in this Count had full knowledge of such business relationships as described in paragraph 83 of this Count.

86.   The defendants named in this Count have intentionally and unjustifiably interfered with these business relationships by, *inter alia*, (a) stealing and pirating the Scanz Assets and Scanz Trade Secrets (as more fully alleged in paragraphs 34, 35, 36, 37, 39, 43, 44, 48, 54, 55, 60, 62, 64, 65, 66, 67, 68, 69, 70 and 71 of this Complaint, and specifically extending to violations of the obligations identified in paragraphs 80a and 80b of this Complaint), (b) either reverse engineering additional modules and/or copying the "look and feel" of the Scanz Assets, Scanz Trade Secrets and Scanz product offerings followed by then developing a nearly identical product to sell directly into the marketplace historically and presently accessed by Scanz.

87. The defendants named in this Count have also intentionally and unjustifiably interfered with these business relationships by issuing false and misleading statements of fact to the marketplace for Scanz product offerings while omitting substantial disclosures that constituents in the marketplace were and are entitled to know. These include these defendants' representations and omissions to the effect that they had lawfully developed and now owned their own market analysis software and unique product lines. These statements, coupled with the omissions the defendants have implemented to go along with the statements, are literally false, create an untrue impression in the marketplace and have been and continue to be made in order to deprive Scanz of its lawful business objectives, to poach Scanz' clients away from Scanz and to otherwise gain a business advantage in the marketplace served by Scanz for nearly two decades.

88. As a proximate and foreseeable result of the foregoing tortious business interference by the defendants named in this Count, Scanz has been damaged in the sum of at least $10 million, according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

89. Because the defendants named in this Count acted with actual malice and with the express intention of stealing Scanz' proprietary technologies and causing devastating injury to Scanz, Scanz is entitled to an award of exemplary and punitive damages in a sum according to proof.

## COUNT VII

**(Unjust Enrichment - Against Defendants Jewmon, Millionaire Publishing, Millionaire Media, StocksToTrade, Sykes, Westphal and Bohen)**

90. Scanz incorporates paragraphs 1 through 44, 46, and 64 through 71 of this Complaint as though fully set forth at length.

91.   By stealing and pirating the Scanz Assets and Scanz Trade Secrets in the manner alleged herein, the defendants named in this Count have garnered for themselves significant economic benefit, including substantial revenues and profits.

92.   Pursuant to the terms and conditions of surviving provisions of the license agreement, Scanz should have been paid approximately 70% of all such revenues and profits identified in paragraph 91 of this Count, yet Scanz has received none of such revenues and profits garnered through the wholesale pirating of its intellectual property.

93.   The defendants named in this Count voluntary accepted and retained the benefits conferred upon them by their unlawful conduct described in this Complaint, knowingly receiving substantial benefits arising out of the wrongful conduct alleged in this Complaint.

94.   Permitting these defendants to keep any of these benefits is both inequitable and unconscionable.

95.   Regardless of which legal remedy is applied to the defendants' tortious and unconscionable misconduct alleged in this Complaint, Scanz has no adequate legal remedy to fully protect its business interests and there is in fact no adequate remedy at law after considering all factors, including precisely the portion of the Scanz Assets and Scanz Trade Secrets that have been stolen and pirated as well as evaluating and considering the truthful accounting and condition of the current and prospective marketplace now that these defendants' misconduct has been fully implemented and has completely taken hold.

96.   Accordingly, in addition to injunctive relief as requested in this Complaint, e.g., at paragraphs 49, 61 and 73, these defendants should be ordered to return to Scanz all of their unjust rewards resulting from their pirating conspiracy.

## COUNT VIII

### (Conversion - Against Defendants Jewmon, Millionaire Publishing, Millionaire Media, StocksToTrade, Sykes, Westphal and Bohen)

97.     Scanz incorporates paragraphs 1 through 62 of this Complaint as though fully set forth at length.

98.     As repeatedly acknowledged by the defendants named in this Count, Scanz is the exclusive owner of the Scanz Assets and Scanz Trade Secrets with the sole right to possess and use such proprietary information in commerce.

99.     Notwithstanding these acknowledgments and the knowledge by these defendants that their pirating conspiracy alleged herein is wrongful, the defendants named in this Count have converted through their wrongful acts the property rights of Scanz and their current possession of large portions of the Scanz Assets and Scanz Trade Secrets is inconsistent with plaintiff's property rights.  What the defendants have pirated from Scanz goes well beyond the trade secret protected properties legally subject to Counts I and II of this Complaint.

100.     As a proximate and foreseeable result of the foregoing conversion by the defendants named in this Count, Scanz has been damaged in the sum of at least $10 million, according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

## COUNT X

### (Breach of the Covenant of Good Faith and Fair Dealing - Against Defendants Jewmon, Millionaire Publishing, Millionaire Media, StocksToTrade, Sykes, Westphal and Bohen)

101.     Scanz incorporates paragraphs 1 through 62 of this Complaint as though fully set forth at length.

102.     As alleged in detail throughout this Complaint, Scanz and Jewmon entered into the license agreement and numerous provisions survived its termination, as confirmed by the Termination Notice, including but not limited to the provisions set forth in detail within paragraphs 30, 31, 75 and 80 of this Complaint.

103.     Scanz performed all actions required on its part to trigger compliance by Jewmon, and by all defendants named in this Count, with these surviving provisions of the license agreement.

104.     At all times material hereto, all conditions-precedent and conditions-subsequent required for the performance of all relevant surviving provisions of the license agreement by these defendants have occurred.

105.     The defendants named in this Count, by their theft and pirating of the Scanz Assets and Scanz Trade Secrets set forth at paragraphs 34, 35, 36, 37, 39, 43, 44, 48, 54, 55, 60, 62, 64, 65, 66, 67, 68, 69, 70 and 71 of this Complaint (and specifically extending to violations of the obligations identified in paragraphs 75a, 75b, 80a and 80b of this Complaint), have unfairly interfered with Scanz' desire to receive the contractual benefits described in this Complaint.

106.     These defendants' unlawful misconduct did not comport with Scanz' reasonable contractual expectations arising out of the license agreement and the applicable surviving termination provisions thereof.

107.     As a proximate and foreseeable result of the foregoing breaches of the covenant of good faith and fair dealing by these defendants, Scanz has been damaged in the sum of at least $10 million, according to proof either upon entry of summary judgment in Scanz' favor or at trial before a duly empanelled jury.

## JURY TRIAL

108.        Scanz demands a jury trial as to all issues so triable.

## PRAYER FOR RELIEF

109.        Scanz respectfully requests this Court enter judgment in favor of Scanz and against

each of the defendants including an order granting Scanz the following relief:

a.  Entry of a preliminary and/or permanent injunction enjoining each of the

defendants, their officers, agents, servants, and employees, and those persons acting in active

concert or participation with any of them, from engaging in the unlawful conduct described in this

Complaint;

b.  A Court Order directing the defendants to preserve and turn over to  Scanz or its

designee(s), and permitting Scanz or its designee(s) to seize the following things that are in

defendants' possession, custody, or control:

i.      unauthorized merchandise or product offerings and devices that bear, reflect

or infringe upon the Scanz' Assets or Scanz Trade Secrets;

ii.      unauthorized products that actually infringe Scanz rights to the Scanz'

Assets or were made using Scanz Trade Secrets;

iii.      all merchandise or products including, but not limited to, printed graphics,

promotional materials, labels, boxes, packaging, advertisements, catalogs, patterns, devices,

machinery and any other items, goods or merchandise in any of defendants' possession, custody,

or otherwise used by defendants to sell products that infringe or were made utilizing the Scanz

Assets or Scanz Trade Secrets;

iv.      all documents, papers, computers, magnetic tapes, punch cards, computer

printouts, electronic mail, computer disks, or any other electronic information, client lists, books,

files or records documenting or reflecting the manufacture, import, export, reproduction, copying, purchase, sale, offering for sale, transport, printing, distribution or receipt of merchandise, goods, or other items bearing or intending to bear, or infringing in any way, the Scanz Assets or the Scanz Trade Secrets;

v.      all documents containing, directly or indirectly, any portion of the Scanz Assets or Scanz Trade Secrets; and

vi.      all other things involved in defendants' violations, including, without limitation, all such merchandise or means of making or transporting defendants' infringing merchandise or related records and things on the person of any of defendants' representatives, or under the control, of defendants, or which defendants attempted to sell or are holding, including any carton, computer, electronic data storage device, vehicle, container or other package in which said infringing merchandise or labels or materials or business records may be found;

c.   A Court Order directing defendants to immediately supply Scanz's counsel with a complete list of: (i) individuals and entities who manufactured defendants' infringing products (along with the quantities of all such infringing); (ii) individuals and entities that sold or provided to defendants its infringing products (along with the quantities of all such infringing products); (iii) individuals and entities to whom or which defendants sold, distributed, advertised or promoted defendants' infringing products (along with the quantities of all such products); and (iv) individuals and entities to whom defendants disclosed any of the Scanz Assets or Scanz Trade Secrets;

d.   A Court Order directing defendants to remove listings of all unlawful products from any website they control or contribute to;

e.   A Court Order directing defendants to destroy any document, including electronic documents, batch cards and batch records, containing any portion of the Scanz Assets or Scanz Trade Secrets and/or the manufacturing process for such Scanz product;

f.   An award of damages in the sum of at least $10 million, or in a different sum sufficient to compensate Scanz, by reason of defendants' violations of the Defend Trade Secrets of 2016, defendants' violations of the Florida Uniform Trade Secrets Act, defendants' violations of the Lanham Act, defendants' constructive fraud, defendants' breaches of fiduciary duty, defendants' tortious interference with Scanz' business relations, defendants' conversion and defendants breaches of the covenant of good faith and fair dealing, all as more specifically pled in this Complaint;

g.   An award of a reasonable royalty for each of these defendants' unauthorized use of the Scanz Assets and Scanz Trade Secrets, as more specifically pled in this Complaint;

h.   An award of reasonable attorneys fees pursuant to the Florida Uniform Trade Secrets Act, all as more specifically pled in this Complaint;

i.   A Court Order forcing the defendants, and each of them, to account for all amounts constituting unjust enrichment to them in the manner directed by this Court, pursuant to both the Defend Trade Secrets Act of 2016, the Florida Uniform Trade Secrets Act and Florida common law;

j.   A Court Order directing the seizure of all property possessed or controlled by the defendants having or bearing any relationship to the Scanz Assets and Scanz Trade Secrets, pursuant to the Defend Trade Secrets Act of 2016 and the Florida Uniform Trade Secrets Act;

k.   An award of Scanz' costs of suit;

l.   A Court Order requiring the defendants, and each of them, within thirty days after service of this Court's Judgment, to file with this Court and serve upon Scanz undersigned counsel, a written report, under oath, setting forth in detail the manner in which defendants have complied with the Judgment;

m.   A Court Order directing specific performance of all confidentiality and non-disclosure covenants surviving the license agreement;

n.   A post judgment equitable accounting of damages for the period of infringement determined by the trier of fact in ruling in Scanz' favor;

o.   An award of pre and post judgment interest on all money damages; and

p.   Such further relief as this Court deems just and proper.

Dated:  July 17, 2020                    Respectfully Submitted,

                                        SQUIRE LAW GROUP, P.A.
                                        14329 Commerce Way
                                        Miami Lakes, FL 33016
                                        Phone: 888.788.8816
                                        Fax: 786.577.0425
                                        dlage@squirelawgroup.com

                                    By:   */s/Gustavo D. Lage*
                                          Gustavo D. Lage
                                          Florida Bar No. 972551

                                    *Attorneys for Plaintiff*
                                    *SCANZ TECHNOLOGIES, INC.*