## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SCANZ TECHNOLOGIES, INC., fka
EQUITYFEED CORPORATION, A
Canadian (Quebec) Corporation,

       Plaintiff,

vs.

JEWMON ENTERPRISES, LLC, a Florida
limited liability corporation; TIMOTHY
SYKES, an individual; ZACHARY
WESTPHAL, an individual; TIMOTHY
BOHEN, an individual; MILLIONAIRE
PUBLISHING, LLC, a Florida limited
liability corporation; MILLIONAIRE
PUBLISHING, LLC, a Colorado limited
liability corporation; MILLIONAIRE
MEDIA, LLC, a Florida limited liability
corporation and STOCKSTOTRADE.COM
INC., a Delaware corporation,

       Defendants.

Case No. 20-cv-22957-RNS

## STOCKSTOTRADE.COM INC.'S AND ZACHARY WESTPHAL'S
## MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

SQUIRE PATTON BOGGS (US) LLP
200 South Biscayne Blvd., Suite 4700
Miami, FL 33131
Tel.: 305 577 7000
Fax: 305 577 7001

*Counsel for Defendants Zachary
Westphal, Timothy Bohen, and
StocksToTrade.com, Inc.*

- 1 -

**TABLE OF CONTENTS**

**PAGE(S)**

I.     INTRODUCTION ..................................................................................... 1

II.    BACKGROUND FACTS ........................................................................... 2

III.   ARGUMENT ............................................................................................ 4

    A.   Scanz' Trade Secret Claims (Counts I & II) Are Time Barred…………………………...4

    B.   The Complaint Fails Plausibly to State Any Claim for Relief……………………..…..5

        1.   Legal Standard…………………………………………….…………….…..5

        2.   Scanz' Fails to Plead Facts Supporting Conspiracy Liability...……………..……6

        3.   Scanz' Misappropriation of Trade Secret Claims (Counts I and II) Fail……...…..8

            i.   Scanz Does Not Plead Facts Sufficient to Show the Existence of a Trade
                 Secret………………………………………………………………..8

            ii.  Scanz Fails to Plead Facts Showing Misappropriation…………………10

        4.   Scanz Fails Plausibly to Allege a Lanham Act False Advertising Claim……….11

        5.   Scanz' Fails to Allege Facts Supporting Its Tortious Interference Claim……....14

        6.   Scanz' Claims for Constructive Fraud and Breach of Fiduciary Duty Fail
             Because There is No Fiduciary Duty…………………………………………...16

        7.   The Conversion and Unjust Enrichment Claims Are Preempted and
             Otherwise Fail to a State Claim…………………………………………....17

        8.   Only Parties to the Contract With Scanz Owed it A Duty of Good Faith
             and Fair Dealing…………………………………………………………...18

IV.   CONCLUSION......................................................................................... 18

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................5

*Astrotel, Inc. v. Verizon Fla.*,
LLC, No. 8:11-cv-2224-T-33TBM, 2012 U.S. Dist. LEXIS 63172 (M.D. Fla.
May 4, 2012)................................................................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................5, 7

*Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*,
707 F. App'x 576 (11th Cir. 2017).............................................................................13

*Burger King Corp. v. Weaver*,
169 F.3d 1310 (11th Cir. 1999) ...............................................................................18

*Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*,
752 F. Supp. 2d 1271 (S.D. Fla. 2010) ....................................................................15

*Coihue v. Payanybiz*,
Civil Action No. 17-24062-Civ-Scola, 2018 U.S. Dist. LEXIS 235599 (S.D.
Fla. Feb. 6, 2018) (Scola, J.) ....................................................................................17

*Cordell Consultant, Inc. v. Abbott*,
561 F. App'x 882 (11th Cir. 2014).............................................................................6

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003).......................................................................................12, 13, 18

*DynCorp Int'l v. AAR Airlift Grp., Inc.*,
664 F. App'x 844 (11th Cir. 2016).............................................................................8

*Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*,
No. 1:14-cv-22770-UU, 2015 U.S. Dist. LEXIS 188324 (S.D. Fla. Mar. 20,
2015) .......................................................................................................................11, 16

*Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*,
No. 13-cv-80645, 2014 U.S. Dist. LEXIS 200704 (S.D. Fla. Jan. 7, 2014).........14, 15, 16, 17

*First Title of Am., Inc. v. Truist Bank*,
No. 1:20-cv-21787-UU, 2020 U.S. Dist. LEXIS 140838 (S.D. Fla. Aug. 5,
2020) ...........................................................................................................................15

*Future Tech International, Inc. v. Tae Il Media, Ltd.*,
    944 F. Supp. 1538 (S.D. Fla. 1996) ...................................................................18

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) .........................................................................5

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*,
    413 F. App'x 136 (11th Cir. 2011).....................................................................6

*Kleiman v. Wright*,
    2018 U.S. Dist. LEXIS 216417 (S.D. Fla. Dec. 27, 2018) ......................................4

*Lane v. Capital Acquisitions & Mgmt. Co.*,
    No. 04-60602, 2006 U.S. Dist. LEXIS 96422 (S.D. Fla. Apr. 13, 2006) ...................7

*Maxcess, Inc. v. Lucent Technologies, Inc.*,
    433 F.3d 1337 (11th Cir. 2005) .........................................................................5

*McAndrew v. Lockheed Martin Corp.*,
    206 F.3d 1031 (11th Cir. 2000) .........................................................................7

*Radde v. BMS Intermediaries, Inc.*,
    Civil Action No. 18-23274-Civ, 2019 U.S. Dist. LEXIS 36865 (S.D. Fla. Mar.
    6, 2019) (Scola, J.) .......................................................................................14

*Realauction.com, LLC v. Grant Street Grp., Inc.*,
    82 So. 3d 1056 (Fla. Dist Ct. App. 2011) ...........................................................16

*Sentry Data Sys., Inc. v. CVS Health*,
    361 F. Supp. 3d 1279 (S.D. Fla. 2018) ...........................................................8, 11

*SFM Holdings, Ltd. v. Holdings, Ltd. v. Banc of America Securities, LLC*,
    600 F.3d 1334 (11th Cir. 2010) .........................................................................5

*Tamiami Trail Tours, Inc. v. Cotton*,
    463 So. 2d 1126 (Fla. 1985)............................................................................14

*Temurian v. Piccolo*,
    No. 18-cv-62737, 2019 U.S. Dist. LEXIS 67469 (S.D. Fla. Apr. 19, 2019) ............10

*Thanas v. Royal Caribbean Cruises Ltd.*,
    No. 19-21392, 2020 U.S. Dist. LEXIS 5844 (S.D. Fla. Jan. 14, 2020) (Scola,
    J.)...........................................................................................................6, 7

*Univ. of W. Fla. Bd. of Trs. v. Habegger*,
    125 So. 3d 323 (Fla. Dist. Ct. App. 2013) ..........................................................15

*Verbena Prods. LLC v. Pierre Fabre Dermo-Cosmetique USA, Inc.*,
   Civil Action No. 19-23616-Civ, 2020 U.S. Dist. LEXIS 35869 (S.D. Fla. Feb.
   28, 2020) (Scola, J.) ........................................................................................................13

*VVIG, Inc. v. Alvarez*,
   No. 18-23109-CIV, 2019 U.S. Dist. LEXIS 175304 (S.D. Fla. Oct. 9, 2019) ........................9

*Watkins v. NCNB Nat'l Bank of Fla., N.A.*,
   622 So. 2d 1063 (Fla. Dist. Ct. App. 1993) ............................................................................16

*Williams v. Wal-Mart Stores, Inc.*,
   No. 19-81021-Civ, 2019 U.S. Dist. LEXIS 176828 (S.D. Fla. Oct. 10, 2019)
   (Scola, J.) ..................................................................................................................................6

**Statutes**

18 U.S.C. §1836 (b)(3)(d) ...........................................................................................................4

18 U.S.C. §1839(3)(A) ................................................................................................................9

The Lanham Act ..................................................................................................11, 12, 13 and 18

Defend Trade Secrets Act, 18 U.S.C. §1836 et seq. ...................................................... 4, 8, *passim*

Florida Uniform Trade Secret Act, Fla. Stat. §§ 668.001 et seq................................... 4, 8, *passim*

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................1

Fed. R. Evid. 201(b)......................................................................................................................3

Defendants StocksToTrade.com, Inc. and Zachary Westphal move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I.   **INTRODUCTION**

In over 100 paragraphs, 35 pages and thousands of words, plaintiff Scanz Technologies, Inc. ("Scanz") offers accusations, recriminations and hyperbole, but no facts to support its claims for relief.  Claiming only that defendant StocksToTrade.com, Inc.'s ("StocksToTrade") penny stock scanning platform resembles the one previously licensed to defendant JewMon Enterprises, LLC ("JewMon"), Scanz accuses the defendants of trade secret theft, false advertising and assorted torts – even though the vast majority of the defendants are not alleged to have taken any action—other than engage in a purported "conspiracy" that, again, is unsupported by facts.  Even as to StocksToTrade and JewMon – the only defendants who are accused of doing anything directly wrong—Scanz fails to plead anything other than "threadbare recitals" of the elements of the claims.  Scanz' extraordinary verbosity simply cannot disguise the fact that it cannot plead a plausible claim—against anyone.

More importantly, all of Scanz' claims are barred in a manner that cannot be remedied through amendment.  Scanz' trade secret claims (Counts I and II) are time barred.  Scanz' Lanham Act claim (Count III) is foreclosed by controlling Supreme Court precedent.  Scanz' claims for constructive fraud, breach of fiduciary duty and breach of covenant of good faith and fair dealing (Counts IV, V and X[1]) cannot lie against defendants who are not parties to the alleged contract with Scanz.  Scanz tortious interference claim (Count VI) relies on allegations of trade secret theft or false advertising that cannot constitute tortious interference as a matter of law.  Scanz' unjust enrichment and conversion claims (Counts VII and VIII) are preempted.  Because Scanz' claims are each fatally flawed, the Court should dismiss with prejudice.

---

[1] Scanz' Complaint only pleads 9 counts but mistakenly names its last claim, Count X.

- 1 -

## II.    BACKGROUND FACTS

The few facts that can be gleaned from Scanz' Complaint are essentially as follows:
Beginning in 2003, Scanz developed technology for helping consumer invest in penny stocks.
Compl. ¶24.  This technology helped Scanz become a "major player" in the "OTC micro-cap and
penny stock marketplace."  *Id.*   In 2013, Scanz licensed to JewMon the use of "computer
software, so that Jewmon could offer to its client-stock-traders a desktop market analysis
platform via 'white label.'"  *Id.* at 26.  Scanz alleges that defendants Timothy Sykes ("Sykes")
and Zachary Westphal ("Westphal") were the two sole members of JewMon LLC.  *Id.* at ¶¶5-6.
Without any additional supporting facts, Scanz alleges that Sykes, Westphal and defendant
Timothy Bohen ("Bohen") "controlled" defendants JewMon, Millionaire Publishing, Millionaire
Media and StocksToTrade.  *Id.* ¶11.

According to Scanz, it made available to Jewmon "numerous element of the Scanz Assets
and Scanz Trade Secrets,[2] including, *inter alia,* access to Scanz' licensed subscription
management back office infrastructure as well as continually updated versions of the object code
of the computer software making up the core of the Scanz Assets and related product offerings."
Compl. ¶26.  Scanz claims that its "white label" license agreement with JewMon—which is ***not***
attached by Scanz to its Complaint—prohibited JewMon from using "any portion of the Scanz
Assets, Scanz Trade Secrets and related technologies furnished through the license agreement
other than in the matter specifically contemplated by the license agreement."  *Id.* ¶¶27.  Scanz
does not allege that any defendant other than JewMon was party to this license agreement.

In 2015, Scanz and JewMon voluntarily terminated the license agreement.  Compl. ¶30.
Scanz and JewMon signed a Termination Notice (attached to the Complaint) that reiterated the
continuing nature of certain contract provisions, that the customer database was jointly owned
and the parties' obligations of confidentiality.  *Id.* Notably, this confidentiality obligation is

---

[2] As discussed in Part III(B)(3) below, the Complaint contains broad and confusing
definitions of "Scanz Assets" and "Scanz Trade Secrets" that are virtually indecipherable.

limited solely to non-public information "marked or otherwise designated as confidential." *Id.* Scanz does not allege that it designated any materials it provided to JewMon as confidential. *Id.*

In December of 2016, Scanz claims that it "learned . . . that Sykes may have . . . started deploying a market analysis technology product similar to the Scanz Assets, the Scanz Trade Secrets and associated product offerings." Compl. ¶33. This purportedly caused Scanz to investigate whether Sykes' market analysis products violated the "surviving provisions of the license agreement or applicable law." *Id.* Scanz alleges that this "investigation" continued over the course of the next seven or eight months when Scanz finally learned "in late August 2017" that Sykes' products contain "virtually identical functionality" as Scanz purported trade secrets. *Id.* ¶34. After a year and a half of investigation, Scanz claims that in May 2018 it finally concluded that "Sykes' market analysis platform had progressed to . . . containing a virtually identical 'look and feel'" as Scanz' purported trade secrets. *Id.* ¶35.

Scanz' official Twitter account tells a very different story.[3] Scanz' public statements show that Scanz had actually concluded as early as February 16, 2016 that the StocksToTrade platform (referred to as "STT") was an "attempted carbon-copy ripoff of #EquityFeed." RJN at Ex. 1. Numerous additional Tweets followed in 2016 through June 2017, where Scanz wrote, among other things, that:

- **August 15, 2016:** "STT is just a really bad attempted ripoff of @EquityFeed. They used our platform for 2 years as a 'white label'…,"

- **August 15, 2016:** StocksToTrade "decided to be unethical and ripoff the people who helped them"

- **December 2, 2016:** "Come on @StocksToTrade stop BS'ing that STT is the brainchild from ur experience as traders. U stole it all from @EquityFeed. Thieves #scum,"

- **January 30, 2017:** "@StocksToTrade aka the "sheisters" copy it and say it's theirs"

---

[3] As discussed in the Request for Judicial Notice filed herewith, the Court may consider these Tweets since they are "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

RJN at Exs. 2-4 & 7.  Perhaps most telling was when, **on January 13, 2017,** Scanz was asked on Twitter, "@Equityfeed When do you plan to sue @StocksToTrade for copying your software?" Scanz responded, **"Already in the works."**  *Id*. at Ex. 5.  Thus, Scanz was sufficiently convinced of the alleged misconduct in 2016 and early 2017 that it publicly accused StocksToTrade of theft and even claimed to be planning a lawsuit!

Although Scanz alleges that the Defendants engaged some kind of conspiracy to mislead, its allegations are so confusing and burdened down with rhetoric that it is often difficult to discern where Scanz' factual allegations stop and its argument begins.  The Complaint is entirely devoid of any factual support for Scanz' conspiracy allegations, its claim that STT's platform uses any information proprietary to Scanz or that Scanz suffered any injury or losses on account of the alleged conduct.

## III.   ARGUMENT

### A. Scanz' Trade Secret Claims (Counts I & II) Are Time Barred

Scanz' claims under the Defend Trade Secrets Act, 18 U.S.C. §1836 et seq. ("DTSA") and the Florida Uniform Trade Secret Act, Fla. Stat. §§ 668.001 et seq. ("FUTSA") are both subject to a three-year statute of limitations.  The DTSA claim "must be commenced within 3 years after the date on which the misappropriation is discovered or should have been discovered."  *See* 18 U.S.C. §1836 (b)(3)(d). Likewise, FUTSA provides that "[a]n action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim." Fla. Sta. § 688.007.  *See e.g.*, *Kleiman v. Wright*, 2018 U.S. Dist. LEXIS 216417, *43-44 (S.D. Fla. Dec. 27, 2018) (granting motion to dismiss time-barred DTSA and FUTSA claims [Counts III & IV] with prejudice).

Here, Scanz' own public statements demonstrate that it knew of defendants' alleged misappropriation of trade secrets no later than February 16, 2016 and even threatened to sue STT for the alleged misconduct on January 13, 2017. RJN at Exs. 1 & 5. Scanz' trade secret claims,

therefore, expired 3 years later, on February 16, 2019 or at the latest January 13, 2020, well before Scanz filed its Complaint on July 17, 2020.

The Court can, and should, consider Scanz' public statements made from its official Twitter account because they are "(1) central to the plaintiff's claim and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citation omitted). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id*. *See also SFM Holdings, Ltd. v. Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1338 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340, n.3 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity"). Accordingly, Counts I and II should be dismissed without leave to amend.

## B. The Complaint Fails Plausibly to State Any Claim for Relief

### 1. Legal Standard

To survive a motion to dismiss, the plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Where a plaintiff offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," the Court should dismiss. *Id*. As stated by the Eleventh Circuit:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

- 5 -

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted). Where a plaintiff fails to state "nonconclusory descriptions of specific, discrete facts of the who, what, when, and where variety" plausibly giving rise to claim," the claims are insufficient. *Williams v. Wal-Mart Stores, Inc.*, No. 19-81021-Civ, 2019 U.S. Dist. LEXIS 176828, at *10 (S.D. Fla. Oct. 10, 2019) (Scola, J.) *see also e.g., Thanas v. Royal Caribbean Cruises Ltd.*, No. 19-21392, 2020 U.S. Dist. LEXIS 5844, at *9 (S.D. Fla. Jan. 14, 2020) (Scola, J.) (dismissal for failure to plead facts showing duty or knowledge).

### 2.  Scanz' Fails to Plead Facts Supporting Conspiracy Liability

Scanz asserts each of its claims against all of the defendants but provides no facts supporting their individual liability other than a conclusory allegation of "conspiracy." Individual defendants other than Sykes are barely mentioned in the Complaint, and Scanz does not allege either of them did anything to harm Scanz – other than purportedly "board[ing] and then engag[ing]" in the purported conspiracy.  Compl. ¶¶39-44.  And Scanz provides no basis other than the alleged conspiracy for holding StocksToTrade liable on Scanz' claims for constructive fraud (Count IV), fiduciary duty (Count V) or breach of the covenant of good faith and fair dealing (Count X).  Because Scanz does not even come close to pleading facts supporting civil conspiracy, these claims must be dismissed as to these defendants.  And as to the individual defendants, there can be no conspiracy between a company and its shareholders or agents as a matter of black letter Florida law.

To plead liability based on civil conspiracy, a Plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)). With respect to the agreement and overt act elements, a plaintiff must plead "allegations [that] are both sufficiently particularized and also sufficient to support reasonable inferences of

- 6 -

agreement and an overt act." *Id.* at 7. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556-57.

While Scanz repeatedly claims to have described a conspiracy "in detail" (e.g., Compl. ¶55), it alleges no facts supporting one.  *See* Compl. ¶¶39, 44.  Instead, Scanz offers only "threadbare conclusions." Stripping away the forest of verbiage, Scanz alleges only that the defendants "cooperated" with Sykes, who controlled StocksToTrade and some other entities, "to buy themselves time to perfect their theft" of Scanz property. Then, when Sykes executed the Termination Notice, all of the defendants somehow caused Scanz to believe that the defendants had no intention "to utilize product offerings" like those of Scanz. *Id.*

Without factual support, Scanz simply alleges that there *must* have been a conspiracy because Scanz later discovered that StocksToTrade was marketing a service that bore some resemblance to Scanz' own service. Scanz points to no *facts* supporting a plausible conspiracy to "pirate" or "steal" Scanz' proprietary content—only that it believes that there was some misappropriation and that, therefore, there must have been a conspiracy. This is precisely the kind of "bare assertion of conspiracy" that the U.S. Supreme Court held insufficient in *Twombly*. 550 U.S. at 556-57.  Because Scanz simply "lumps all the defendants together and fails to distinguish their conduct," all its claims against Westphal (and the individual defendants) and Counts IV, V and X against StocksToTrade should be dismissed. *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602, 2006 U.S. Dist. LEXIS 96422, at *16 (S.D. Fla. Apr. 13, 2006) (dismissal where plaintiff fails to provide clear facts giving rise to each defendant's liability).

Finally, it is well established that a corporation cannot conspire with its shareholders or employees.  *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Id.*  As to the individual defendants, Scanz alleges that they are all either members or agents of JewMon.  Compl. ¶¶5-7.  Scanz' purported conspiracy fails for this reason as well.

- 7 -

### 3.   Scanz' Misappropriation of Trade Secret Claims (Counts I and II) Fail

The Court should dismiss Counts I and II of the Complaint because Scanz fails to allege facts plausibly supporting its claims under the Defend Trade Secrets Act, 18 U.S.C. §1836 et seq. ("DTSA") and the Florida Uniform Trade Secret Act, Fla. Stat. §§ 668.001 et seq. ("FUTSA"). Scanz' definition of what constitutes a trade secret is so confusing and seemingly broad that it is impossible for Defendants to understand what they allegedly took, and Scanz provides no facts plausibly showing there was any misappropriation of anything.

To plead a claim under the DTSA, a plaintiff "must plausibly allege that it (i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or disclosed that information, despite (iii) a duty to maintain its secrecy." *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018) (internal quotations omitted). A FUTSA plaintiff must demonstrate that (1) it possessed a "trade secret" and (2) the secret was misappropriated. *Id.* FUTSA defines a trade secret as information that "(a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id. quoting* Fla. Stat. § 688.002(4).

### i.   Scanz Does Not Plead Facts Sufficient to Show the Existence of a Trade Secret.

Even a cursory review of the Complaint shows that Scanz has failed to "give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016). Scanz identifies broad—almost limitless— categories of data, services and hardware that it generally categorizes as "trade secrets" in a series of confusing and confounding definitions.  Scanz alleges that pretty much every product it ever issued *as well as related products* constitute the trade secrets at issue.  In Paragraph 40, Scanz alleges:

> The Scanz Assets, Scanz Trade Secrets and related product offerings referenced throughout this Complaint, including, without limitation, Scanz licensed subscription management back-office infrastructure as well as its continually updated versions of the object code of the computer software and each and every product offering of Scanz as well as the hardware and software components thereof made available to these defendants throughout the term of the license agreement, are legally classified as trade secrets pursuant to both federal and state common law and statutory law.

Scanz defines "Scanz Assets" to include all of Scanz' "business products." Compl. ¶2.  Scanz defines "Scanz Trade Secrets" to mean "the foundation and proprietary basis" of the Scanz Assets," which "involve numerous technological and device oriented trade secrets." *Id.*

Having defined as trade secrets essentially *everything* it ever published or made available to JewMon (including hardware!), Scanz accuses the defendants of misappropriating all of it, i.e., the "trade secreted [sic] protected Scanz Assets and Scanz Trade Secrets." Compl. ¶43; *see also*, *Id.* at ¶¶40-42, 44-50, 52-59 (alleging that both "Scanz Assets" and "Scanz Trade Secrets" were misappropriated).

What purported "trade secrets" Scanz claims were misappropriated cannot be gleaned from the Complaint.  Are they the "Scanz Trade Secrets," which are defined to include the "Scanz Assets," which are, in turn, defined to include all of Scanz' "business products"? What about the "related product offerings," which appear to be something other than the Scanz Assets and Scanz Trade Secrets? Compl. ¶40. Are the purported trade secrets, in fact, something within these broad categories? Unfortunately, the defendants (and the Court) are left to guess.

In a similar case, Judge Altonaga dismissed a FUTSA claim because plaintiff failed to meet the "relatively low 'sufficient particularity' standard."  As here, in *VVIG, Inc. v. Alvarez*, No. 18-23109-CIV, 2019 U.S. Dist. LEXIS 175304 at *8 (S.D. Fla. Oct. 9, 2019), plaintiff's definition of trade secrets was "'grab bag' of information, so broad and conclusory as to be nonsensical." The court held that "broad categories of information, such as financial and technical data" are insufficient to state a claim for trade secret misappropriation. *Id.*  Without even a bare bones suggestion of the trade secrets at issue, Scanz' trade secret claims likewise fail.

Further, information is only a trade secret if the owner has taken reasonable steps to keep that information confidential. 18 U.S.C. §1839(3)(A); Fla. Stat. §688.002(4).  Here, Scanz

- 9 -

alleges in its DTSA claim that it requires licensees of the Scanz Assets to agree to terms "carefully *proscribing their rights* to utilize the Scanz Assets." Compl. ¶41 (emphasis added). In its FUTSA claim, Scanz claims its customers "entere[ed] into written agreements of confidentiality or non-disclosure expressly acknowledging that the Scanz Assets and Scanz Trade Secrets are proprietary and confidential and that all of these properties of Scanz will not be used or disclosed in any manner except for the benefit of Scanz." *Id*. ¶53. Neither of these ambiguous allegations (even if actually practiced) would have kept secret all of the "Scanz Assets and Scanz Trade Secret" purportedly at issue here, and Scanz describes no other steps taken internally or externally to preserve confidentiality.

Even if these allegations were less equivocal, they are directly contradicted by the Termination Notice, which purportedly defines the parties' post-termination obligations. Compl. ¶¶30, 43. The Termination Notice requires only that JewMon "keep confidential and not disclose to any third party or use (except as contemplated by this Agreement), any non-public information obtained from the other party *that is marked or otherwise designated confidential ("Confidential Information")*." (emphasis added). Nowhere in the Complaint does Scanz suggest that it ever marked or otherwise designated *any* information it provided to JewMon as confidential. Where a plaintiffs' allegations reveal circumstances that would permit disclosure of the alleged trade secret, dismissal is warranted. *Temurian v. Piccolo*, No. 18-cv-62737, 2019 U.S. Dist. LEXIS 67469, at *31 (S.D. Fla. Apr. 19, 2019) (dismissing DTSA and FUTSA claims with prejudice because "plaintiffs fail to allege that they took reasonable steps to safeguard the secrecy of their data in order to state claims for misappropriation of trade secrets."). Here, the Termination Notice protects against *some* disclosure– but *only if the information is specifically designated.* Because this contradicts Scanz' claim that it kept all of its trade secrets confidential, the Court should dismiss Counts I and II.

### ii.   Scanz Fails to Plead Facts Showing Misappropriation.

In broad terms, misappropriation under both DTSA and FUTSA require disclosure or use of a trade secret by a person who knew or should have known that the material was a trade

- 10 -

secret, acquired the information under circumstances giving rise to a duty to maintain its secrecy, or where the information was derived from or through a person obliged to maintain its secrecy or limit its use. *See Sentry Data Sys., Inc.*, 361 F. Supp. 3d at 1292 (setting forth elements). Other than "threadbare recitals," "conclusory statements" and outright hyperbole, Scanz offers no support for any of these elements. This is grounds for dismissal. *Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*, No. 1:14-cv-22770-UU, 2015 U.S. Dist. LEXIS 188324, at *27 (S.D. Fla. Mar. 20, 2015) (complaint containing only "conclusory statements" of alleged misappropriation dismissed).

Given that Scanz' Complaint does not suggest that it ever designated *anything* as "Confidential" (as required under the Termination Notice), Scanz provides no legitimate reason why JewMon (let alone the other defendants) would assume that *all* of Scanz' *"business products"* could conceivably be considered confidential.  This contradicts Scanz' conclusory claim that the Defendants *knew* the information was proprietary, which is a requisite element of misappropriation.  *Sentry Data Sys.*, 361 F. Supp. 3d at 1292.

Further, the Complaint does not contain a single *fact* showing that any information was transferred from JewMon to any other defendant. Again, the Complaint is replete with conclusory accusations of theft, but offers nothing but vaguely claimed similarities between the competing products as support. Scanz does nothing more than speculate that "Sykes' market analysis products contained components or elements that were substantially identical to the ones included in the Scanz Assets, the Scanz Trade Secrets and the associated Scanz product offerings covered under the license agreement." Compl. ¶36. This is plainly insufficient to state a claim.

### 4.  Scanz Fails Plausibly to Allege a Lanham Act False Advertising Claim

Scanz alleges that the defendants have violated the Lanham Act by issuing "false and misleading statements of fact to the marketplace while omitting substantial disclosures the market and Scanz were entitled to know." Compl. ¶64. Scanz alleges that each of the defendants falsely represented themselves as authors of the StocksToTrade platform, which Scanz claims gave "the impression there was nothing special about Scanz' market analysis products." *Id.* at

- 11 -

¶67.  This allegedly caused consumers to buy defendants' products instead of Scanz' products and have had a "material effect on the purchasing decisions of members of the general public." Id. ¶¶69, 71.  It is unclear whether Scanz is claiming the allegedly false statements are likely to cause confusion or mistake as to the origin, sponsorship or approval of the StocksToTrade platform under Section 43(a)(1)(A), or that the allegedly false statements misrepresent the nature, characteristics, qualities or geographic origin of defendants' products under Section 43(a)(1)(B). *Compare Id*. ¶66 *with* ¶67. Regardless, this claim is meritless.

As a starting point, Scanz does not bother to quote or otherwise reproduce even a single allegedly false or misleading statement. Instead, Scanz paraphrases, alleging that "these defendants" falsely claimed to have

> lawfully developed a virtually identical market analysis product line as the market analysis product line sold nationally and internationally by Scanz for nearly 20 years utilizing Scanz Assets and the Scanz Trade Secrets.

*Id*. ¶65. The Complaint goes on to state that defendants "consistently misrepresent the nature and characteristics of their market analysis" but provide no further detail or examples. *Id.* ¶66.

The United States Supreme Court has unequivocally rejected Lanham Act liability under analytically indistinguishable facts.  In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-37 (2003), the defendant allegedly copied the plaintiff's World War II video content, edited the videos and sold the resulting videos "as its own product" by advertising that the videos were "Produced and Distributed by" the defendant. *Id*. at 27.  At trial, the jury found the defendant liable under the Lanham Act for falsely misrepresenting itself as the source of the videos, rather than crediting the plaintiff.

The Supreme Court reversed, holding that a plaintiff cannot use the Lanham Act's false advertising and false designation of origin provisions against a defendant who copies plaintiff's expressions and ideas – even if the defendant falsely claims to have authored or conceived of them itself.  Writing for a unanimous court, Justice Scalia reasoned that allowing plaintiffs to pursue others under the Lanham Act for falsely claiming works of authorship or ideas as their own would "create a species of mutant copyright law" with practical problems not contemplated

- 12 -

by Congress. *Id*. at 34-36. The Lanham Act does ***not*** create "a cause of action for, in effect, plagiarism." *Id*. at 36.  Thus, even if defendants here actually did falsely claim to have developed the StocksToTrade platform, there would still be no claim under the Lanham Act.

Even if Scanz could traverse *Dastar*, Scanz must still plead facts showing that the allegedly false statements were "commercial advertising or promotion." *Verbena Prods. LLC v. Pierre Fabre Dermo-Cosmetique USA, Inc.*, Civil Action No. 19-23616-Civ, 2020 U.S. Dist. LEXIS 35869, at *8 (S.D. Fla. Feb. 28, 2020) (Scola, J.).  To this end, the Court must determine whether the false statements were made to influence consumers to buy the defendant's products and whether the statements were sufficiently disseminated to the relevant purchasing public. *Id*.

Here, because Scanz only paraphrases the allegedly false statements, the Court is in no position to assess whether they were made to influence consumers or for some other purpose. Likewise, the Court cannot evaluate whether there was significant dissemination since the Complaint nowhere describes how or to whom these statements were made except to say via "primarily the worldwide web." Compl. ¶67; s*ee Astrotel, Inc. v. Verizon Fla*., LLC, No. 8:11-cv-2224-T-33TBM, 2012 U.S. Dist. LEXIS 63172, at *19-20 (M.D. Fla. May 4, 2012) (dismissal where false statements "were not disseminated sufficient to the relevant purchasing public."). Scanz' Complaint contains a dearth of plausible facts to show the alleged false statements were indeed commercial speech.

Finally, to state a claim for false advertising, a plaintiff must, at a minimum draw a connection between the allegedly false statements and its alleged injury to show proximate causation. *See Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, 707 F. App'x 576, 580-81 (11th Cir. 2017) (dismissal upheld where no facts showed false statements caused plaintiff's injury). Scanz claims that it lost over $10 million in sales because defendants claimed they independently developed a competing platform, thus making Scanz' platform less "special." Compl. ¶¶67, 72.  Scanz, however, nowhere explains why consumers of Scanz' or defendants' competing platforms would care who developed the platform or how that conceivably could have affected its business.  This additional, independent ground warrants dismissal.

- 13 -

### 5.   Scanz' Fails to Allege Facts Supporting Its Tortious Interference Claim

Like its other claims, Scanz' claim for tortious interference (Count VI) does nothing but offer "threadbare recitals" of elements, with no facts to back them up.  To state a claim under Florida law for tortious interference with a business relationship, a plaintiff must allege (1) the plaintiff had a business relationship; (2) the defendant had knowledge of this relationship; (3) the defendant, as a third party to the relationship, intentionally and unjustifiably interfered with the relationship; and (4) the plaintiff suffered damages as a result of the interference. *Radde v. BMS Intermediaries, Inc.*, Civil Action No. 18-23274-Civ, 2019 U.S. Dist. LEXIS 36865, at \*10 (S.D. Fla. Mar. 6, 2019) (Scola, J.); *see also Tamiami Trail Tours, Inc. v. Cotton,* 463 So. 2d 1126, 1127 (Fla. 1985) (stating elements).

Scanz alleges that defendants intentionally interfered with their business by "stealing and pirating the Scanz Assets and Scanz Trade Secrets," by "reverse engineering additional modules" or by copying the "look and feel" of its technology. Compl. ¶86.  Scanz also alleges that defendants also interfered with their business through "false and misleading statements of fact to the marketplace" that defendants (and not Scanz) developed defendants' competing trading platform. *Id.* at ¶87. This activity purportedly disrupted "numerous business relationships with clients located in Florida, located throughout the United States and located throughout the world" that Scanz allegedly "fostered over . . . two decades." *Id*. at ¶83.

Scanz cannot even get past the first element—the existence of a business relationship.  To allege tortious interference, the plaintiff must plead the existence of "(1) a business relationship evidenced by an actual and identifiable understanding or agreement and (2) a relationship with a particular party, and not just a relationship with the general business community." *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, No. 13-cv-80645, 2014 U.S. Dist. LEXIS 200704 \*35-36 (S.D. Fla. Jan. 7, 2014).  Interference is only actionable if there was "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Radde*, 2019 U.S. Dist. LEXIS 36865, at \*10.  A plaintiff who alleges interference generally with its customers or clients has not stated a claim. *Id.*

- 14 -

Scanz points to no actual or identifiable business relationship.  Scanz alleges instead that its relationships include essentially everyone it has done business with in the last 20 years. *See* Compl. ¶83.  The court in *Fin-S* addressed a very similar claim.  The *Fin-S* plaintiff alleged that defendant had stolen and marketed its proprietary surfboard technology, thus causing it to lose "existing and prospective business relationships with its manufacturers, distributors, etc." *Fin-S Tech*, 2014 U.S. Dist. LEXIS 200704, at *35-36.  Judge Ryskamp dismissed the claim, however, ruling that such "conclusory" and "generalized allegations of business relationships with unidentified customers are insufficient to state a claim for tortious interference with business relationships." *Id. see also Coach Servs., Inc. v. 777 Lucky Accessories, Inc.,* 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) ("no cause of action exists for tortious interference with a business's relationship to the community at large.").  Scanz' failure to point to interference with specific, identifiable customers alone requires dismissal.

Scanz also fails to plead facts plausibly showing that defendants intended to interfere with Scanz' relationships. "The law in Florida is clear that there is no such thing as a cause of action for interference with a contractual or advantageous business relationship which is only consequentially effected." *First Title of Am., Inc. v. Truist Bank,* No. 1:20-cv-21787-UU, 2020 U.S. Dist. LEXIS 140838, at *10-11 (S.D. Fla. Aug. 5, 2020) (quoting *Fla. Power & Light Co. v. Fleitas,* 488 So. 2d 148, 151 (Fla. 3d DCA 1986) (dismissing claim that wrongfully freezing bank account is tortious interference).  At most, Scanz alleges that defendants improperly copied Scanz' technology and claimed credit and that *as a consequence* disrupted Scanz' relationships with its customers at large.  Even if defendants, in fact, intended to copy Scanz' technology, this does not equate to the requisite intention to interfere with Scanz' alleged contracts. *Id.*

Finally, Scanz fails to plead that defendants conduct proximately caused Scanz to suffer an injury. "Imbedded within [the elements of a tortious interference claim] is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages." *Univ. of W. Fla. Bd. of Trs. v. Habegger*, 125 So. 3d 323, 326 (Fla. Dist. Ct. App. 2013). "[M]ere supposition that defendant's interference caused the cessation of

- 15 -

the business relationship" is insufficient to plead proximate causation.  *Realauction.com, LLC v. Grant Street Grp., Inc.*, 82 So. 3d 1056, 1059 (Fla. Dist Ct. App. 2011). Scanz is unable to point to a single fact showing a connection between defendants' alleged conduct and harm to Scanz' (unidentified) business relationships. *See Enteris Biopharma, Inc.* 2015 U.S. Dist. LEXIS 188324, at \*30 (dismissing claim for failure to allege proximate causation).

### 6. Scanz' Claims for Constructive Fraud and Breach of Fiduciary Duty Fail Because There is No Fiduciary Duty.

Scanz' claims for constructive fraud (Count IV) and breach of fiduciary duty (Count V) fail because they are both premised on the existence of a fiduciary duty that is unsupported by Scanz allegations.  According to Scanz, each defendant owed Scanz' a fiduciary duty "of the highest character" "by reason of the confidential relationship arising from and as a result of the license agreement" between Scanz and JewMon. Compl. ¶¶75, 80. Scanz nowhere explains how JewMon's commercial contract with Scanz' somehow imposed on JewMon—let alone the other defendants—a fiduciary duty to Scanz.  Without a fiduciary duty, each of these claims fail.

"A fiduciary duty, or relationship, arises when confidence is reposed by one party and a trust accepted by the other." *Fin-S Tech*, 2014 U.S. Dist. LEXIS 200704, at \*26-27 (S.D. Fla. Jan. 7, 2014) (quoting *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. Dist. Ct. App. 2003)). To support the existence of a fiduciary relationship, a plaintiff must allege "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat'l Bank of Fla., N.A.,* 622 So. 2d 1063, 1065 (Fla. Dist. Ct. App. 1993). Parties to an ordinary license agreement owe one another no fiduciary duty—even where the agreement imposes a strict duty of confidentiality. *Fin-S Tech,* 2014 U.S. Dist. LEXIS 200704 at \*26-27. To allege a fiduciary duty, the plaintiff must show "circumstances exceeding an ordinary commercial transaction." *Id*. at 28.

Beyond what appears to be an ordinary commercial contract between JewMon and Scanz, Scanz points to no basis for imposing a fiduciary duty.  Accordingly, Scanz' claims fail as a

matter of law, and they should be dismissed.  *Fin-S Tech.*  2014 U.S. Dist. LEXIS 200704 at *26-27.

### 7.   The Conversion and Unjust Enrichment Claims Are Preempted and Otherwise Fail to a State Claim.

Because Scanz' claims for unjust enrichment (Count VII) and conversion (Count VIII)[4] rely on the alleged "stealing and pirating of the Scanz Assets and Scanz Trade Secrets" they are preempted by FUTSA  *See* Compl. ¶91, 99. Scanz claims that defendants converted its trade secrets or were unjustly enriched by using them, thus, these claims do not differ substantively from its trade secret claims and are therefore preempted.

To the extent Scanz bases its common law conversion and unjust enrichment claims on alleged trade secret misappropriation, "then the FUTSA preempts such claims." *Coihue v. Payanybiz*, Civil Action No. 17-24062-Civ-Scola, 2018 U.S. Dist. LEXIS 235599, at *15 (S.D. Fla. Feb. 6, 2018) (Scola, J.) (listing cases). The test for preemption is whether "the common law claims are distinguishable from the allegations of trade secret misappropriation." *Id*. Scanz' claim for unjust enrichment and conversion allege nothing more than that defendants took, possessed, and used the Scanz Trade Secrets and the Scanz Assets (which it also claims are trade secrets). Compl. ¶¶40, 91, 95, 98, 99. Although Scanz claims that the material "defendants have pirated from Scanz goes well beyond the trade secret protected properties," Scanz nowhere explains how this is so. *Id.* ¶99.  Scanz does, however, incorporate multiple paragraphs from its trade secret claims into the conversion and unjust enrichment claims.  Compl. ¶¶90, 97.  Thus, FUTSA plainly preempts these claims.  And, as discussed above, Scanz' trade secret claims are not only barred by the statutes of limitations, they fail to allege facts plausibly supporting cognizable claims.  These claims should be dismissed.

---

[4] Scanz claims for constructive fraud (Count V), breach of fiduciary duty (Count VI), tortious interference (Count VII) and breach of the implied duty of good faith and fair dealing (Count X) are also subject to preemption to the extent they relying on the same purported theft of trade secrets described in Scanz' DTSA and FUTSA claims. These claims, however, also fail more fundamentally for the reasons stated.

### 8. Only Parties to the Contract With Scanz Owed it A Duty of Good Faith and Fair Dealing

Even though Scanz alleges a contract with JewMon only, Scanz nonetheless alleges that the other defendants violated the implied covenant of good faith and fair dealing in that contract "by their theft and pirating of the Scanz Assets and Scanz Trade Secrets." Compl. ¶¶102, 105. It is well established, however, that a duty of good faith and fair dealing is imposed only when there is a contract between the parties. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). "It is axiomatic that maintenance of a contract action requires that the defendant be a party to the contract at issue." *Future Tech International, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1564 (S.D. Fla. 1996). Scanz does not allege the existence of a contract with any defendant but JewMon. *See* Compl. ¶¶101-07. Absent a contract, none of the other defendants owed Scanz any contractual duties. The Court should dismiss Count X of Scanz' complaint.

## IV.    CONCLUSION

The Court should dismiss all of Scanz' claims with prejudice. The Court should dismiss the trade secret claims (Counts I and II) with prejudice as they are plainly time barred and fail, under DTSA and FUTSA, as a matter of law. Scanz' Lanham Act claim (Count III) is foreclosed by the United States Supreme Court's holding in *Dastar Corp.*, *supra*, 539 U.S. 23. Scanz' claims for constructive fraud, breach of fiduciary duty and breach of covenant of good faith and fair dealing claims (Counts IV, V and X) cannot lie against defendants who are not parties to contracts with Scanz. Scanz tortious interference claim (Count VI) relies on allegations of trade secret theft or false advertising that cannot constitute tortious interference as a matter of law. Scanz' unjust enrichment and conversion claims (Counts VII and VIII) are preempted.

The Court also should dismiss Scanz' claims because Scanz simply has not alleged sufficient facts to give rise to the claims it asserts. To the extent the Court grants leave to amend, defendants StocksToTrade and Westphal respectfully request the Court instruct Scanz on the need to point to actual facts supporting its claims, and not just conclusory accusations and hyperbole.

- 18 -

## V.     REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, StocksToTrade and Westphal request a hearing on their Motion to Dismiss.  The Complaint in this action spans 110 paragraphs (plus subparts) and asserts federal and state statutory and common law claims against eight defendants.  Because the issues raised in this Motion above are detailed and complex, the Court may benefit from oral argument on the matter.  StocksToTrade and Westphal request 45 minutes per side for argument.

Dated: October 5, 2020.                          Respectfully submitted,

                                                 SQUIRE PATTON BOGGS (US) LLP
                                                 200 South Biscayne Boulevard, Suite 4700
                                                 Miami, FL 33131
                                                 T.:   305 577 7000

                                                 By: */s/ Raúl B. Mañón*
                                                       Raúl B. Mañón (FBN 18847)
                                                       (raul.manon@squirepb.com)

OF COUNSEL:

  Gabriel Colwell
  (admitted *pro hac vice*)
  SQUIRE PATTON BOGGS (US) LLP
  555 South Flower Street, 31st Floor
  Los Angeles, CA 90071

  Joseph A. Meckes
  (admitted *pro hac vice*)
  SQUIRE PATTON BOGGS (US) LLP
  275 Battery Street, Suite 2600
  San Francisco, CA 94111

                                                 *Counsel for Defendants Zachary Westphal,*
                                                 *Timothy Bohen, and StocksToTrade.com,*
                                                 *Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 5th day of October 2020, I electronically filed this Motion with the Clerk of Court using the CM/ECF system.

/s/ *Raúl B. Mañón*
Raúl B. Mañón

- 20 -