UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

SCANZ TECHNOLOGIES, INC., fka
EQUITYFEED CORPORATION, A
Canadian (Quebec) Corporation
                    Plaintiff,

vs.

                                                        Case No. 20-cv-22957-RNS

JEWMON ENTERPRISES, LLC, et. al.,

            Defendants.


**DEFENDANTS JEWMON ENTERPRISES, LLC, TIMOTHY SYKES, MILLIONAIRE
PUBLISHING, LLC, MILLIONAIRE PUBLISHING, LLC, AND MILLIONAIRE
MEDIA, LLC'S MOTION TO DISMISS AND MEMORANDUM OF LAW**

## TABLE OF CONTENTS

Preliminary Statement ................................................................................................ 1

Statement of Facts ...................................................................................................... 4

Standard of Review .................................................................................................... 6

Argument .................................................................................................................... 7

I.      Plaintiff's Claims Are Time-Barred ................................................................ 7

II.     The Complaint's Common Law Tort Claims Are Preempted By The Florida
Uniform Trade Secrets Act .............................................................................. 9

III.    The Complaint Pleads No Independent Cause of Action Against Mr. Sykes,
Millionaire Media, or Millionaire Publishing ............................................... 10

       A.     The Complaint States No Separate Claim Against Mr. Sykes ............ 10

       B.     The Complaint States No Separate Claim Against Millionaire Media or
Millionaire Publishing ....................................................................... 11

IV.    Each Claim Asserted In The Complaint Should Be Dismissed For Failure To
Plead A Cognizable Cause Of Action ............................................................ 13

       A.     Plaintiff Has Failed to Plead a Trade Secret Claim (Counts I and II). ..... 13

           1.     Plaintiff Has Not Pled the Existence of a Trade Secret ........... 13

           2.     Plaintiff Has Not Pled Misappropriation. ............................... 14

       B.     The Complaint Fails to Allege a Violation of the Lanham Act (Count III) ......... 15

       C.     The Complaint's Constructive Fraud (Count IV) and Breach of Fiduciary
Duty (Count V) Claims Fail to Allege the Existence of Any Actionable
Duty .................................................................................................... 16

       D.     The Complaint Fails to Plead Any Element of a Tortious Interference
Claim (Count VI) ............................................................................... 17

       E.     The Complaint's Unjust Enrichment (Count VII) Claim Should Be
Dismissed Because Plaintiff Has an Adequate Remedy at Law. ......... 18

       F.     The Complaint's Conversion Claim (Count VIII) Should Be Dismissed
Because Plaintiff Fails to State a Claim ............................................. 18

       G.     The Complaint's Implied Duty of Good Faith and Fair Dealing Claim
(Count X) Should Be Dismissed Because Plaintiff Fails to Assert a Breach
of Contract Claim ............................................................................... 19

Conclusion ............................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Advantor Sys. Corp. v. DRS Tech. Servs.*,
    678 F. App'x 839 (11th Cir. 2017)....................................................................... 18

*AmBrit, Inc. v. Kraft, Inc.*,
    812 F.2d 1531 (11th Cir. 1986) ......................................................................... 8

*Apex Toxicology, LLC v. United Healthcare Servs.*,
    No. 17-61840-CIV, 2020 U.S. Dist. LEXIS 120460 (S.D. Fla. July 6, 2020)...................... 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................6, 19

*Beltran v. Vincent P. Miraglia, M.D., P.A.*,
    125 So. 3d 855 (Fla. 4th DCA 2013) ................................................................... 8

*Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*,
    707 F. App'x 576 (11th Cir. 2017)..................................................................... 16

*Brexendorf v. Bank of Am., N.A.*,
    319 F. Supp. 3d 1257 (M.D. Fla. 2018).................................................................. 8

*Centurion Air Cargo v. UPS Co.*,
    420 F.3d 1146 (11th Cir. 2005) ....................................................................... 19

*Coihue v. Payanybiz*,
    No. 17-24062-CIV, 2018 U.S. Dist. LEXIS 235599 (S.D. Fla. Feb. 6, 2018)
    (Scola, J.) ............................................................................................... 9

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)..................................................................................15, 16

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) ........................................................................ 4

*Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*,
    136 F. Supp. 2d 1271 (S.D. Fla. 2001).................................................................. 18

*Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*,
    369 F.3d 1197 (11th Cir. 2004) ....................................................................... 16

*Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*,
    No. 1:14-cv-22770-UU, 2015 U.S. Dist. LEXIS 188324 (S.D. Fla. Mar. 20,
    2015)..................................................................................................... 14

*Ethan Allen v. Georgetown Manor*,
    647 So. 2d 812 (Fla. 1994) ............................................................................ 17

*Florida v. Tenet Healthcare Corp.*,
    420 F. Supp. 2d 1288 (S.D. Fla. 2005) .......................................................... 18

*Halmos v. Bomardier Aerospace Corp.*,
    404 F. App'x. 376 (11th Cir. 2010) .................................................................. 6

*Int'l Sales & Serv. v. Austral Insulated Prods.*,
    262 F.3d 1152 (11th Cir. 2001) ................................................................17, 18

*Iqbal v. Ashcroft*,
    129 S. Ct. 1937 (2009) ..............................................................................6, 19

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
    636 F. Supp. 2d 1283 (M.D. Fla. 2009), *aff'd*, 654 F.3d 1179 (11th Cir. 2011).................... 7

*Kunzelmann v. Wells Fargo Bank, N.A.*,
    No. 9:11-cv-81373-DMM, 2012 U.S. Dist. LEXIS 186134 (S.D. Fla. June 1,
    2012)............................................................................................................... 19

*Levy v. Levy*,
    862 So. 2d 48 (Fla. 3d DCA 2003) ................................................................ 16

*Lighthouse List Co., Ltd. Liab. Co. v. Cross Hatch Ventures Corp.*,
    No. 13-60524-CIV, 2013 U.S. Dist. LEXIS 201882 (S.D. Fla. Aug. 9, 2013).................... 18

*McAndrew v. Lockheed Martin Corp.*,
    206 F.3d 1031 (11th Cir. 2000) ...................................................................... 11

*Medimport, S.R.L. v. Cabreja*,
    929 F. Supp. 2d 1302 (S.D. Fla. 2013) .......................................................... 13

*Mortg. Now, Inc. v. Stone*,
    No. 3:09CV80/MCR/MD, 2009 WL 4262877 (N.D. Fla. Nov. 24, 2009) ........... 9

*Oginsky v. Paragon Props. of Costa Rica LLC*,
    784 F. Supp. 2d 1353 (S.D. Fla. 2011) .......................................................... 11

*S-Fer Int'l, Inc. v. Stonesheets, LLC*,
    No. 14-24662-CIV, 2016 WL 8808749 (S.D. Fla. July 22, 2016)................10, 11

*Shoma Dev., LLC v. Shoma Realty Grp., LLC*,
    No. 20-21096-CIV, 2020 U.S. Dist. LEXIS 107258 (S.D. Fla. June 18, 2020)
    (Scola, J.) ......................................................................................................... 8

*Small Bus. Admin. v. Echevarria*,
　864 F. Supp. 1254 (S.D. Fla. 1994)..................................................................... 8

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
　693 F.3d 1338 (11th Cir. 2012) ......................................................................... 15

*Taxinet, Corp. v. Leon*,
　No. 16-24266-CIV, 2018 U.S. Dist. LEXIS 116128 (S.D. Fla. July 10, 2018)..... 9, 13, 17, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007)........................................................................................... 6

*Temurian v. Piccolo*,
　No. 18-cv-62737, 2019 U.S. Dist. LEXIS 67469 (S.D. Fla. Apr. 19, 2019) ........ 14

*Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*,
　320 F. Supp. 3d 1285 (M.D. Fla. 2018).............................................................. 13

*In re Twitter, Inc. Sec. Litig., No. 16-cv-05314-JST*,
　2020 U.S. Dist. LEXIS 86978 (N.D. Cal. Apr. 17, 2020)...................................... 7

*Uni-Systems, LLC v. United States Tennis Ass'n, Inc.*,
　350 F. Supp. 3d 143 (E.D.N.Y. 2018)................................................................... 7

*United States v. Fid. Capital Corp.*,
　920 F.2d 827 (11th Cir. 1991) ........................................................................... 10

*VVIG, Inc. v. Alvarez*,
　No. 18-23109-CIV-ALTONAGA/Goodman (S.D. Fla. Oct. 9, 2019)..................... 13

*Watkins v. NCNB Nat'l Bank of Fla., N.A.*,
　622 So. 2d 1063 (Fla. 3d DCA 1993).................................................................. 16

*XP Global, Inc. v. AVM, L.P.*,
　2016 U.S. Dist. LEXIS 127266 (S.D. Fla. Sep. 19, 2016) ................................... 17

*Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co.*,
　793 So. 2d 1127 (Fla. 5th DCA 2001)................................................................... 8

*Ziemba v. Cascade Int'l, Inc.*,
　256 F.3d 1194 (11th Cir. 2001) ......................................................................... 12

**Statutes**

15 U.S.C. § 1125 (Lanham Act)..........................................................................14, 16

18 U.S.C. § 1836(d) (Defend Trade Secrets Act) ............................................... 3, 7, 12

Fla. Stat. § 95.11 .................................................................................................. 8

Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.01 *et seq*............................................*passim*

Fla. Stat. § 688.002...................................................................................................... 13

Fla. Stat. § 688.008........................................................................................................ 9

## **<u>Other Authorities</u>**

Fed. R. Civ. P. 8............................................................................................................. 19

Fed. R. Civ. P. 9(b)........................................................................................................ 12

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 6

Fed. R. Civ. P. 45.......................................................................................................... 6

Fed. R. Evid. 201............................................................................................................ 7

Local Rule 7.1...............................................................................................................1, 20

Defendants Jewmon Enterprises, LLC ("JewMon"), Timothy Sykes ("Sykes"), Millionaire Publishing, LLC ("Millionaire Publishing") and Millionaire Media, LLC ("Millionaire Media") (collectively, "Defendants") move to dismiss Plaintiff Scanz Technologies, Inc.'s ("Plaintiff" or "Scanz") Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and S.D. Fla. Local Rule 7.1.

**PRELIMINARY STATEMENT**

Plaintiff Scanz alleges that in 2013 it entered into a license agreement with JewMon, one of the eight defendants in this case. Pursuant to that license agreement, Plaintiff alleges, JewMon purchased a "whitelabel" version of software developed by Scanz for use on JewMon's website, StocksToTrade.com ("STT"). Plaintiff further alleges that the license agreement terminated in April 2015 and that, once terminated, the license agreement prohibited JewMon from continuing to use the "Scanz Trade Secrets," or from utilizing the "look and feel" of Scanz's product on the STT website. According to the Complaint, one or more Defendants (it is not at all clear which) created new software that copied – in wholly unspecified ways – the software that Scanz had previously licensed, in violation of the terms of the license agreement (which Plaintiff did not attach to the Complaint) and a subsequent termination notice (which Plaintiff did attach as Exhibit A to the Complaint).

Yet, oddly, despite being entirely grounded in an alleged contract between Scanz and JewMon, the Complaint does not assert a breach of contract claim. Instead, Plaintiff has cobbled together a nearly indecipherable mixture of nine federal and state law tort claims against JewMon, as well as Timothy Sykes (a member of the JewMon LLC), Millionaire Media, and Millionaire Publishing (two separate companies in which Mr. Sykes holds an interest). But each of these claims – whether grounded in federal or state statute or common law, and regardless of Defendant – cannot survive as a matter of law and should be dismissed with prejudice.

*First,* the Complaint, which was filed on July 17, 2020, should be dismissed with prejudice because all nine claims are time-barred. Since at least February 16, 2016 – more than four years before this action was commenced – Plaintiff has repeatedly used its corporate Twitter account to publicly accuse Defendants of the very acts that give rise to each of the claims asserted in the Complaint. For example:

1



These public statements, the authenticity of which cannot reasonably be questioned (and as to which a Joint Request for Judicial Notice was filed concurrently with this Motion), allege that Plaintiff's software was stolen or copied and utilized on the STT website following termination of the license agreement.  Indeed, on January 13, 2017, Plaintiff tweeted that it was in the process of filing a lawsuit for the alleged theft of its software.  Plaintiff was undisputedly on notice of the claims asserted in the Complaint no later than February 2016; for that reason, all claims are time-barred.  *Infra*, Section I.

*Second,* Plaintiff's five common law tort claims – Count IV (Constructive Fraud), Count V (Breach of Fiduciary Duty), Count VI (Tortious Interference with Business Relationships); Count VII (Unjust Enrichment); and Count VIII (Conversion) – are undeniably statutorily preempted by the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. §§ 688.01 *et seq.*  The FUTSA expressly precludes any common law tort claim based on a theory of preemption of trade secrets.  Because Plaintiff's common law tort claims are all based on the alleged misappropriation of Plaintiff's trade secrets, all five claims are statutorily preempted and should be dismissed.  *Infra*, Section II.

*Third*, to the extent the claims asserted in the Complaint are not time-barred or preempted by state or federal statute, each fails to state a claim for relief as a matter of law.  Among other deficiencies, the Complaint:

- Asserts all nine claims against Mr. Sykes but contains no allegation that he engaged in any wrongful personal conduct separate from his role as a member of JewMon.  The Complaint does not come close to alleging facts sufficient to pierce the corporate veil and bring suit against JewMon's members.  *Infra*, Section III.A.

- Asserts all nine claims against Millionaire Media and Millionaire Publishing but contains no factual allegations that those separate companies did anything

at all.   The Complaint's vague allegations of "conspiracy" are insufficient to sustain a claim against separate entities having nothing to do with this dispute. *Infra,* Section III.B.

- Asserts claims under the federal Defend Trade Secrets Act of 2016 (Count I) and the FUTSA (Count II) but apart from a series of conclusory allegations fails to identify any actionable trade secret misappropriated by JewMon.   *Infra,* Section IV.A.

- Asserts a claim under the Lanham Act (Count III) but fails to allege any facts from which to infer that JewMon falsely represented Plaintiff's product as its own such as to cause market confusion. *Infra,* Section IV.B.

- Asserts claims for Constructive Fraud (Count IV) and Breach of Fiduciary Duty (Count V) but fails to identify any independent duty owed to Plaintiff by any Defendant apart from Plaintiff's contract with JewMon. *Infra,* Section IV.C.

- Asserts a claim for Tortious Interference with Business Relations (Count VI) but fails to plead the existence of any specific customer relationship with which any Defendant interfered. *Infra,* Section IV.D.

- Asserts a claim for Unjust Enrichment (Count VII) which must be dismissed because Plaintiff has an adequate remedy at law, thus precluding equitable relief. *Infra,* Section IV.E.

- Asserts a claim for Conversion (Count VIII) but fails to identify any property which any Defendant converted. *Infra,* Section IV.F.

- Asserts a claim for Breach of the Covenant of Good Faith and Fair Dealing (Count X).[1]  But that is not an independent cause of action in Florida, and it cannot be sustained in the absence of a breach of contract claim. *Infra*, Section IV.G.

At core, the Complaint is little more than a laundry list of claims, unsupported by the requisite facts and lacking any grounding in the law.  It should be dismissed in its entirety.

---

[1] The Complaint jumps directly from Count VIII to Count X.  There is no Count IX.

<u>S<small>TATEMENT OF</small> F<small>ACTS</small></u>

***The License Agreement***.   In 2013, Plaintiff (under its former name, Equity Feed Corporation) and JewMon entered into an agreement under which JewMon agreed to "white label" Scanz's computer software for client stock traders for use on JewMon's STT website (the "License Agreement").  Compl. ¶¶ 25, 26; Ex. A.[2]  No other Defendant is party to the License Agreement or is alleged to have had any relationship with Plaintiff.

According to Plaintiff, the License Agreement afforded JewMon the right to utilize the "Scanz Assets" and the "Scanz Trade Secrets."  Compl. at ¶ 26.  While those two terms are used dozens of times throughout the Complaint, they are not described with any specificity at all: the Scanz Assets are defined as "the business products owned by Scanz," while the Scanz Trade Secrets are defined as "numerous technological and device-oriented trade secrets."  *Id.* at ¶ 2. Beyond the general proclamation that trade secrets are trade secrets, the Complaint gives no indication as to what actual trade secrets it purported to license to JewMon.  Neither term, nor any description of a protectable trade secret, is found in the License Agreement.  See Ex. A.

***The Termination.***   In April 2015, Plaintiff and JewMon agreed to terminate the License Agreement.  Compl. at ¶ 30.  Shortly thereafter, Plaintiff and JewMon executed a termination notice (the "Termination Notice").  *Id.* at Ex. A.  The Termination Notice, quoting paragraph four of the License Agreement, provides that only certain information (defined as "Confidential Information") must be maintained as confidential and not used by the parties:

> Each party shall keep confidential and not disclose to any third party or use (except as contemplated by this Agreement), ***any non-public information obtained from the other party that is marked or otherwise designated confidential*** ("Confidential Information")

*Id.* at ¶ 6 (emphasis added).  The Complaint does not allege that Plaintiff marked or otherwise designated *any* information as confidential.  While Plaintiff alleges that upon termination of the License Agreement, JewMon was obligated to "cease and desist from using the Scanz Assets and Scanz Trade Secrets," (Compl. ¶ 30(b)), the License Agreement makes no mention of "trade secrets" and strictly limits JewMon's obligation to Confidential Information – which Plaintiff does not even allege to have provided JewMon.

---

[2] A copy of the License Agreement is attached as Exhibit A.  Because the License Agreement is referenced in the Complaint, the Court may consider the entirety of the document on this motion to dismiss.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

The Termination Notice and License Agreement also expressly provide that following termination of the License Agreement, both JewMon and Plaintiff may market to customers within the database of website customers created during the term of the License Agreement. Compl., Ex. A at ¶ 7 ("Upon termination of this Agreement, both parties shall be free to engage in marketing activities using the database."). Finally, paragraph fifteen of the License Agreement – which, according to both the Termination Notice and paragraph 8 of the License Agreement does not survive termination – prohibits JewMon from copying the "look and feel" of the Scanz-created website. Ex. A at ¶ 15. But that same paragraph (in language carefully omitted from the Complaint) also makes clear that, following termination "JewMon may create or procure a competitive market analysis program to offer to its customers." *Id*.

*Plaintiff's "Discovery" of their Claims.* According to the Complaint, in December 2016, Plaintiff "learned" that JewMon member Timothy Sykes "may have . . . started deploying technology product "similar to the Scanz Assets, Scanz Trade Secrets and associated product offerings" Compl. ¶ 33. Plaintiff alleges that it "began an investigation into the Sykes-related market analysis product offering to determine whether it was violative of either the surviving provisions of the license agreement or applicable law." *Id*. Nine months later, in August 2017, Plaintiff "learned that the new Sykes' market analysis platform contains not only similar functionality as the Scanz Assets, Scanz Trade Secrets and related Scanz product offerings, but actually contains virtually identical functionality" to Plaintiff's products. *Id*. at ¶ 34. After another nine months, Plaintiff determined that the Sykes' products "contain[ed] a virtually identical 'look and feel'" to its own product. *Id*. at ¶ 35.

While Plaintiff would like to spin a story that it did not discover its claims until August 2018, Plaintiff's own public statements prove that Plaintiff knew about its claims more than four years before filing the Complaint on July 17, 2020. Beginning in February 2016, Plaintiff used its official corporate Twitter account to publicly accuse defendants of "copying" EquityFeed on the STT website:



*See* Joint Request for Judicial Notice, Ex. 1; *see also id.*, Ex. 2 (Scanz August 15, 2016 Tweet: "STT is just a really bad attempted ripoff of @EquityFeed.  They used our platform for 2 years as a 'white label'"); *id.* at Ex 4 (Scanz December 2, 2016 Tweet ("Come on @StocksToTrade stop BS'ing that STT is the brainchild from ur experience as traders. U stole it all from @EquityFeed"). Most telling, in January 2017, Scanz confirmed that it was preparing to file a lawsuit asserting the very claims asserted here.  *Id.* at Ex. 5 (Scanz January 13, 2017 Tweet: "@Equityfeed When do you plan to sue @StocksToTrade for copying your software?" "Already in the works.").

<b><span style="font-variant:small-caps">Standard of Review</span></b>

When considering a Rule 12(b)(6) motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level" and must "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal v. Ashcroft*, 129 S. Ct. 1937, 1949 (2009).

The Supreme Court has articulated a two-pronged approach: first, district courts should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 1950.  Second, if the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  However, "plausibility" requires more than "mere[] consisten[cy] with" wrongful conduct. *Id.* at 1949 (internal quotation marks and citation omitted). "Legal conclusions couched as factual allegations" must also be disregarded.  *Id.* at 1950.

When considering a motion to dismiss, courts may consider the allegations in the complaint and documents attached thereto, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Halmos v. Bombardier Aerospace Corp.*, 404 F.

6

App'x. 376, 377 (11th Cir. 2010) ("[A] district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 45 motion.").

**ARGUMENT**

## I.  PLAINTIFF'S CLAIMS ARE TIME-BARRED.

Every claim asserted in the Complaint is time-barred.  Plaintiff has been publicly accusing Defendants of the alleged acts underlying the Complaint since at least February 16, 2016, more than four years before Plaintiff filed this Complaint.  Plaintiff, through its official Twitter account, pronounced STT a "carbon-copy ripoff of #EquityFeed" on February 16, 2016.  *See* Joint Request for Judicial Notice, Ex. 1.[3]  This Tweet was followed by several similar tweets by Plaintiff on its official Twitter account.  *Id.* at Ex. 2 (Scanz August 15, 2016 Tweet: "STT is just a really bad attempted ripoff of @EquityFeed.  They used our platform for 2 years as a 'white label'"); *id.* at Ex. 4 (Scanz December 2, 2016 Tweet ("Come on @StocksToTrade stop BS'ing that STT is the brainchild from ur experience as traders. U stole it all from @EquityFeed").  Indeed, in January 2017, Plaintiff acknowledged that it was planning to bring a lawsuit to remedy STT copying its software – the precise allegation underlying the Complaint.  *Id.* at Ex. 5.  Plaintiff's public statements unequivocally establish that Plaintiff knew or should have known the alleged facts giving rise to each claim in the Complaint well over four years before the Complaint was untimely filed on July 17, 2020.

Count I (violation of the federal Defend Trade Secrets Act ("DTSA")) and Count II (violation of the "FUTSA") are each subject to a three-year statute of limitations.  *See* 18 U.S.C. § 1836(d); Fla. Sta. § 688.007.  Under the DTSA, "[t]he limitations period runs from the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered," or, in other words, when the plaintiff "knew or should have known that the alleged trade secrets were wrongfully acquired, disclosed, or used."  *Uni-Systems, LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 178 (E.D.N.Y. 2018).  The FUTSA imposes a similar standard; under Florida law:

---

[3] This Court can, and should, take judicial notice of Plaintiff's public statements on its official Twitter account without converting this motion to one for summary judgment because they are publicly available and not subject to reasonable dispute. Fed. R. Evid. 201; *see In re Twitter, Inc. Sec. Litig., No. 16-cv-05314-JST*, 2020 U.S. Dist. LEXIS 86978, at *9 (N.D. Cal. Apr. 17, 2020) (finding that "judicial notice is proper because the existence of the publicly-available articles and tweets cannot reasonably be questioned.").

> [a]lthough suspicion alone is insufficient to run the limitations period, **when there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit), the limitations period begins, even though the plaintiff has not conducted such an investigation**.

*Knights Armament Co. v. Optical Sys. Tech., Inc.*, 636 F. Supp. 2d 1283, 1293 (M.D. Fla. 2009) (emphasis added) (internal citation omitted), *aff'd*, 654 F.3d 1179 (11th Cir. 2011).

Counts IV-X (constructive fraud, breach of fiduciary duty, tortious interference with business relations, unjust enrichment, and conversion, respectively) are each subject to a four-year statute of limitations. Fla. Stat. § 95.11.[4] As to the constructive fraud and tortious interference claims, the statute begins to run when Plaintiff should have known of the misconduct by the exercise of reasonable diligence. *See Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1262 (M.D. Fla. 2018) ("[f]raud actions accrue when the plaintiff discovers, or should have discovered with due diligence, the facts giving rise to the fraud."); *Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co.*, 793 So. 2d 1127, 1128 (Fla. 5th DCA 2001) (Florida does not recognize the delayed discovery doctrine). The statute of limitations on Plaintiff's unjust enrichment and conversion claims began to run even earlier, when the act that led to the claim was committed. *See Beltran v. Vincent P. Miraglia, M.D., P.A.*, 125 So. 3d 855, 859 (Fla. 4th DCA 2013) ("[s]tatutes of limitations on unjust enrichment or quantum meruit claims generally begin to run upon the occurrence of the event that created the uncompensated benefit in the defendant"); *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1260 (S.D. Fla. 1994) (statute of limitations for conversion "begins to run at the time of the conversion.").

While Count III (violation of the Lanham Act) does not have a proscribed statute of limitations, the Lanham Act typically applies a four-year statute of limitations on a laches theory. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531 (11th Cir. 1986) (applying Florida's four-year statute of limitations applies to Lanham Act claims under the defense of laches). While laches is an

---

[4] The License Agreement provides for application of Canadian law to all disputes between Plaintiff and JewMon. Ex. A at 16.4 ("This Agreement **and any dispute arising hereunder** shall be governed by the laws of the Province of Quebec.") (emphasis added). Under Quebec law, all civil causes of action have a three-year statute of limitations. Civil Code of Quebec, S.Q. 1991, c. 64, art. 2925. However, to avoid the unnecessary complexity of litigating the choice of law issue on this motion, Defendants address the statutes of limitations provided by Florida law (all of which are at least as long as the three-year limitations period under Quebec law). Defendants reserve all rights to later assert that Quebec law applies to this case.

affirmative defense, this Court has acknowledged an exception where "the existence of an affirmative defense appears on the face of the complaint," such as when there are allegations that "the Plaintiff should have known that the Defendants were using the mark." *Shoma Dev., LLC v. Shoma Realty Grp., LLC*, No. 20-21096-Civ, 2020 U.S. Dist. LEXIS 107258, at *5 (S.D. Fla. June 18, 2020) (Scola, J.). In light of Plaintiff's own public statements in 2016, that is precisely the case here.

There can be no question that Plaintiff "knew or should have known" of its claims more than four years before commencement of this action: Plaintiff publicly tweeted in February 2016 its belief that STT had copied its software following expiration of the License Agreement. That is the core allegation in this case, and the basis for every claim asserted in the Complaint. The Complaint is untimely and should be dismissed.

## II.     THE COMPLAINT'S COMMON LAW TORT CLAIMS ARE PREEMPTED BY THE FLORIDA UNIFORM TRADE SECRETS ACT.

The FUTSA "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008. As a result, "[s]tate law claims must be dismissed if they are not separate and distinct from the FUTSA claim." *Mortg. Now, Inc. v. Stone*, No. 3:09CV80/MCR/MD, 2009 WL 4262877, at *6 (N.D. Fla. Nov. 24, 2009). In other words, to the extent any state law cause of action arises out of a claim of misappropriation of a trade secret, it is preempted by FUTSA and must be dismissed. *Taxinet, Corp. v. Leon*, No. 16-24266-CIV, 2018 U.S. Dist. LEXIS 116128, at *11-12 (S.D. Fla. July 10, 2018) ("To pursue claims for additional tort causes of action where there are claims for misappropriation of a trade secret, there must be material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim.").

Here, Plaintiff's five common law tort claims are each preempted because they arise out of the core allegation that Defendants misappropriated the Plaintiff's trade secrets and used them to develop the STT website. *See* Compl. ¶¶ 74-89, 97-100. For example, Plaintiff argues in both its constructive fraud and breach of fiduciary duty claims that that the obligation which Defendants allegedly breached was "to restrain from copying the 'look and feel' of the Scanz Assets, Scanz Trade Secrets and Scanz related product offerings." *Id.* at ¶¶ 75(b), 80(b). In its tortious interference claim, Plaintiff makes the identical allegation and also alleges that the "interference" is "stealing and pirating the Scanz Assets and Scanz Trade Secrets." *Id.* at ¶ 86. The unjust enrichment claim simply seeks damages for the alleged "stealing and pirating [of] the Scanz Assets

and Scanz Trade Secrets." *Id.* at ¶ 91; *see Coihue v. Payanybiz*, No. 17-24062-Civ-Scola, 2018 U.S. Dist. LEXIS 235599, at *15 (S.D. Fla. Feb. 6, 2018) (Scola, J.) (dismissing unjust enrichment claim as preempted by the FUTSA).   The conversion claim asserts the wrongful conversion of the trade secrets. *Id.* at ¶ 99; *see Taxinet, Corp.*, 2018 U.S. Dist. LEXIS 116128 at *11-12 (conversion claim preempted).   Because there is no material distinction between these five tort claims and Plaintiff's FUTSA claim, each is preempted by FUTSA and should be dismissed.

**III.    THE COMPLAINT PLEADS NO INDEPENDENT CAUSE OF ACTION AGAINST MR. SYKES, MILLIONAIRE MEDIA, OR MILLIONAIRE PUBLISHING.**

In an apparent effort to sue every individual and entity associated with JewMon, Plaintiff brought suit against Mr. Sykes (a member of the JewMon), and Millionaire Media and Millionaire Publishing (two companies in which Mr. Sykes has an interest).   But the Complaint contains no allegation that Mr. Sykes personally engaged in any wrongdoing outside his position as a member and agent of JewMon.   As to Millionaire Media and Millionaire Publishing, the Complaint contains no factual allegations at all aside from a vague and wholly conclusory allegation of a "conspiracy" involving those companies and the other Defendants.   Accordingly, all claims against Mr. Sykes, Millionaire Media and Millionaire Publishing should be dismissed.

A.    <u>The Complaint States No Separate Claim Against Mr. Sykes.</u>

The Complaint tacitly acknowledges that Mr. Sykes, in his individual capacity, is not alleged to have done anything at all.   The Complaint's few allegations referencing Mr. Sykes all relate to his role as a member, employee, or agent of JewMon (the only defendant alleged to have had any actual interaction with Plaintiff), Millionaire Media, Millionaire Publishing, or STT. Compl. ¶¶ 11, 14, 15, 33, 39.   In order to drag Mr. Sykes into this dispute personally, Plaintiff relies on two separate legal theories.   Neither works.

First, Plaintiff seeks to "pierce the corporate veil" by alleging that JewMon, Millionaire Publishing, Millionaire Media, and STT were each the "alter ego" of Mr. Sykes such that "the separate existence of these entities was and is in fact non-existent." *Id.* at ¶ 14.   But that is not nearly enough.   Courts in this circuit have regularly recognized that the corporate form will only be disregarded in the most exceptional circumstances. *See United States v. Fid. Capital Corp.*, 920 F.2d 827, 837 (11th Cir. 1991) ("courts must exercise 'great caution,' and must not disregard the corporate entity without a showing that the corporate form has been abused."); *S-Fer Int'l, Inc. v. Stonesheets, LLC*, No. 14-24662-CIV, 2016 WL 8808749, at *3 (S.D. Fla. July 22, 2016) ("[t]hose who utilize Florida law to do business in the corporate form have every right to rely on

the rules of law that protect them against personal liability."). Indeed, for individual liability to attach, a plaintiff must plead facts demonstrating not only that the individual dominates the corporation to such an extent that its independent existence is nonexistent, but also that "the corporation is formed or used for some illegal, fraudulent, or other unjust purpose which justifies piercing the corporate veil." *Stonesheets*, 2016 WL 8808749 at *3-4.

There are no such allegations here. Plaintiff does not – and cannot – allege that any corporate defendant was formed for a fraudulent or improper purpose. Indeed, Plaintiff goes to great length to explain the legitimate business in which JewMon engaged as Plaintiff's contract counterparty. Compl. ¶¶ 26-31. As to Millionaire Media and Millionaire Publishing, the Complaint says nothing at all about its business, and certainly does not allege facts from which to conclude they were formed or used for an unlawful purpose. Instead, Plaintiff relies on conclusory allegations of domination and control by Mr. Sykes. Such allegations are regularly rejected as a basis to disregard the corporate form. *See Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373-74 (S.D. Fla. 2011) (allegations that entities were "nothing more than shell corporations," used by defendants "to commit a major fraud" insufficient to pierce corporate veil.); *Stonesheets*, 2016 WL 8808749 at *4 (allegations that "'shell' corporations without a bona-fide corporate existence and were, in fact, the 'alter ego' of [defendant], which she utilized with the intent to defraud" were insufficient).

Second, Plaintiff alleges that Mr. Sykes engaged in a conspiracy with JewMon to "conduct their business enterprises using the Scanz Assets and Scanz Trade Secrets which they illegally stole from Scanz for profit." Compl. ¶ 13. But under Florida law, a corporation cannot conspire with its shareholders or employees. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) ("The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy."). Accordingly, all claims against Mr. Sykes should be dismissed.

    B.    <u>The Complaint States No Separate Claim Against Millionaire Media or Millionaire Publishing.</u>

The Complaint says even less about Millionaire Media and Millionaire Publishing.[5] Without differentiating one from the other, both are generally alleged (along with every other

---

[5] Strangely, the Complaint names Millionaire Publishing as a defendant twice, alleging that there are two separate entities with the same name, one a Florida LLC and the other a Colorado LLC.

defendant) to be "involved in many enterprises, including the business of developing, marketing, [and] offering to sell" products for use by the securities industry.  Compl. ¶ 12.  However, beyond that wholly non-specific statement, *the Complaint does not contain a single factual allegation that Millionaire Publishing or Millionaire Media did anything at all relating to this case*.  Instead, Plaintiff relies on the theory – unsupported by any facts at all – that Millionaire Media and Millionaire Publishing were engaged in a "civil conspiracy" with some or all of the other defendants to steal Plaintiff's trade secrets "illegally."  *Id.* at ¶ 13.  That conclusory allegation is nowhere close to sufficient to state a claim.

To allege a conspiracy, Plaintiff must plead the existence of (i) an agreement between two or more parties to do an unlawful act, (ii) an overt act to further the conspiracy, and (iii) damage to the plaintiff as a result of the acts done under the conspiracy.  *Apex Toxicology, LLC v. United Healthcare Servs.*, No. 17-61840-CIV, 2020 U.S. Dist. LEXIS 120460, at *8 (S.D. Fla. July 6, 2020).  Here, there is not a single non-conclusory factual allegation that Millionaire Media or Millionaire Publishing agreed to do anything at all (let alone an unlawful act) with each other or with any other defendant, or that either company did anything at all in furtherance of such a (non-existent) agreement.

Further, where a civil conspiracy sounds in fraud (as it does here), it must meet the Rule 9(b) heightened pleading requirement to articulate what statements were made and by whom, the time and place of the statements, the content of the statements, and what the defendants obtained as a consequence of the fraud.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  The Complaint does not come anywhere close to satisfying this standard.  The Complaint does not allege a single statement by any Defendant, when such a statement was made, or why it was misleading.  Instead, the Complaint relies on conclusory allegations, lacking any particularity at all.  *See, e.g.* Compl. ¶ 39 (Defendants "agree[d] to mislead Scanz and its principals at and following the execution of the Termination Notice by falsely leading Scanz to believe that each of these defendants had no intention to utilize product offerings anywhere close to offerings represented by the Scanz Assets, Scanz Trade Secrets and related technologies and products.")  The Complaint's conclusory allegations of a conspiracy to defraud fall far short of the

_____

Compl. ¶ 3.  That is false.  There is only one Millionaire Publishing, a Florida LLC which is registered to do business in various states, including Colorado.  For purposes of this motion, Plaintiff's error is of no consequence; we mention it only to avoid confusion.

requirements of Rule 9(b) and the law of this Circuit.   Millionaire Media and Millionaire Publishing have no place in this case; as to each of them, this action should be dismissed.

## IV.   EACH CLAIM ASSERTED IN THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD A COGNIZABLE CAUSE OF ACTION.

### A.   Plaintiff Has Failed to Plead a Trade Secret Claim (Counts I and II).

Plaintiff has failed to plead a viable claim under either the DTSA or the FUTSA.   Under the DTSA, a plaintiff must establish that it (i) "possessed information of independent economic value" that plaintiff "took reasonable measures to keep secret," and (ii) the defendant "used and/or disclosed that information," despite (iii) "a duty to maintain its secrecy." *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1292-93 (M.D. Fla. 2018).  Similarly, under the FUTSA, a plaintiff must establish that (i) it possessed a "trade secret" and (ii) the secret was misappropriated. *Id.*  "Florida law defines a trade secret as information that (1) derives economic value from not being generally known to, or not being readily ascertainable by others, and (2) is the subject of reasonable efforts to protect its secrecy." *Taxinet, Corp.*, 2018 U.S. Dist. LEXIS 116128 at *6.  The party asserting trade secret protection bears the initial burden of describing the alleged trade secret and showing that it has taken reasonable steps to protect its secrecy. *Id.* Plaintiff has failed to carry that burden.

#### 1.   *Plaintiff Has Not Pled the Existence of a Trade Secret.*

The Complaint is rife with generalized and non-specific allegations about trade secrets. The "Scanz Assets" are defined as the "business products owned by Scanz," and the "Scanz Trade Secrets" are defined as the "technological and device oriented trade secrets" that are the "foundation and proprietary basis of the Scanz Assets."  Compl. ¶ 2.  Neither the Complaint nor the License Agreement identifies any actual trade secret that Plaintiff seeks to protect; indeed, the License Agreement does not reference the Scanz Assets or Scanz Trade Secrets at all. *See* Ex. A. Instead, Plaintiff claims that Defendants misappropriated an *even broader* collection of things, including the Scanz Assets, Scanz Trade Secrets, and "related product offerings" defined to include "each and every product offering of Scanz."  Compl. at ¶ 40.  These broad generalizations – which would literally include everything Scanz has ever owned or created in its corporate history – provide no notice to Defendants as to what is actually alleged to have been misappropriated. *VVIG, Inc. v. Alvarez*, No. 18-23109-CIV-ALTONAGA/Goodman, at *5 (S.D. Fla. Oct. 9, 2019) (dismissing where trade secrets alleged to be "broad categories of information, such as financial and technical data'") (quoting *DynCorp*, 664 F. App'x at 849); *Taxinet, Corp.*, 2018 U.S. Dist.

LEXIS 116128 at *8 (dismissing where trade secrets alleged to be "confidential business information, processes, techniques, software applications, and business characteristics, including present, future, and proposed services, and business model.").

Moreover, the Complaint lacks any allegation that Plaintiff took any steps to protect the secrecy of any alleged trade secret. *Medimport, S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1322 (S.D. Fla. 2013) (trade secret must "derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy."). Plaintiff suggests that, as to Defendants, it maintained confidentiality by entering into "written agreements of confidentiality or non-disclosure expressly acknowledging that the Scanz Assets and Scanz Trade Secrets are proprietary and confidential." Compl. ¶¶ 41, 53. But that is not true with respect to the only written agreements between Plaintiff and any Defendant – the License Agreement and Termination Notice. Those agreements only require that "[e]ach party shall keep confidential and not disclose to any third party or use (except as contemplated by this Agreement), ***any non-public information obtained from the other party that is marked or otherwise designated confidential ("Confidential Information").*" *Id.*, Ex. A, ¶ 6; Ex. A, ¶ 6 (emphasis added). The Complaint does not allege that any information was "marked or otherwise designated confidential" by Scanz such as to qualify it as "Confidential Information." And, of course, the License Agreement and Termination Notice do not mention the Scanz Assets, the Scanz Trade Secrets, or any of the myriad other broad categories of information Plaintiff now purports to protect. For this reason, as well, the Complaint's trade secret claims should be dismissed. *Temurian v. Piccolo*, No. 18-cv-62737, 2019 U.S. Dist. LEXIS 67469, at *32 (S.D. Fla. Apr. 19, 2019) (dismissing trade secret claim because "[d]isclosing the information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret.").

### 2. *Plaintiff Has Not Pled Misappropriation.*

The Complaint also fails to plead facts – not conclusions – as to when and how any Defendant actually misappropriated a trade secret. For all of its proclamations of "pirating and theft," the Complaint contains no factual allegation to support the bald assertion that Defendants (again, without specifying which ones) misappropriated anything. *See Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*, No. 1:14-cv-22770-UU, 2015 U.S. Dist. LEXIS 188324, at *27 (S.D. Fla. Mar. 20, 2015) (dismissing complaint containing only "conclusory statements" of alleged misappropriation).

B.    The Complaint Fails to Allege a Violation of the Lanham Act (Count III).

Plaintiff's Lanham Act claim is nearly impossible to decipher.  The Complaint does not make clear whether it is asserting a claim under Section 43(a)(1)(A) (Defendants' allegedly false statements are likely to cause confusion or mistake as to the origin, sponsorship or approval of the STT platform) or Section 43(a)(1)(B) (Defendants' allegedly false statements misrepresent the nature, characteristics, qualities or geographic origin of Defendants' products).  *Compare* Compl. ¶ 66 *with* ¶ 67.  Instead, Plaintiff generally alleges that Defendants' "representations and omissions to the effect that they had lawfully developed and now owned their own market analysis software . . . created an untrue impression in the marketplace."  *Id.* at ¶ 64.  Plaintiff's allegations do not come close to stating a viable Lanham Act claim.

First, Plaintiff does not identify any actual statement by any Defendant that is alleged to be false and misleading with regard to the ownership or origin of the STT website.  While concluding that Defendants "have and continue to engage in commercial advertising in which they consistently misrepresent the nature and characteristics of their market analysis products" (Compl. ¶ 66), Plaintiff does not allege what those misrepresentations actually were.  That alone is basis to dismiss the claim because the Lanham Act's protections are limited to false and misleading factual statements of ownership or origin to the public.

Second, Plaintiff *does not* allege that Defendants took Scanz's product and labeled it as its own; indeed, Plaintiff alleges that even though the STT website has been functioning for years, it is only "substantially identical" and that even as of today Defendants have not misappropriated the entire Scanz product.  Compl. ¶ 66 (Defendants continue to misappropriate Scanz products "little by little.").  Therefore, Plaintiff is not asserting a "reverse palming off" claim, in which "the producer misrepresents someone else's goods or services as his own."  *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1347-48 (11th Cir. 2012).  Instead, Plaintiff is alleging is that Defendants have either (i) improperly used components of Scanz proprietary technology (a claim governed by patent law) or (ii) copied the content and design of Plaintiff's website (a claim governed by copyright law).  But, as the United States Supreme Court has made clear, the Lanham Act does not provide a remedy in either case:

> reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were), ***we conclude that the phrase refers to the producer of the tangible goods that are offered for***

> *sale, and not to the author of any idea, concept, or communication embodied in those goods.*

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003) (emphasis added). Thus, to the extent Plaintiff claims that Defendants have stolen their proprietary technology, they have no remedy under the Lanham Act. *Id.* at 34 ("The Lanham Act . . . does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity . . . Federal trademark law "has no necessary relation to invention or discovery,") (internal quotation and citation omitted). To the extent Plaintiff claims that Defendants have copied their website, *Dastar* requires the same result. *Id.* ("reading § 43(a) of the Lanham Act as creating a cause of action or, in effect, plagiarism – the use of otherwise unprotected works and inventions without attribution – would be hard to reconcile with our previous decisions").

Third, Plaintiff also refers, vaguely, to the alleged copying of the "look and feel" of its product. To the extent this is meant to constitute a claim for trade dress infringement under Section 1125(a), that too fails. Plaintiff fails to even identify what protectable rights it believes it owns in the "look and feel" of the product, and also fails to allege that the trade dress is non-functional, as required by the Lanham Act. *See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1202 (11th Cir. 2004) ("trade dress protection may not be claimed for product features that are functional").

Finally, while baldly asserting that Plaintiff has been damaged "in the sum of at least $10 million," (Compl. ¶ 72), the Complaint contains no allegation as to how any statement by any Defendant actually caused such an injury. Indeed, Plaintiff's sole allegation of causation is that Defendants' unidentified statements "had a material effect on the purchasing decisions" of Scanz's current and prospective customers. That is not nearly enough; Count III should be dismissed. *See Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, 707 F. App'x 576, 580-81 (11th Cir. 2017) (dismissal affirmed where no facts showed false statements caused plaintiff's injury).

C.    The Complaint's Constructive Fraud (Count IV) and Breach of Fiduciary Duty (Count V) Claims Fail to Allege the Existence of Any Actionable Duty.

Plaintiff's claims for constructive fraud (Count IV) and breach of fiduciary duty (Count V) are two ways to state the same cause of action. *See Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3d DCA 2003) ("Constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken."). Both require a plaintiff to

16

plead the existence of a specific duty owed to it by virtue of its relationship with the defendant. *Watkins v. NCNB Nat'l Bank of Fla., N.A.,* 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993) (plaintiff must allege "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."). Critically, a plaintiff cannot assert either a constructive fraud or breach of fiduciary duty claim where the only alleged duty arose from a contract between the parties. *See XP Global, Inc. v. AVM, L.P.*, 2016 U.S. Dist. LEXIS 127266, (S.D. Fla. Sep. 19, 2016) at *13-14, 22-23 (dismissing complaint where plaintiff "failed to set forth sufficient facts to demonstrate that a fiduciary relationship existed outside of the [contract between the parties]").

Here, the only alleged relationship between Plaintiff and any Defendant arises from the License Agreement between Plaintiff and JewMon (indeed, as mentioned above, Plaintiff is not alleged to have *any relationship at all* with any other defendant). Plaintiff's claims all stem from the alleged (but unasserted) breach of that contract. As the Complaint does not allege that any defendant had an independent duty to Plaintiff, Count IV and Count V cannot survive. *Fin-S Tech*, 2014 U.S. Dist. LEXIS 200704 at *26-27 (contract counterparties owe no duty to one another).

### D. The Complaint Fails to Plead Any Element of a Tortious Interference Claim (Count VI).

To state a claim for tortious interference with business relations, a plaintiff must plead (i) the existence of a business relationship between the plaintiff and a specific third party, (ii) the defendant's knowledge of the business relationship, (iii) the defendant's intentional and unjustified interference with the business relationship; and (iv) damage to the plaintiffs as a result of the interference. *Taxinet Corp.*, 2018 U.S. Dist. LEXIS 116128 at *17-18. Critically, a plaintiff cannot allege that a defendant's conduct generally harmed its ability to compete in their market. "[A] tortious interference claim requires a relationship with a ***particular party***, and not just a relationship with the general business community." *Int'l Sales & Serv. v. Austral Insulated Prods.*, 262 F.3d 1152, 1156 (11th Cir. 2001) (emphasis added). Moreover, under Florida law, there is no cause of action for tortious interference of prospective customers. *See Ethan Allen v. Georgetown Manor*, 647 So. 2d 812, 815 (Fla. 1994).

Here, the Complaint alleges in the most general and conclusory terms that Plaintiff has "numerous business relationships with clients located in Florida, located throughout the United States and located throughout the world" allegedly "fostered over . . . two decades." Compl. ¶ 83. Plaintiff further alleges that defendants "intentionally and unjustifiably interfered" with these

relationships.  *Id.* at ¶ 87.  The Complaint does not, however, identify any single actual business relationship with which any defendant intentionally interfered.  For this reason alone, Count VI should be dismissed.  *Fin-S Tech*, 2014 U.S. Dist. LEXIS 200704 at *35-36 ("generalized allegations of business relationships with unidentified customers are insufficient to state a claim for tortious interference with business relationships.").

Furthermore, the Complaint fails to allege that any defendant acted with *specific intent* to interfere with that relationship.  *Advantor Sys. Corp. v. DRS Tech. Servs.*, 678 F. App'x 839, 847 (11th Cir. 2017) ("A plaintiff alleging tortious interference must show specific intent to interfere with contract; mere negligence is not enough.").  Plaintiff's general allegations that by copying Plaintiff's technology, and using it on the STT website, Defendants caused Plaintiff to lose customers (Compl. ¶¶ 86-87) are not enough.  Absent some allegation that a specific defendant intended to interfere with a specific customer, Plaintiff's claim should be dismissed.  *Austral Insulated Prods.*, 262 F.3d at 1156.

E.     The Complaint's Unjust Enrichment (Count VII) Claim Should Be Dismissed Because Plaintiff Has an Adequate Remedy at Law.

Plaintiff alleges that because of Defendants' alleged misappropriation of Plaintiff's trade secrets, Plaintiff should continue to receive 70% of STT's revenue as provided by the License Agreement.  Compl. ¶ 92.  But an unjust enrichment claim cannot survive where the plaintiff has adequate remedies at law.  *Taxinet Corp.*, 2018 U.S. Dist. LEXIS 116128 at *20-22 ("because the unjust enrichment claim arises from a wrong, the right of recovery stems from that wrong, rather than an unjust enrichment."); *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (same).

Here, Plaintiff has a remedy at law: it could have tried to allege a breach of the License Agreement (a claim it declined to assert) or sought relief for the misappropriation of its trade secrets (a claim it has asserted under both state and federal statutes).  Plaintiff's claims for equitable relief, duplicative of the claims it seeks (or could have sought) at law, should be dismissed.

F.     The Complaint's Conversion Claim (Count VIII) Should Be Dismissed Because Plaintiff Fails to State a Claim.

Plaintiff fails to state a claim for conversion.  A claim for conversion requires: "1) [an] act of dominion wrongfully asserted; 2) over another's property; and 3) inconsistent with [plaintiff's] ownership therein."  *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001).  As this Court has noted, the "essence of a conversion claim" is the

possession of the property by the defendant and the defendant's continued intent to deprive the plaintiff of the property. *Lighthouse List Co., Ltd. Liab. Co. v. Cross Hatch Ventures Corp.*, No. 13-60524-CIV, 2013 U.S. Dist. LEXIS 201882, at *23-24 (S.D. Fla. Aug. 9, 2013). This is typically shown by "demand and refusal." *Id.*

In an apparent effort to avoid preemption under the FUTSA, Plaintiff asserts, "What the defendants have pirated from Scanz goes well beyond the trade secret protected properties legally subject to Counts I and II of this Complaint." Compl. ¶ 99. That's it. Plaintiff does not describe in any way what property was allegedly converted in addition to the alleged trade secrets that are the subject of Plaintiff's claims for misappropriation of trade secrets under state and federal statutes (Counts I and II). Rule 8, of course, demands more than "labels and conclusions." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted). When "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Even if Plaintiff has asserted all of the elements to a claim for conversion (which is unlikely because Plaintiff does not allege that it demanded any defendant to return the unidentified property), Plaintiff's conversion claim is nothing more than a threadbare recital of the elements of conversion with a conclusory statement that the property allegedly converted "goes well beyond the trade secret protected properties legally subject to Counts I and II of this Complaint." Compl. ¶ 99. The Supreme Court has made clear that this is not sufficient to satisfy Rule 8.

G.     <u>The Complaint's Implied Duty of Good Faith and Fair Dealing Claim (Count X) Should Be Dismissed Because Plaintiff Fails to Assert a Breach of Contract Claim.</u>

An implied duty of good faith and fair dealing only attaches to parties to a contract. *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM, 2012 U.S. Dist. LEXIS 186134, at *17-18 (S.D. Fla. June 1, 2012). Here, only JewMon is alleged to have ever entered into any contract with Plaintiff. Compl., Ex. A. The Eleventh Circuit has held, however "that a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). For all of Plaintiff's bluster about the

License Agreement, the Complaint is entirely devoid of a cause of action that JewMon breached it.  Count X should be dismissed.

**CONCLUSION**

Defendants respectfully request that this Court dismiss the Complaint in full.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1, Defendants request a hearing on their Motion to Dismiss.  The Complaint in this action spans 110 paragraphs (plus subparts) and asserts federal and state statutory and common law claims against eight defendants.  Accordingly, Defendants believe that the issues raised in this Motion above are detailed and complex, such that the Court would benefit from oral argument here.  Defendants request 45 minutes per side for argument.

*[signatures on following page]*

Dated:  October 5, 2020                     Respectfully Submitted,

*/s/ Justin B. Elegant*
Justin B. Elegant
Florida Bar No. 0134597
Arun G. Ravindran
Florida Bar No. 66247
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Phone: (305) 755-9500
jelegant@bergersingerman.com
aravindran@bergersingerman.com

ALSTON & BIRD LLP
Brett D. Jaffe (*pro hac vice*)
Steven R. Campbell (*pro hac vice*)
90 Park Avenue
New York, New York 10016-1387
Phone: 212-210-9400
brett.jaffe@alston.com
steven.campbell@alston.com

Cassandra K. Johnson (*pro hac vice*)
1201 W. Peachtree Street
Atlanta, Georgia 30309
Phone: 404-881-7000
cassie.johnson@alston.com

*Attorneys for Defendants Jewmon Enterprises, LLC,*
*Timothy Sykes, Millionaire Publishing, LLC,*
*Millionaire Publishing, LLC and Millionaire Media,*
*LLC*