United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Scanz Technologies, Inc., Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 20-22957-Civ-Scola |
| | ) | |
| JewMon Enterprises, LLC and | ) | |
| others, Defendants. | ) | |

**Omnibus Order**

This matter is before the Court upon Timothy Bohen's (ECF No. 39); Stockstotrade.com Inc and Zachary Westphal's (ECF No. 40); and JewMon Enterprises, LLC, Timothy Sykes, Millionaire Publishing, LLC (a Florida limited liability corporation), Million Publishing, LLC (a Colorado limited liability corporation), and Millionaire Media, LLC's (ECF No. 41) motions to dismiss. Additionally before the Court is the Defendants' joint request for the Court to take judicial notice of ten tweets from the twitter account @GetScanz (ECF No. 42) and the Plaintiff's request for the Court to take judicial notice of certain YouTube videos and various other materials (ECF No. 46) filed in connection with the parties' motion to dismiss briefing.

### 1. Background

The Plaintiff, Scanz Technologies, Inc. ("Scanz") has brought suit against the Defendants for alleged theft of its trade secrets. Scanz is a Canadian corporation that develops and sells "scanning technology used by traders and other similar constituents of the securities industry involving the public capital markets." (ECF No. 1, at ¶ 3.) The Plaintiff alleges that the Defendants "engaged in a civil conspiracy . . . to conduct their business enterprises using" Scanz's trade secrets "which they illegally stole from Scanz." (ECF No. 1, at ¶ 13.) In support of their allegations as to conspiracy, Scanz asserts that Defendants Sykes and Westphal are the members of JewMon Enterprises, LLC, a Florida corporation, and further state that Defendants JewMon, Millionaire Publishing, Millionaire Media, and Stockstotrade.com "were each the alter ego" of Sykes. (ECF No. 1, at ¶¶ 4-6.) Moreover, the Plaintiff states that Timothy Bohen was an "agent in fact" for the Defendants, and further states that Sykes, with the assistance of Westphal and Bohen was able to "perpetuate the fraud of a separate existence for each of the entities by disregarding their separateness

and otherwise commingling and confusing their assets, properties and business affairs." (ECF No. 1, at ¶¶ 7, 14.)

Scanz became involved with Sykes and JewMon towards the end of 2012 when Scanz was contacted by Sykes on behalf of JewMon, seeking "white label" licensure of Scanz's programs "for use in connection with JewMon's alleged business model of promoting and selling to the general public various strategies for becoming successful traders in the OTC micro-cap and penny stock marketplaces." (ECF No. 1, at ¶ 25.) In 2013, Scanz and JewMon entered into a licensing agreement pursuant to which Scanz would provide JewMon with a "worldwide, non-transferable, non-assignable, non-exclusive license to use" Scanz's programs so JewMon could offer its clients a desktop market analysis platform via one of its websites, Stockstotrade.com. (ECF No. 1, at ¶ 26.)

As part of the agreement between Scanz and JewMon, Scanz would provide billing and support services to JewMon and JewMon would receive 30% of all subscription-based revenues that arose from the licensing agreement, with the remainder of the revenues going to Scanz. (ECF No. 1, at ¶ 27.) The licensing agreement prohibited JewMon from copying the "look and feel" of Scanz's programs and prohibited JewMon from attempting to "reverse engineer, decompile, disassemble, or otherwise reduce to human-perceivable form" Scanz's program. (ECF No. 1, at ¶ 28.) Scanz asserts that these prohibitions on JewMon's use of Scanz's trade secrets survived termination of the licensing agreement. (ECF No. 1, at ¶¶ 28-29.)

In April 2015, Scanz and JewMon terminated the licensing agreement via a two-page Termination Notice. (ECF No. 1, at ¶ 30; *see also* ECF No. 1-1.) The Plaintiff asserts that notwithstanding termination of the licensing agreement, JewMon "remained bound in perpetuity" with respect to its obligations to, among certain other obligations set forth in the Plaintiff's complaint, (1) keep confidential any and all designated non-public information obtained from Scanz under the agreement; (2) cease and desist use of Scanz's programs and trade secrets; (3) refrain from asserting it had rights of any kind to Scanz's trade secrets; and (4) refrain from using, copying the "look and feel", or attempting to reverse engineer Scanz's program or other Scanz's trade secrets. (ECF No. 1, at ¶ 30.)

After a period of initial compliance, Scanz asserts that beginning in December 2016, Scanz began to suspect that Sykes may have started to deploy a product similar to Scanz's product and began an investigation into Sykes's program to see if it violated any of the parties' agreements. (ECF No. 1, at ¶ 33.) By August 2017, Scanz determined that Sykes's program contained "not only similar functionality" as Scanz's program and trade secret protected

information, "but actually contain[ed] virtually identical functionality" as Scanz's program. (ECF No. 1, at ¶ 34.) Scanz continued its investigation of Sykes's program and asserts that by May 2018, Scanz determined that Sykes's program "not only had progressed to an imitation of Scanz's product offering but that Sykes's platform had progressed to containing a virtually identical 'look and feel' as compared to the most important core features" of Scanz's program. (ECF No. 1, at ¶ 36.) Accordingly, Scanz asserts that Sykes's program was stolen from Scanz in violation of the parties' agreements and that Sykes and his co-Defendants are now profiting off of Scanz's trade secrets.

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted). "This is a stricter standard than the Supreme Court described in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that a complaint should not be dismissed for failure to state a claim 'unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mukamal v. Bakes,* 378 F. App'x 890, 896 (11th Cir. 2010). These precepts apply to all civil actions, regardless of the cause of action alleged. *Kivisto,* 413 F. App'x at 138

### 3. Analysis

#### A. Personal Jurisdiction Over Timothy Bohen

The Court turns first to Defendant Timothy Bohen's argument that the Court must dismiss the claims against him as the Court lacks either general or specific personal jurisdiction over him. The Court notes that both Bohen and the Plaintiff, Scanz, provided affidavits and other materials relating to the Court's exercise of personal jurisdiction over Bohen. Where a plaintiff meets its initial burden to make out a *prima facie* case for a court's exercise of personal jurisdiction over a defendant by providing sufficient evidence in the complaint to withstand a motion for to dismiss, courts may then consider affidavits, documents, or other testimony provided by the defendant challenging the allegations supporting personal jurisdiction. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006); *see also Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1295 (11th Cir. 2009). Should a defendant provide such material, the burden then shifts back to the plaintiff to produce evidence supporting personal jurisdiction. *Stubbs,* 447 F.3d at 1360. All reasonable inferences must be construed in favor of the plaintiff. *Id.* Before courts may consider materials provided by a defendant and plaintiff the court must first decide if the plaintiff has made out a *prima facie* case supporting the court's exercise of personal jurisdiction.

To determine whether a party has adequately alleged personal jurisdiction over a foreign defendant, the Court first asks whether there is jurisdiction under Florida's long-arm statute and next determines whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Waite v. All Acquisition Corp.,* 901 F.3d 1307, 1312 (11th Cir. 2018). Florida's long-arm statute provides two means for subjecting a foreign defendant to the jurisdiction of Florida courts: 1) "a defendant is subject to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or related to a defendant's contacts with Florida—for conduct specifically enumerated in the statute"; and 2) "a defendant is subject to *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in substantial and not isolated activity in Florida." *Id.* (internal quotations omitted) (emphasis in original) (discussing Fla. Stat. §

48.193). Under either form of personal jurisdiction, the defendant must have "'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The inquiry focuses on the defendant's contacts with the state, and not the "random, fortuitous, or attenuated" contacts it has by interacting with other persons affiliated with the state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

### (1)   *General Personal Jurisdiction*

Under Florida's long-arm statute, general jurisdiction "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (discussing Florida law). Thus, determining whether general personal jurisdiction is proper in Florida requires a one-step inquiry which requires courts to determine whether the exercise of jurisdiction over a defendant would exceed constitutional bounds. *Id.* An individual is subject to general jurisdiction where the individual is domiciled. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, both the Plaintiff and the Defendant Bohen agree that Bohen is not a Florida resident.[1] Accordingly, the Court finds that Bohen is not subject to the Court's general personal jurisdiction.

### (2)   *Specific Personal Jurisdiction*

As the Court does not have general personal jurisdiction over the Defendant Bohen, the Court must determine if the Plaintiff has *prima facie* plead that the Court has specific personal jurisdiction over Bohen. The Plaintiff argues that the Court can exercise specific personal jurisdiction over the Defendant Bohen because he was engaged in a conspiracy with Sykes and Westphal to steal and profit from Scanz's trade secret protected information. (ECF No. 45, at 3.) "Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." *United Techs., Corp. v. Mazer*, 556 F.3d 1260, 1281-82 (11th Cir. 2009).

---

[1] While the complaint states that Bohen is a resident of Minnesota (ECF No. 1, at ¶ 7), Bohen states in his motion to dismiss that he is a resident of Michigan (ECF No. 39, at 2). The Plaintiff states that they "take at face value Bohen's statements that his residence is actually nearby in the state of Michigan." (ECF No. 45, at 3 n.4.) Regardless of whether the Defendant Bohen resides in Minnesota or Michigan, it is clear the parties agree that Bohen does not reside in Florida.

To state a claim for civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some over act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Paulson v. Cosmetic Dermatology, Inc.*, No. 17-20094-Civ, 2017 WL 248197, at *5 (June 8, 2017) (Scola, J.) (internal citations omitted). Moreover, Florida law does not recognize an independent cause of action for civil conspiracy, but rather, a plaintiff must allege an underlying illegal act or tort on which the conspiracy is based. *Id.*

Upon review of the complaint, the Court finds that the Plaintiff has failed to allege that there was any agreement between Bohen and Sykes or Westphal to steal and profit from Scanz's trade secrets. Instead, the complaint makes conclusory references to all Defendants and generically states that they "acted conspiratorially . . . by engaging in a scheme comprising specific and intentional torts" and "[e]ach corporate and individual defendant has conspired to repeatedly market, offer to sell, and then actually distribute products inside and outside of the State of Florida that infringe on Scanz's propriety intellectual property." (ECF No. 1, at ¶¶ 21-22; *see also* ECF No. 45, at 4.) Outside of these more generic allegations, the complaint focuses almost exclusively on Sykes, Westphal, and JewMon Enterprises, who the Plaintiff asserts entered into an licensing agreement with Scanz that gave these Defendants access to Scanz's trade secrets which the Defendants then reverse engineered to the detriment of Scanz in contravention of the alleged terms of the licensing agreement at issue between the Plaintiff and JewMon. The complaint also mentions that JewMon and the other entity Defendants shared corporate addresses and that Sykes had an interest in all of the entity Defendants, suggesting some relationship between those parties as well. The complaint, however, provides no facts supporting a conclusion that Bohen entered into any agreement with Sykes, Westphal, or any other of the Defendants to steal and profit from Scanz's trade secret protected information. As the complaint fails to set forth any non-conclusory allegations connecting Bohen with the other Defendants and fails to plead other contacts Bohen has with Florida to support a finding of specific personal jurisdiction, the Court finds that it lacks specific personal jurisdiction over Bohen.

In light of the above, the Court **grants** Bohen's motion to dismiss as the court lacks personal jurisdiction over Bohen under Florida's long-arm statute. (**ECF No. 39**.) To the extent the Plaintiff asks the Court to take judicial notice of certain exhibits that the Plaintiff provided in support of the Court's exercise of personal jurisdiction over the Defendant Bohen, the Court **denies in part** the Plaintiff's motion in light of its ruling on the Defendant Bohen's motion to

dismiss. (**ECF No. 46**.) As the Plaintiff failed to set forth a *prima facie* case for the exercise of personal jurisdiction over Bohen, the Court will not take judicial notice of exhibits 1-4 which were submitted by the Plaintiff in support of the Court's exercise of personal jurisdiction over Bohen. Even if the Court were to take notice of the materials provided by Scanz, from the descriptions provided by the Plaintiff, these materials do not provide evidence that Bohen undertook any agreement with Sykes, Westphal, or any other of the Defendants to support the Plaintiff's allegations that Bohen was involved in a civil conspiracy. As the Plaintiff failed make out a *prima facie* case for the exercise of personal jurisdiction over Bohen the Court notes that it also did not take notice of Bohen's declaration, which was filed as an exhibit to the Defendant Bohen's motion to dismiss.

### B. Request for Judicial Notice

The Court turns next to the Defendants' motion for the Court to take judicial notice of ten tweets from the twitter account @GetScanz, which were published between February 2016 and June 2017. (ECF No. 42, at 1.) The Defendants ask the Court to take judicial notice of these tweets in support of their claim that certain of the Plaintiff's claims are time barred.

Taking judicial notice of facts under Federal Rule of Evidence 201 is "a highly limited process" which "bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997). Accordingly, a court may only take judicial notice where the fact in question is not subject to reasonable dispute because it is either generally known within the territorial jurisdiction of the Court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Id.* The Eleventh Circuit noted that the types of facts a court can take judicial notice of are things like scientific facts, matters of geography, or matters of political history. *Id.* Where it is proper for a court to take judicial notice of a fact, consistent with Federal Rule of Evidence 201(c)(2), the Court must take notice of such fact where a party requests it and the court is supplied with the information to be noticed.

While the Defendants cast taking notice of materials on a website as uncontroversial, the Court finds that is not necessarily the case. In many cases, it appears where Courts take judicial notice of items such as Facebook posts, which the Court views as analogous to a tweet on Twitter, the authenticity of such content is either not in dispute or such internet postings were expressly incorporated by reference into the Plaintiff's complaint, neither of which happened here. *See, e.g., Schroeder v. Volvo Grp. of N. Am., LLC*, No.

LACV 20-05127-VAP, 2020 WL 6562242, at *3 (C.D. Cal. Sept. 3, 2020) (collecting cases where Courts have taken judicial notice of Instagram and Facebook posts where such materials were "arguably incorporated by reference" into the plaintiff's complaint); *Young v. Greystar Real Estate Partners, LLC*, No. 3:18-cv-02149-BEN-MSB, 2019 WL 4169889, at *1-2 (S.D. Cal. Sept. 3, 2019) (taking judicial notice of Instagram and Facebook posts where the opposing party failed to object to the party's motion); *see also Boesen v. United Sports Publ'ns, Ltd.*, 20-CV-1552, 2020 WL 6393010, at *5 n.6 (E.D.N.Y. Nov. 2, 2020) (taking judicial notice of Facebook posts where the authenticity of such post was not contested). Where Courts take judicial notice of websites more generally, such websites typically contain information made available by government entities. *See Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-Civ, 2017 WL 3503371, at * (S.D Fla. Aug. 15, 2017) (Scola, J.) (noting the lack of a reasonable or understandable objection to a court taking "judicial notice of information publicly available from an official government website"); *Pyure Brands, LLC v. Nascent Health Science LLC*, No. 18-cv-23357, 2019 WL 7945226, at *3 (S.D. Fla. March 4, 2019) (Ungaro, J.) (standing for the same proposition and collecting cases).[2] The Court has found few cases where Courts have taken judicial notice of non-government published internet material. *See*, *e.g.*, *Barron v. Snyder's-Lance, Inc.*, No. 13-62496-Civ, 2015 WL 11182066, at *4 (S.D. Fla. March 20, 2015) (Lenard, J.) (taking notice of prices contained in internet screen shots "insofar as they reflect a narrow and specific fact: the price of a certain product on a certain website on a certain date"). In taking judicial notice of this material, the *Barron* court relied on a decision from the Tenth Circuit, *O'Toole v. Northrop Grumman Corp.*, in which the Tenth Circuit stated it "is not uncommon for Courts to take judicial notice of factual information found on the world wide web." 499 F.3d 1218, 1225 (10th Cir. 2007). While seemingly helpful to the Defendants, the persuasiveness of the Court's decision in *O'Toole* is lessened significantly as the party in that case, Northrop Grumman, failed to explain to

---

[2] For instance, the Court finds it appropriate to take judicial notice of certain business records provided by the Plaintiff relating to JewMon Enterprises, LLC, Millionaire Publishing LLC, Million Media, LLC, and Millionaire Media I, LLC from the website search.sunbiz.org, a database maintained by the Florida Department of State, Division of Corporations. The Court therefore **grants in part** the Plaintiff's motion to take judicial notice (**ECF No. 46**) with respect to these documents, Exhibits 6-9, though notes these documents were not necessary to or relied upon by the Court in reaching the conclusions set forth in this order. With respect to Exhibit 5, the Court **denies** the Plaintiff's request to take judicial notice of screenshots from the Wayback Machine, consistent with the Court's prior orders. *Setai*, 2017 WL 3503371, at *7-8 (declining to take judicial notice of screenshots from the Wayback Machine).

the Court "why its own website's posting of historical [information] is unreliable." *Id.* This also is inapplicable to the Defendants' motion. As the factual predicate present in *O'Toole* is lacking here, the Court finds *Barron* unpersuasive.

Here, the tweets in question are not incorporated by reference into the Plaintiff's complaint, are contested, and are not published on the internet by a government entity. Similarly, the material the Defendants ask the Court to take judicial notice of is not from the Plaintiff's own website. The Defendants certainly may explore these tweets as they proceed through the discovery process, but the Court finds that asking the Court to take judicial notice of these materials at the motion to dismiss stage is improper. Therefore, the Court **denies** the Defendants' motion for the Court to take judicial notice. (**ECF No. 42**.) Even if the Court were to take judicial notice of these materials, like in *Barron*, it would be for the very narrow purpose to take note of the fact that a tweet was posted on a Twitter account on a certain date and time and not for the content of that tweet. The Court would not, as the Defendants request, look at the tweet and "infer Plaintiff's awareness of the facts giving rise to this lawsuit and its potential claims against Defendants at the time of the [t]weets." (ECF No. 42, at 4.) Accordingly, the Court finds that the Defendants have failed to argue that the Court should take judicial notice of these materials, and insofar as the Defendants' arguments that the Plaintiff's claims are time barred, the Court is not moved by those arguments.

### C. The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001, *et seq.*

In their respective motions to dismiss, both Stockstorade.com and Westphal and JewMon, Sykes, the Millionaire Publishing entities, and Millionaire Media argue that the Plaintiff has failed to state a trade secret misappropriation claim under the DTSA and FUTSA.

The DTSA provides the owner of a trade secret that is misappropriated with the ability to "bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836. A trade secret is broadly defined as "business, scientific, technical, economic, or engineering information . . . whether tangible or intangible . . . if the owner thereof has taken reasonable measures to keep such information secret and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. §

1839(3). A trade secret is misappropriated if it is disclosed or used "without express or implied consent by a person who . . . knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5).

To bring a colorable claim under the DTSA, a plaintiff must plausibly allege that it possessed information of independent economic value, that was lawfully owned and for which the plaintiff took reasonable measures to keep secret and the defendant used or disclosed that information despite the plaintiff's attempts to maintain its secrecy. *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018) (Bloom, J.).

The FUTSA provides a cause of action for misappropriation of trade secrets. *Sentry Data Sys., Inc.*, 361 F. Supp. 3d at 1293. In order to prevail on a FUTSA claim, "'a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated.'" *Id.* (quoting *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018)). For purposes of the FUTSA, a trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4). Misappropriation, for purposes of the FUTSA, includes, among other things, "acquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means" as well as use of that trade secret "without express or implied consent by a person who (1) used improper means to acquire knowledge of the trade secret; or . . . knew or had reason to know that her or his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Fla. Stat. 688.002(2). Finally, the FUTSA defines improper means as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Fla. Stat. § 688.002(1). Information that is "generally known or readily accessible . . . cannot qualify for trade secret

protection." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998). Whether information is a trade secret is a question of fact, such that at the motion to dismiss stage the movant must present clear authority that the information identified by a plaintiff is not protected. *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (Moreno, J.).

 The Defendants argue that the Plaintiff has failed to plead the existence of a trade secret as the Plaintiff's broad generalizations "would literally include everything Scanz has ever owned or created in its corporate history." (ECF No. 41, at 13; ECF No. 40, at 8 (same).) The Court disagrees and finds, taking the Plaintiff's allegations as true, that the Plaintiff has adequately plead the existence of a trade secret. In its complaint, the Plaintiff states that its business products are comprised of "technological and device-oriented" business solutions and platforms utilized by constituents of the securities industry. (ECF No. 1, at ¶ 2.) The Plaintiff further states that via its licensing agreement with JewMon that Scanz gave JewMon access to its "licensed subscription management back-office infrastructure as well as continually updated versions of the object code of the computer software making up the core of Scanz['s] . . . related product offerings." (ECF No. 26, at ¶ 26.) Far from vague, these allegations seem to be fairly specific in that they allege the Defendants stole back-office infrastructure and code that underlie Scanz's products. Despite these allegations, the Defendants ask this Court to conclude the Plaintiff's complaint is too vague to state a claim with particularity as Judge Altonaga found in *VVIG, Inc. v. Alvarez*, No. 18-23109-Civ, 2019 WL 5063441 (S.D. Fla. Oct. 9, 2019) (Altonaga, J.). However, in *VVIG*, the Court noted the plaintiff's allegations were a "'grab-bag' of information, so broad and conclusory to be nonsensical" alleging the stolen trade secret protected information was comprised of "'*all necessary know-how, standards and specifications*' . . . including '*all* information concerning the business affairs, products, marketing systems, technology, customers, end users, financial affairs, accounting statistical data' . . . [and] 'any other propriety and trade secrets.'" *Id.* at *3 (emphasis in original). That is not so here. Rather than the catch-all allegations at issue in *VVIG*, the Court finds that the Plaintiff's allegations with respect to its trade secret protected information are specific and withstand scrutiny at the motion to dismiss stage.

 As a separate basis to attack the Plaintiff's DTSA and FUTSA claims, the Defendants also claim that the Plaintiff failed to take reasonable steps to keep its trade secrets confidential. (ECF No. 40, at 9-10; ECF No. 41, at 14.) As stated above, both the DTSA and FUTSA require a plaintiff undertake reasonable efforts to maintain the secrecy of its trade secrets. Here too, the

Defendants' arguments fall short. A review of the complaint shows numerous steps the Plaintiff took to safeguard its trade secrets. For instance, the licensing agreement, among other obligations, prevented the Defendants from copying the "look and feel" of Scanz's program; made clear that Scanz retained ownership of its assets, including all technology and other intellectual property; and noted that upon termination JewMon had to return or destroy all proprietary information it received during the course of its relationship with Scanz. (*See* ECF No. 1, at ¶¶ 28-30.) Far from evidencing that the Plaintiff failed to take steps reasonably maintain the secrecy of its trade secrets, the complaint sets forth numerous ways the Plaintiff attempted to safeguard and keep secret its proprietary information.

Finally, the Defendants claim that the Plaintiff failed to allege misappropriation for purposes of the DTSA and FUTSA. (ECF No. 40, at 10-11; ECF No. 41, at 14.) Once again, the Court finds that the Defendants' arguments fall short. In their motions, both sets of Defendants ask the Court to follow *Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*, where the Court found a plaintiff failed to allege misappropriation where the plaintiff's complaint literally recited the elements of misappropriation as that term is defined for purposes of FUTSA in a conclusory fashion. No. 14-22770-Civ, 2015 WL 12085848, at *9-10 (S.D. Fla. March 20, 2015). Far from the threadbare recitations in *Enteris*, the Plaintiff's complaint alleges that the Defendants utilized Scanz's trade secrets to develop their own "virtually identical market analysis platform as the one they had access to under the license agreement" notwithstanding their agreements with the Plaintiff to cease their use of and destroy Scanz's information after termination of the licensing agreement. (ECF No. 44, at 11.) Accordingly, the Court finds that the Plaintiff has adequately alleged misappropriation.

In light of the above, the Court **denies** the Defendants' motions to the extent they allege the Plaintiff has failed to state a claim under Counts I and II of the complaint.

### D. Preemption Under FUTSA

Having found the Plaintiff's FUTSA claim survives the Defendants' motions to dismiss, the Court next turns to the Defendants' arguments that certain of the Plaintiff's claims are preempted by FUTSA. FUTSA preempts certain "conflicting tort, restitutory, and other laws of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1). However, the law does not preempt "[c]ontractual remedies, whether or not based upon misappropriation of a trade secret" or "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Fla Stat. § 688.008(2).

In determining whether a plaintiff's FUTSA claims preempt a plaintiff from pleading a separate, but related claim, the Court must evaluate "whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008" *Id.* at 1335-36. Put another way, a plaintiff's separate claim is preempted if there is no "material distinction between the plaintiff's FUTSA claim and the other allegation." *Sentry Data Sys., Inc.*, 361 F. Supp. 3d at 1294-95.

Here, the Defendants argue that the Plaintiff's "common law tort claims are each preempted because they arise out of the core allegation that Defendants misappropriated the Plaintiff's trade secrets and used them to develop the [Stockstotrade.com] website." (ECF No. 40, at 17; ECF No. 41, at 9). Accordingly, the Defendants ask the Court to dismiss Counts IV (constructive fraud), V (breach of fiduciary duty), VI (tortious interference); VII (unjust enrichment); VIII (conversion); and X[3] (breach of the implied duty of good faith and fair dealing).

### (1)    *Counts IV and V*

Under Florida law, constructive fraud occurs "when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005). The fiduciary or confidential relationship for purposes of constructive fraud is broadly construed and exists where "confidence is reposed by one party and a trust is accepted by the other, or where confidence has been acquired and abused." *Id.* Constructive fraud "will not lie where the parties are dealing at arms length because there is no duty imposed on either party to protect or benefit the other." *Id.* The fact that one party places its trust or confidence in the other "does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party." *Id.* To prove such a relationship exists, a plaintiff must plead the existence of something beyond an "ordinary commercial relationship." *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, 13-80645-Civ, 2014 WL 12461349, at *9 (S.D. Fla. Jan. 7, 2014) (Ryskamp, J.).

The Defendants argue that this claim is preempted by FUTSA, but the Court does not agree. Rather, the Court finds that while the Plaintiff's constructive fraud claim and FUTSA claim are related, they are not materially

---

[3] Count X of the Plaintiff's complaint is in fact Count IX, though the Court will refer to it as Count X throughout this order for ease. The complaint non-consecutively numbers its counts, going straight to Count X from Count VIII without inclusion of a Count IX.

indistinguishable. Therefore, the Court finds that Count IV is not preempted under FUTSA. However, this claim is still subject to dismissal as the Plaintiff fails to adequately state that the appropriate predicate relationship existed between the parties. While the Plaintiff claims that a "confidential relationship ar[ose] from and as a result of the license agreement" such that "each of the defendants . . . owed fiduciary duties of the highest character to Scanz to . . . honor the confidentiality, non-disclosure and non-piracy provisions of the license agreement" the Plaintiff fails to advance any facts allowing the Court to infer that the parties were dealing anything but at arms length when they entered into their licensing agreement and therefore it agrees that the parties had an ordinary business relationship. (ECF No. 1, at ¶ 75); *see also Honda*, 390 F. Supp. 2d at 1179-80 (finding the lack of a fiduciary or confidential relationship where a party alleged there was an oral confidentiality agreement but failed to allege the the opposing party agreed to "undertak[e] . . . the duty to advise, counsel, protect, or benefit" that party."). While the Plaintiff placed confidentiality protections into its license agreement with JewMon, the Plaintiff's complaint does not allege that Sykes or JewMon somehow evidenced it was undertaking "recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party." *Honda*, 390 F. Supp. 2d at 1179. That the Plaintiff simply trusted the Defendants as business partners for the Plaintiff does not create the predicate relationship necessary for the Plaintiff's constructive fraud count to go forward.

As an alternative basis to survive the Defendants' motions to dismiss, the Plaintiff argues the fact that the Plaintiff and the Defendants shared in the "fruits and losses" of their agreement should require the Court to find that a fiduciary relationship existed between the parties. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1249 (11th Cir. 2007). While the Plaintiff cites *Optimum* in support of their contention, *Optimum* cuts against the Plaintiff's arguments. The Plaintiff correctly states that "joint ventures and legal partnerships" can give rise to a fiduciary duty, but the Plaintiff fails to allege facts to support a finding that such a relationship was present here. (ECF No. 44, at 17.) Indeed, as the Eleventh Circuit stated in *Optimum*, "merely calling the relationship a joint venture . . . does not make it so." *Id.* Whether such a relationship exists turns on considerations such as whether the partners share "fruits and losses *with an equal right*, express or implied, to direct and control the conduct of the enterprise." *Id.* (emphasis added). Rather, the complaint seems to indicate simply that the parties had a normal business relationship giving rise to no special duties. *Id.* Accordingly, the Court also finds that the Plaintiff has failed to adequately allege a breach of fiduciary duty.

### (2)   *Count VI*

Turning next to Count VI, the Court notes that, in order to plead a claim for tortious interference under Florida law, a Plaintiff must plead "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015). The party "allegedly interfered with must be actual and identifiable, and not just a large group such as the community at large." *Allegiance Healthcare Corp.*, 232 F. Supp. 2d 1329 at 1336.

Regardless of whether this claim is preempted by FUTSA, the Court finds that the Plaintiff has failed to state a claim for tortious interference. Specifically, the Court finds that the Plaintiff has failed to identify an actual and identifiable group with whom the Defendants interfered. In the Plaintiff's complaint, the Plaintiff states it has "numerous business relationships with clients in Florida, located throughout the United States and located throughout the world," that "[a]t all times material hereto, the [D]efendants named in this Count had full knowledge of such business relationships" and such Defendants "have intentionally and unjustifiably interfered with these business relationships." (ECF No. 1, at ¶¶ 83-86.) These allegations fail to adequately plead that the Defendants interfered with an actual and identifiable business relationship of the Plaintiff. Accordingly, the Court grants the Defendants' motion to dismiss Count VI of the Plaintiff's complaint.

### (3)   *Counts VII and VIII*

The Court agrees with the Defendants that Counts VII and VIII of the Plaintiff's complaint are preempted by the FUTSA. These counts essentially allege that the Defendants misappropriated the Plaintiff's trade secrets and wrongfully used those trade secrets to their benefit. As the Court finds there is no material distinction between these claims and the Plaintiff's FUTSA claim, the Court dismisses Counts VII and VIII. *See, e.g.*, *Gonzalez-Hernandez v. Orbay*, No. 08-21782-Civ, 2009 WL 10668626, at *3 (S.D. Fla. Jan. 15, 2009) (King, J.) (finding unjust enrichment claim based on "nearly identical allegations" as preempted by FUTSA); *see also Pelfrey v. Mahaffy*, No. 17-80920-Civ, 2018 WL 3110797, at *3 (S.D. Fla. Feb. 7, 2018) (Middlebrooks, J.) (finding FUTSA preempted conversion claim as the plaintiff alleged the theft of the same property that it characterized as constituting a trade secret).

**(4)**   *Count X*

Finally, the Court turns to the Plaintiff's claim for breach of the implied duty of good faith and fair dealing. It appears that some of the parties agree that the Plaintiff's claim for a breach of the implied duty of good faith and fair dealing sounds in breach of contract and therefore would not be evaluated for preemption under FUTSA. Nonetheless, some of the Defendants argue that this claim is preempted by FUTSA. (ECF No. 40, at 17 n.4.) Regardless of this issue, the Court agrees that the Plaintiff's claim for breach of the implied duty of good faith and fair dealing must be dismissed as the Plaintiff has not asserted a claim for breach of contract as one of the counts in its complaint. *See Centurion Air Cargo, Inc. v. United Parcel Service Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005) ("This court has held that a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract."); *see also Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990) (noting the implied duty of good faith and fair dealing is "a doctrine that modified the meaning of all explicit terms in a contract, preventing a breach of those explicit terms . . . [b]ut it is not an undertaking that can be breached apart from those terms."); *see also Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1437-38 (S.D. Fla. 1996) (noting "Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract" but the application of the covenant is "not without limits, and there are many circumstances under which courts will not allow a party to pursue a cause of action for breach of the implied covenant" including "where there is no accompanying action for breach of an express term of the agreement."). Accordingly, the Court dismisses Count X of the Plaintiff's complaint.

For the reasons stated above, the Court **grants** the Defendants' motions to dismiss Counts IV, V, VI, VII, VIII, and X of the Plaintiff's complaint.

## E. Violation of the Lanham Act, 15 U.S.C. § 1125(a)

In Count III of the Plaintiff's complaint, the Plaintiff asserts the Defendants have violated the Lanham Act by "issuing, and . . . continuing to issue, false and misleading statements of fact to the market place while omitting substantial disclosures the market and Scanz were entitled to know" including "representations and omissions to the effect that they had lawfully developed and now owned their own market analysis software" which in the view of the Plaintiff "creates an untrue impression in the marketplace." (ECF No. 1, at ¶ 64.) The Plaintiff alleges that the Defendants "have used in national and international commerce words, symbols and devices" that have furthered

the Defendants' "outright lie that these defendants have themselves lawfully developed a virtually identical market analysis product line as the market analysis product offerings sold . . . by Scanz for nearly 20 years." (ECF No. 1, at ¶ 65.) As a result of this conduct, the Plaintiff alleges the Defendants have "already caused confusion and deceived the public with respect to the origin, sponsorship and approval of these defendants' pirated stock trading platform." (ECF No. 1, at ¶ 66.)

The Defendants, in turn, argue that they cannot discern from the Plaintiff's complaint whether the Plaintiff is asserting a claim pursuant to Section 43(a)(1)(A) or Section 43(a)(1)(B) of the Lanham Act. 15 U.S.C. § 1125(a)(1). These provisions provide:

> (1) Any person who, on or in connection with any good or services . . . uses in commerce . . . any false designation of origin, false or misleading description of act, or false or misleading representation of fact, which --
>> (A) is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic original of his or her or another person's goods or services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a). The Defendants also argue that the Supreme Court's opinion in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) defeats any potential Lanham Act claim advanced by the Plaintiff.

The Lanham Act "was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar*, 539 U.S. at 28 (quoting 15 U.S.C. § 1127). While much of the Lanham Act deals with trademarks and related marks, Section 43 of the Lanham Act "is one of the few provisions that goes beyond trademark protection" and creates "a federal remedy against a person who used in commerce either a false designation of original, or any false description or representation in connection with any goods or services." *Id.* at 29 (internal quotations omitted). Section 43, however, does not have boundless application and is not a federal codification of the "overall law of unfair competition . . . but can only apply to certain unfair trade practices prohibited by its text." *Id.* The

Supreme Court noted in *Dastar* that Section 43 covers claims relating to "origin of production as well as geographic origin" which includes "reverse passing off" claims. *Id.* at 30. Reverse passing off claims are claims where "a producer misrepresents someone else's goods or services as his own." *Id.* at 27 n.1.

The Court agrees with the Defendants that the Plaintiff has failed to state a viable claim under Section 43 of the Lanham Act. In *Appjigger GmbH v. BLU Products, Inc.*, the Court considered whether a plaintiff properly stated a "false designation of origin" claim under the Lanham Act where the plaintiff claimed the defendant violated Section 43 of the Lanham Act by suggesting through its advertising that the defendant was the "origin" of the plaintiff's software. No. 15-22313-Civ, 2016 WL 4119720, at *3 (S.D. Fla. March 7, 2016) (Williams, J.). The Court found the plaintiff failed to state claim because *Dastar* held that "origin" for purposes of Section 43 "did not refer to the author of any idea, concept, or communication embodied in a good, but to the producer of the tangible good itself." *Id.* Applying this principle, the Court noted that the Eleventh Circuit has "easily disposed of" false designation of origin claims where plaintiffs have claimed that defendants unlawfully sold items they created because such claims "do not give rise to a claim under § 1125." *Id.* (discussing *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1310 (11th Cir. 2007).

The Plaintiff also fails to state a false advertising claim under the Lanham Act. Authorship of something is "not a nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham Act." *Appjigger*, 2016 WL 4119720, at *4. A plaintiff "cannot plead around *Dastar*, by 'shoe-horn[ing]' a claim for improper authorship credit into a false advertising theory." *Id.* (quoting *Wilchombe v. Teevee Toons, Inc.*, 515 F. Supp. 2d 1297, 1305 (N.D. Ga. 2007)). The Plaintiff seems to suggest the basis of its false advertising claim is that the Defendants are promoting their own product while "failing to properly attribute the source of the underlying technology embodied in the product" but that is precisely the type of claim that is not actionable under the Lanham Act. *Appjigger*, 2016 WL 4119720, at *4.

Finally, to the extent the Plaintiff's assertions as to the Defendants use of the "look and feel" of their product attempt to state a claim for trade dress infringement, the Plaintiff must establish that the product is confusing similar to its product, the similar features of the two products are *primarily non-functional*, and the plaintiff's product is distinctive. *Id.* While the Plaintiff has plead confusingly similarity, they have not adequately plead any facts regarding non-functionality. *Id.* Accordingly, even construing the complaint as broadly as possible, the Court finds that the Plaintiff has failed to state a claim under the Lanham Act.

### F. Conspiracy Liability as to the Remaining Defendants

Finally, the Court turns to the Defendants' arguments that the Plaintiff has failed to adequately plead civil conspiracy with respect to the remaining Defendants, The Court set forth the elements for pleading civil conspiracy in Section 3.A.2, *supra*.

The Defendants argue in their briefing that the Plaintiff has failed to adequately plead civil conspiracy because the complaint provides only conclusory allegations with respect to the various Defendants, and in any case, there can be no conspiracy based on the intracorporate conspiracy doctrine. In response, the Plaintiff argues the intracorporate conspiracy doctrine is inapplicable because each of the corporate defendants are alter egos of Sykes and moreover that the Plaintiff has sufficiently plead conspiracy based on the facts alleged in the complaint. In support of its conspiracy allegation, the Plaintiff states, among other things, that "JewMon, Million Publishing, Millionaire Media, StocksToTrade, Sykes, [and] Westphal . . . engaged in a civil conspiracy to misappropriate the Scanz' Assets and Scanz Trade Secrets . . . through Sykes's domination, control and *alter ego* status over the affairs of JewMon, Millionaire Publishing, Millionaire Media and StocksToTrade in such a way as Sykes cooperated with Westphal . . . to formulate and utilize each of these entities to hide the real party in interest with respect to the object of the conspiracy and thereby buy themselves enough time to perfect their theft of the Scanz Assets and Scanz Trade Secrets." (ECF No. 1, ¶ 39.)

At the outset, while certain of the Defendants allege the Plaintiff's conspiracy claims must meet the heightened pleading standards of Federal Rule 9(b) on the basis that they sound in fraud, the Court does not agree. *See, e.g.*, *Lobo Capital Partners, LLC v. Forte*, No. 8:12-cv-2029-T-33AEP, 2013 WL 1279009, at *3 (S.D. Fla. March 28, 2013) (declining to apply heightened pleading standards to civil conspiracy allegations in the context of a claim regarding theft and use of trade secrets). As the Plaintiff need not satisfy heightened pleading standards, the Court agrees with the Plaintiff that at this early stage of the litigation, the Plaintiff has sufficiently plead conspiracy with respect to the remaining Defendants. Unlike the conclusory allegations with respect to Defendant Timothy Bohen, the complaint states that Defendants Westphal and Sykes are the members of JewMon and notes that JewMon, Millionaire Publishing, Millionaire Media, and Stockstotrade.com all share a corporate office address in Florida, with at least Sykes having some interest in each of these entities. (ECF No. 1, at ¶¶ 4-14.) Notably, with respect to Timothy Bohen, the complaint failed to state in a non-conclusory way the existence of a relationship between Bohen and the other Defendants. These allegations,

together with other allegations pertaining to these Defendants set forth in the complaint, are sufficient to support the Plaintiff's claim of civil conspiracy. While the

    While the Defendants correctly note that the intracorporate conspiracy doctrine "holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy" *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000), the Defendants fail to acknowledge that while Westphal and Sykes may be members of JewMon Enterprises, LLC, the Defendants do not allege JewMon, and the other corporate entity Defendants are related. *See Lobo Capital Partners*, 2013 WL 1279009, at *3. Accordingly, the Plaintiff's allegations as to civil conspiracy are not subject to dismissal under the intracorporate conspiracy doctrine.

### 4. Conclusion

    In sum, the Court **grants** Defendant Timothy Bohen's motion to dismiss based on lack of personal jurisdiction. (**ECF No. 39**.) The Court **grants in part and denies in part** Stockstotrade.com Inc and Zachary Westphal's (**ECF No. 40**); and JewMon Enterprises, LLC, Timothy Sykes, Millionaire Publishing, LLC (a Florida limited liability corporation), Million Publishing, LLC (a Colorado limited liability corporation), and Millionaire Media, LLC's (**ECF No. 41**) motions to dismiss. Specifically, the Court grants the remaining Defendants' request to dismiss Counts III through X of the Plaintiff's complaint. However, the Court denies the Defendants' request for the Court to dismiss Counts I and II of the Plaintiff's complaint.

    The Court also notes that both parties filed motions for the Court to take judicial notices of documents including tweets, YouTube videos, and various other documents, including corporate documents from a website maintained by the Florida Department of State, Division of Corporations. For reasons stated above, the Court **denies** the Defendants' motion to take judicial notice (**ECF No. 42**.) The Court also **grants in part and denies in part** the Plaintiff's motion to take judicial notice. (**ECF No. 46**.) While the Court granted the Plaintiff's request to take judicial notice of Exhibits 6-9, the Court's decision did not rely in whole or in part on these documents.

    Finally, the Court notes that its practice in cases with multiple plaintiffs or defendants is for the parties to file **joint motions and consolidated responses and replies** unless there are clear conflicts of position. If such a conflict of position exists, the parties must explain the conflicts in their separate filings. All future filings must comply with this practice.

**Done and ordered** at Miami, Florida on January 6, 2021.

Robert N. Scola, Jr.
United States District Judge