## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SCANZ TECHNOLOGIES, INC.,

      Plaintiff,

vs.

JEWMON ENTERPRISES, LLC, et al.,

      Defendants.

**Case No. 20-cv-22957-SCOLA/TORRES**

---

**PLAINTIFF'S MOTION FOR AN ORDER REGARDING DEFENDANTS'
SELF-IMPOSED DISCOVERY STAY AND THE PROPRIETY OF PLAINTIFF'S
IDENTIFICATION OF ALLEGEDLY MISAPPROPRIATED TRADE SECRETS,
AND TO DIRECT DEFENDANTS TO COMPLY WITH
THE MAGISTRATE JUDGE'S STANDING ORDER**

Gustavo D. Lage, Esq.
Squire Law Group, P.A.
305 W. Atlantic Ave, Suite 5
Delray Beach, FL 33484
Tel.: 888-788-8816
glage@squirelawgroup.com
*Attorneys for Plaintiff Scanz Technologies, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ................................................................................................. 3

MEMORANDUM OF LAW .................................................................................................... 5

    I.    THE DEFENDANTS' MANEUVERS WILLFULLY VIOLATE MAGISTRATE JUDGE TORRES' ORDER ....................................................................................... 5

        A.    The Magistrate Judge's Instructions and Requirement of a Written Motion ............... 5

        B.    The Defendants Are Seeking the Type of Blanket Stay the Magistrate Judge Directed the Parties to Address By Written Court-Motion ......................................... 5

    II.    THE DEFENDANTS' ALLEGED CLAIM NECESSARILY FAILS AS A MATTER OF LAW .................................................................................................. 7

    III.    THE DEFENDANTS' CLAIM FAILS EVEN UNDER THE SUMMARY JUDGMENT STANDARD ............................................................................................. 9

        A.    Whether a Type of Information Constitutes a Trade Secret Is a Complex Question of Fact ........................................................................................................ 9

        B.    The Trade Secrets at Issue Have Been Identified in Extraordinary Detail ................ 11

        C.    Defendants' Implied Claim that the Information is not a Trade Secret as a Matter of Law Fails .................................................................................................. 14

    IV.    THE DEFENDANTS' GAMBITS MUST BE DETERRED ....................................... 16

Rule 7.1(a)(3) Certificate ........................................................................................................ 20

CONCLUSION ....................................................................................................................... 21

Certificate of Service ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*AAR Mfg., Inc. v. Matrix Composites, Inc.*,
  98 So. 3d 186 (Fla. Dist. Ct. App. 2012) ........................................................... 6, 7, 8

*Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*,
  678 F. App'x 839 (11th Cir. 2017) ........................................................................ 10

*Am. Registry, LLC v. Hanaw*,
  No. 2:13-CV-352-FTM-29CM, 2014 WL 12617770 (M.D. Fla. May 19, 2014) ..................... 5

*Amendia, Inc. v. Omni Surgical, LLC*,
  No. 1:12-CV-1168-CC, 2012 WL 13014584 (N.D. Ga. May 15, 2012) ................................... 8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................... 16

*Arthrex, Inc. v. Parcus Med., LLC*,
  No. 210CV151FTM36DNF, 2010 WL 11622727 (M.D. Fla. Dec. 16, 2010) ........................ 18

*Avnet, Inc. v. Wyle Laboratories, Inc.*,
  263 Ga. 615, 437 S.E.2d 302 (1993) ..................................................................... 15

*Bush v. Schiavo*,
  866 So. 2d 136 (Fla. Dist. Ct. App. 2004) ............................................................... 6

*Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*,
  139 F.3d 1396 (11th Cir. 1998) ............................................................................. 9

*Chambers v. NASCO, Inc.*,
  501 U.S. 32, 46, 111 S.Ct. 2123 (1991) ................................................................. 20

*Cheney v. IPD Analytics*,
  No. 08-23188-CIV, 2009 WL 4800247 (S.D. Fla. Dec. 11, 2009) .................................. 10

*Coal. Am., Inc. v. Nat'l Health Benefits Corp.*,
  No. 1:03-CV-4012-CC, 2009 WL 10664900 (N.D. Ga. Feb. 6, 2009) ........................... 10, 15

*Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*,
  107 F.R.D. 288 (D. Del. 1985) ............................................................................. 18

*Default Proof Credit Card Sys., Inc. v. State St. Bank & Tr. Co.*,
  753 F. Supp. 1566 (S.D. Fla. 1990) ....................................................................... 10

*Del Monte Fresh Produce Co. v. Dole Food Co. Inc.*,
    148 F. Supp. 2d 1322 (S.D. Fla. 2001) ............................................................................... 5, 6

*Del Monte Fresh Produce Co. v. Dole Food Co.*,
    136 F. Supp. 2d 1271 (S.D. Fla. 2001) .................................................................................. 9

*Demit of Venezuela, C. A. v. Elec. Water Sys., Inc.*,
    547 F. Supp. 850 (S.D. Fla. 1982) ...................................................................................... 14

*Developmental Techs., LLC v. Valmont Indus., Inc.*,
    No. 8:14-CV-2796-T-35JSS, 2016 WL 1271566 (M.D. Fla. Mar. 31, 2016) ........................ 12

*Digital Assurance Certification, LLC v. Pendolino*,
    No. 6:17-CV-72-ORL-41TBS, 2018 WL 9669762 (M.D. Fla. Sept. 9, 2018).................... 5, 12

*Dura Glob., Techs., Inc. v. Magna Donnelly Corp.*,
    No. CIV.A. 07-CV-10945-D, 2008 WL 2064516 (E.D. Mich. May 14, 2008) ...................... 18

*DynCorp Int'l v. AAR Airlift Grp., Inc.*,
    664 F. App'x 844 (11th Cir. 2016) ................................................................................... 7, 8

*Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*,
    No. 8:17-CV-190-T-23MAP, 2018 WL 3391379 (M.D. Fla. June 12, 2018)........................ 12

*Furmanite Am., Inc. v. T.D. Williamson, Inc.*,
    506 F. Supp. 2d 1134 (M.D. Fla. 2007) ................................................................................ 9

*Gentex Corp. v. Sutter*,
    No. CIV A 3:07-CV-1269, 2008 WL 5068825 (M.D. Pa. Nov. 25, 2008) ............................ 18

*Glatter v. Mroz*,
    65 F.3d 1567 (11th Cir.1995) ............................................................................................. 20

*Hagler Sys., Inc. v. Hagler Grp. Glob., LLC*,
    No. CV 120-026, 2020 WL 2042484 (S.D. Ga. Apr. 28, 2020) ............................................ 16

*Ham-Let, USA, Inc. v. Guthrie*,
    No. 3:18-CV-679-ECM-SMD, 2019 WL 10734739 (M.D. Ala. May 17, 2019) .............. 18, 19

*Hickman v. Taylor*,
    329 U.S. 495 (1947)............................................................................................................ 17

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*,
    920 F.2d 171 (2d Cir. 1990)............................................................................................... 13

*Jabil Inc. v. Essentium, Inc.*,
  No. 8:19-CV-1567-T-23SPF, 2020 WL 708140 (M.D. Fla. Feb. 12, 2020) ...................... 7, 13

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
  254 F.R.D. 463 (M.D. Fla.) ......................................................................................... 8

*KW Plastics v. U.S. Can Co.*,
  No. CIV. A. 99-D-286-N, 2001 WL 237306 (M.D. Ala. Jan. 20, 2001) .................................. 15

*Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*,
  569 F.2d 286 (5th Cir. 1978) ....................................................................................... 9

*Liberty Folder v. Curtiss Anthony Corp.*,
  90 F.R.D. 80 (S.D. Ohio 1981) .................................................................................... 18

*M.C. Dean, Inc. v. City of Miami Beach, Fla.*,
  199 F. Supp. 3d 1349 (S.D. Fla. 2016) ....................................................................... 15

*Manuel v. Convergys Corp.*,
  430 F.3d 1132 (11th Cir. 2005) .................................................................................. 15

*Marlite, Inc. v. Eckenrod*,
  No. 09-22607-CIV, 2010 WL 11506348 (S.D. Fla. June 9, 2010) .......................................... 14

*Marlite, Inc. v. Eckenrod*,
  No. 09-22607-CIV, 2011 WL 39130 (S.D. Fla. Jan. 5, 2011) ................................................ 15

*Matrix Health Grp. v. Sowersby*,
  No. 18-61310-CIV, 2019 WL 4929917 (S.D. Fla. Oct. 7, 2019) ...................................... 10, 15

*Monovis, Inc. v. Aquino*,
  905 F. Supp. 1205 (W.D.N.Y. 1994) ...................................................................... 13, 16

*Nephron Pharm. Corp*,
  2020 WL 7137992 (M.D. Fla. Dec. 7, 2020) ............................................................... 9, 16

*Nephron Pharm. Corp. v. Hulsey*,
  No. 618CV1573ORL31LRH, 2020 WL 7684863 (M.D. Fla. Oct. 7, 2020) ...................... 10, 14

*Oppenheimer Fund, Inc., v. Sanders*,
  437 U.S. 340 (1978) ................................................................................................... 19

*Orlando Sports Stadium, Inc. v. Sentinel Star Co.*,
  316 So. 2d 607 (Fla. Dist. Ct. App. 1975) ..................................................................... 6

*Peer v. Lewis*,
   571 F. App'x 840 (11th Cir. 2014) ................................................................. 20

*Peer v. Lewis*,
   606 F.3d 1306 (11th Cir. 2010) ................................................................... 20

*Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*,
   318 F.3d 1284 (11th Cir. 2003) ................................................................... 13

*Peretz v. United States*,
   501 U.S. 923, 111 S.Ct. 2661 (1991) ............................................................. 7

*Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*,
   35 F.3d 1226 (8th Cir. 1994) ...................................................................... 17

*Revello Med. Mgmt., Inc. v. Med-Data Infotech USA, Inc.*,
   50 So. 3d 678 (Fla. Dist. Ct. App. 2010) .................................................. 6, 18

*Roell v. Withrow*,
   538 U.S. 580, 123 S. Ct. 1696 (2003) ........................................................... 6

*Saldana v. United States*,
   206 F. App'x 843 (11th Cir. 2006) ................................................................ 7

*Salsbury Lab. v. Merieux Lab.*,
   908 F.2d 706 (11th Cir.1990) ........................................................................ 9

*Scanz, etc. v. JewMon Enterprises, etc.*,
   No. 20-22957-CIV, 2021 WL 65466 (S.D. Fla. Jan. 7, 2021) ............................ 8, 14

*Sentry Data Sys., Inc. v. CVS Health*,
   361 F. Supp. 3d 1279 (S.D. Fla. 2018) .......................................................... 8

*Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*,
   320 F. Supp. 3d 1285 (M.D. Fla. 2018) ........................................................... 9

*United States v. Proctor & Gamble Co.*,
   356 U.S. 677 (1958) ................................................................................ 17

*Upjohn Co. v. Hygieia Biological Lab'ys*,
   151 F.R.D. 355 (E.D. Cal. 1993) ................................................................. 17

*XTec, Inc. v. Hembree Consulting Servs., Inc.*,
   183 F. Supp. 3d 1245 (S.D. Fla. 2016) ...................................................... 2, 12

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
   898 F.3d 1279 (11th Cir. 2018) ................................................................ 15

**Statutes**

Federal Magistrate Act of 1968, 28 U.S. Code § 636 .................................... 7

**Rules**

Fed. R. Civ. Proc. 11 ..................................................................................... 20

Local Rule 7.1(a)(3) ....................................................................................... 20

**Treatises**

Michael A. Epstein, *Modern Intellectual Property* (3d ed. 1995) ................. 17

*Moore's Federal Practice* (2d ed. 1960) ......................................................... 6

*Restatement of Law, Third, Unfair Competition* (1995) ........................... 9, 13

Plaintiff Scanz Technologies ("Scanz" or "Plaintiff") hereby respectfully moves the Court for an order directing the Defendants to lift their self-imposed stay of their discovery obligations and/or for a determination that Plaintiff has properly identified the trade secrets at issue with reasonable particularity.

## PRELIMINARY STATEMENT

Blatantly defying Magistrate Judge Torres' Standing Order, the Defendants refuse to submit to any depositions in this matter based upon their argument that this case does not involve trade secrets and "Plaintiff is not entitled to take discovery."  The Defendants have taken this untenable position without first obtaining the requisite approval *of this Court* for such an extreme litigation maneuver. The problem for the Defendants goes beyond the fact that this Court already essentially rejected their claim (in adjudicating the motion dismiss), and extends to the reality that, since February 2021, Plaintiff has engaged in voluminous and overwhelming trade secret designations that its experts believe are quite substantial in comparison to other trade secrets matters they have seen during their careers.  Indeed, the Defendants' self-imposed discovery stay has persisted despite Plaintiff's production of both written interrogatory responses and tens of thousands of files and folders containing the following extensive collections of trade secrets alleged to have been misappropriated by the Defendants: (a) some 532 architectural descriptions of elements components, subcomponents, filtering systems, parameters, sections, action buttons, windows, data columns, menus, submenus and trees that operate within modules and submodules of Plaintiff's product offerings, (b) the complete object code specifically contained within more than 10,000 files and folders, (c) the algorithmic, non-binary computer code associated therewith containing an additional production exceeding 20,000 files and folders and (d) extensive schematic diagrams of the foregoing architectures and micro-architectures underpinning Plaintiff's product offerings.  Respected computer experts in the field have concluded that Plaintiff's submission in

1

this matter is unprecedented in breadth and scope, yet Defendants haven't waivered from their position that "Plaintiff is not entitled to take discovery."

In so doing, Defendants have failed and refused to respond to multiple letters from Plaintiff identifying more than two-dozen district court and court of appeals decisions refuting their unsupportable positions, including law emanating from the Southern District of Florida.  (*See* below Memorandum of Law and Appendix.)  For nearly two months, defense counsel for lead Defendants Timothy Sykes and JewMon Enterprises has consistently referred to Plaintiff's massive trade secret production as "utter nonsense" while he and the numerous other lawyers representing the Defendants have repeatedly claimed that "Plaintiff is not entitled to take discovery" and that the Defendants will therefore not submit to depositions.  In short, Defendants are engaging in what is a transparent and classic stratagem of concocting disputes and hurdles in order to run out the clock on Plaintiff before the discovery cut off.

For the Defendants to self-impose a discovery stay and then seek a magistral determination on the issue without any briefing whatsoever—in violation of the Standing Order now in place— can only be described as, at best, an unusual and outlandish tactic.  What this Court is now confronted with is a Plaintiff who claims its trade secret identification is specific and overwhelming *versus* a large group of Defendants and lawyers who claim that that same trade secret identification is "vague" and "utter nonsense."   Plaintiff respectfully submits, and argues below, that the Defendants' position is utterly baseless.  *See, e.g., XTec, Inc. v. Hembree Consulting Servs., Inc.,* 183 F. Supp. 3d 1245, 1257 (S.D. Fla. 2016) (Altonaga, J.) ("... claim[ing] the entire AuthentX system as a trade secret … is permissible"); *see also,* discussion, *infra,* pp. 5 through 15.

## RELEVANT BACKGROUND

After this Court entered the Order permitting Scanz to proceed on its causes of action for trade secrets misappropriation and civil conspiracy, Defendants JewMon Enterprises and StocksToTrade (collectively "JewMon Defendants") served on Scanz its first set of interrogatories on January 15, 2021, seeking, *inter alia*, an identification of each trade secret Scanz alleges was misappropriated. *See* Exhibit C. Scanz served on the JewMon Defendants its trade secret identification-response on February 16, 2021, separately identifying and describing 532 trade secrets with specificity. *See* Exhibit D.[1] Additionally, on March 15 and March 29, 2021, Scanz disclosed the actual misappropriated architecture referenced in the 532 trade secret descriptions by (a) producing tens of thousands of documents bearing BATES numbers ST0001-ST24648, as well as (b) serving production, data and privilege logs. The foregoing production included object code, non-binary algorithmic object code, and the associated structural schematics of Plaintiff's programs. *See* Composite Exhibit I (data logs).  Exhibit G (amended production log) and Exhibit H (letter regarding document production).

On February 22, 2021, the JewMon Defendants sent a letter in which they asserted that Plaintiff has not identified any trade secrets and that the 532 descriptions are both "vague" and "utter nonsense." *See* Exhibit A. The letter announced that all of the Defendants were advancing the JewMon Defendants' "utter nonsense" position. *Id*. Plaintiff sent a letter in response thereto, setting forth why it disagrees with the Defendants' claim and citing more than a dozen supporting

---

[1]  A Motion to Seal this Exhibit is filed concurrently herewith. While Scanz' initial identification chronicled 533 trade secrets, that number was discovered to actually be 532 because of an unintentional duplication of one description.  Scanz amended and supplemented the responses on February 25 and March 15, 2021 respectively for reasons not material to this Motion, including to watermark four of them with confidentiality designations following entry of the Protective Order. *Id*. In response to an April 9, 2021 email from Defendants' counsel, Plaintiff felt it necessary to tag interrogatory response number 1 as "confidential" in its entirety for clarification purposes and to accord with its prior confidentiality designations.

cases including analogous law from the Southern District of Florida.  Exhibit E.  The Defendants never responded to the showing made by Plaintiff and at all times failed and refused to discuss the caselaw in any respect. The parties held a meet-and-confer call on March 2, 2021. During that call, the Defendants continued to fail and refuse to discuss the caselaw, choosing to insist that Plaintiff's 532 descriptions were insufficient on the basis that they constituted public information. Botwin Declaration. Following the call, Plaintiff sent a letter to Defendants on March 4, 2021 that responded to Defendants' arguments and concerns raised during the call. *See* Exhibit B. Defendants never responded to this letter. Instead, the Defendants scheduled a hearing on alleged discovery issues before Magistrate Judge Torres at which they intend to raise their "trade-secret-identification" defense.

Rather than retreat from their dogmatic position following Plaintiff's massive source code, object code and schematic-diagram productions, on March 29, 2021, the Defendants doubled-down and served Scanz with a blanket Notice of Objection to eight depositions Scanz had previously noticed.  Exhibit B ("Notice"). The Notice states that the Defendants are unilaterally staying their obligation to submit to depositions and provide testimony. The grounds for the Defendants' position remains their allegation that Plaintiff has not identified any trade secrets.  In none of their communications—neither the letter, nor the Notice, nor the meet-and-confer calls, nor anywhere else—have the Defendants so much as *mentioned* the Defendants' voluminous computer-code-based document productions or the caselaw cited in Plaintiff's letters.  Botwin Declaration. Plaintiff Scanz sent defense counsel a responsive letter on March 30, 2021. Exhibit K.  The parties held their final meet-and-confer call on March 31, 2021, which did not lead to a resolution of any issues, and Plaintiff then sent an April 2 letter.  Exhibit L.  Plaintiff served a final demand upon Defendants, which was rejected.  Exhibits M & N.  This Motion follows.

4

**MEMORANDUM OF LAW**

I.    **THE DEFENDANTS' MANEUVERS WILLFULLY VIOLATE MAGISTRATE JUDGE TORRES' ORDER**

    A.  **The Magistrate Judge's Instructions and Requirement of a Written Motion**

Magistrate Judge Torres unambiguously instructed in his Order Setting Discovery Procedures ("Standing Order") that a motion to stay discovery *must be formally brought before this Court*. Specifically, Magistrate Judge Torres instructed that "motions for a blanket stay are not deemed 'discovery motions' for purposes of this Standing Order and may be filed on the docket for the District Judge's consideration." DE17, at 5 n.1. Consistent with these instructions, when a party resists discovery based on the argument that plaintiff did not identify the trade secrets with reasonable particularity in this Circuit, that party must formally bring a motion to stay. *See, e.g., Digital Assurance Certification, LLC v. Pendolino,* No. 6:17-CV-72-ORL-41TBS, 2018 WL 9669762, at *4 (M.D. Fla. Sept. 9, 2018) (defendants *formally moved* for a stay of discovery on the same theory alleged here by the JewMon Defendants, which was denied); *Am. Registry, LLC v. Hanaw,* No. 2:13-CV-352-FTM-29CM, 2014 WL 12617770, at *1 (M.D. Fla. May 19, 2014) (denying *motion formally filed* by the defendants to stay discovery under the same theory).

    B.  **The Defendants Are Seeking the Type of Blanket Stay the Magistrate Judge Directed the Parties to Address By Written Court-Motion**

The fact that the Defendants are essentially seeking a "blanket stay" of discovery cannot be genuinely disputed. *First*, the Notice served by Defendants expressly claims that "Plaintiff is not entitled to take discovery." *Second*, the Notice relies on a line of cases discussing *blanket stays* of a defendant's discovery obligations when the plaintiff fails to identify the trade secrets with

5

reasonable particularity. Exhibit B, at 1-2 (citing each of the following "blanket stay" cases: *Del Monte Fresh Produce Co. v. Dole Food Co. Inc*., 148 F. Supp. 2d 1322, 1323 (S.D. Fla. 2001) (discussing "postpon[ing]" discovery until plaintiff identifies trade secrets with reasonable particularity); *AAR Mfg., Inc. v. Matrix Composites, Inc.*, 98 So. 3d 186, 187 (Fla. Dist. Ct. App. 2012) (analyzing whether to "prevent" discovery under this theory); *Revello Med. Mgmt., Inc. v. Med-Data Infotech USA, Inc*., 50 So. 3d 678, 680 (Fla. Dist. Ct. App. 2010) (evaluating "entitle[ment]" to discovery). *Third*, the Defendants made clear that they will *not* "work in good faith to schedule [*any*] depositions" unless and until "the Court finds that Plaintiff has sufficiently disclosed the allegedly misappropriated trade secrets." Exhibit B, at 2.[2]  Even if the Defendants' self-imposed stay is truly limited to depositions, Florida courts have labeled this type of stay a "blanket ban on the taking of depositions" that is rarely imposed. *Bush v. Schiavo*, 866 So. 2d 136, 137 (Fla. Dist. Ct. App. 2004) (holding that a showing of good cause must be made). In quoting *Moore's Federal Practice*, the court in *Orlando Sports Stadium, Inc. v. Sentinel Star Co*., 316 So. 2d 607 (Fla. Dist. Ct. App. 1975) cautioned:

> [I]t is fairly rare that it will be ordered that a deposition not be taken at all. All motions under these subparagraphs of the rule must be supported by "good cause" and a strong showing is required before a party will be denied entirely the right to take a deposition.

*Id*., at 611 (citing *Moore's Federal Practice,* pp. 493-95 (2d ed.)); *see also, Del Monte*, 148 F. Supp. 2d at 1324 ("The party resisting discovery has the burden to show "good cause" for protecting discovery … .").

---

[2] The Defendants are also well-aware that no discovery response or production is otherwise due before April 15, 2021 but, rather, will be due by the end of April. Their objection is oblique enough to suspect that they are hoping for a determination in their favor at the April 15 hearing with the ultimate goal of further objecting to discovery. Irrespective of the exact extent of the stay sought by the Defendants, however, it is clear that what the Defendants are trying to do would require a formal motion to stay discovery.

Plaintiff is also compelled to bring the instant Motion because, as the Supreme Court held in *Roell v. Withrow*, 538 U.S. 580, 123 S. Ct. 1696 (2003), a party's "consent [to proceedings before a magistrate judge] can be inferred from [its] conduct during litigation." *Id.*, at 582.[3]  Thus, in an abundance of caution, Plaintiff must preserve its jurisdictional objections to any procedures inconsistent with Magistrate Judge Torres' Standing Order, with the Federal Magistrate Act of 1968, 28 U.S. Code § 636, and/or with the Local Magistrate Rules; and in any event, Plaintiff respectfully objects to a procedure that is devoid of any formal briefing on the core and in fact penultimate question Defendants raise.

## II.    THE DEFENDANTS' ALLEGED CLAIM NECESSARILY FAILS AS A MATTER OF LAW

The Eleventh Circuit has addressed the standard that applies when a defendant in a trade secrets action resists discovery. In *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844 (11th Cir. 2016) the Court held that, in order for a plaintiff in a trade secrets action to "proceed[] with discovery …, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret" and that the district court need *not* "make a threshold finding as to the existence of a trade secret to proceed to discovery." *Id.*, at 848 (citing, *e.g., AAR Mfg*, 98 So.3d at 188). *See also, e.g., Jabil Inc. v. Essentium, Inc.*, No. 8:19-CV-1567-T-23SPF, 2020 WL 708140 at *4 (M.D. Fla. Feb. 12, 2020) (denying defendant's motion to stay discovery and concluding that "Jabil's response does identify with reasonable particularity what Jabil *contends* to be the trade secrets that

---

[3] *See also, e.g., Saldana v. United States*, 206 F. App'x 843, 845 (11th Cir. 2006) (holding that a party must expressly preserve its objection to a magistrate's jurisdiction in the trial court) (citing *Peretz v. United States*, 501 U.S. 923, 935, 111 S.Ct. 2661, 2668 (1991)). Scanz is, of course, not arguing that Magistrate Judge Torres does not have jurisdiction to issue a report and recommendation on the penultimate issue of the identification of trade secrets, but argues, rather, that such a report and recommendation could only be reasonably issued after his full review of the briefing and evidence on this question, which Plaintiff has initiated in furtherance of judicial economy by bringing this Motion.

have been misappropriated. Whether Jabil's purported trade secrets are, in fact, trade secrets is not for the Court to resolve as part of this discovery dispute.") (emphasis in original); *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1294 (S.D. Fla. 2018) (applying *DynCorp* rationale).[4] Based on the Eleventh Circuit's test, this Court has, in essence, *already ruled* that Plaintiff can proceed with discovery in finding that Scanz' identification of trade secrets as "business products … comprised of 'technological and device-oriented' business solutions and platforms utilized by constituents of the securities industry" and "licensed subscription management back-office infrastructure as well as continually updated versions of the object code of the computer software making up the core of Scanz['s] ... related product offerings… [was] [f]ar from vague [and] seem to be fairly specific in that they allege the Defendants stole back-office infrastructure and code that underlie Scanz's products." *Scanz, etc. v. JewMon Enterprises, etc.*, No. 20-22957-CIV, 2021 WL 65466, at *7 (S.D. Fla. Jan. 7, 2021).

District courts resolving discovery disputes under this theory *after* the motion-to-dismiss stage still apply the standard enunciated in *DynCorp. See, e.g., Knights Armament Co. v. Optical Sys. Tech., Inc.,* 254 F.R.D. 463 (M.D. Fla.), *aff'd,* 254 F.R.D. 470 (M.D. Fla. 2008), *see* M.D. Fla. Case No. 07–cv–1323–0rl–22KRS; *Amendia, Inc. v. Omni Surgical, LLC*, No. 1:12-CV-1168-CC, 2012 WL 13014584, at ** 5, 6 & n.5 (N.D. Ga. May 15, 2012) (noting that "generic references" may suffice to survive a motion to dismiss, and that the "reasonable particularity" standard applies at the discovery stage).

Since February 2021, Scanz has made overwhelming disclosures to the Defendants to further identify, describe and produce the very trade secrets it alleges were misappropriated. *See*

---

[4] The Defendants and their counsel are necessarily aware of the foregoing standard because the cases they rely on in their Notice apply the same test. *See* Exhibit B (citing, e.g., *AAR Mfg., supra*, 98 So.3d 186).

*also, e.g.,* Exhibits D-G, I, J; Declarations of Messrs. Berg and Myers filed herewith. On the other hand, the Defendants refuse to make witnesses available while advancing countless baseless objections and while at the same time failing to meaningfully respond to Plaintiff's extensive letters and dozens of cited cases informing the proper resolution of the issue.

### III.    THE DEFENDANTS' CLAIM FAILS EVEN UNDER THE SUMMARY JUDGMENT STANDARD

#### A.    Whether a Type of Information Constitutes a Trade Secret Is a Complex Question of Fact

The Defendants' argument fails even under the summary judgment standard.  "Whether a particular type of information constitutes a trade secret is a question of fact." *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.,* 139 F.3d 1396, 1410–11 (11th Cir. 1998) (citing *Salsbury Lab. v. Merieux Lab.,* 908 F.2d 706, 712 (11th Cir.1990)). Thus, this question is "normally resolved by a jury after full presentation of evidence." *Nephron Pharm. Corp. v. Hulsey*, No. 618CV1573ORL31LRH, 2020 WL 7137992, at *3 (M.D. Fla. Dec. 7, 2020) (citing *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018)).

For this reason, "[c]ourts are extremely hesitant to grant summary judgment regarding the fact-intensive questions of the existence of a trade secret, … ." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) (citing *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978)). Indeed, "[t]he term 'trade secret' is one of the most elusive and difficult concepts in the law to define [and] … is of the type normally resolved by a fact finder after full presentation of evidence from each side." *Id.* (citing *Lear Siegler, Inc.,* 569 F.2d at 289). *See also, Del Monte Fresh Produce Co. v. Dole Food Co.,* 136 F. Supp. 2d 1271, 1292–93 (S.D. Fla. 2001) ("It is not possible to state the precise criteria for determining the existence of a trade secret [because the resolution] must be ascertained through a comparative evaluation of all the relevant factors, including the value, secrecy, and definiteness of

the information as well as the nature of the defendant's misconduct.") (quoting *Restatement of Law, Third, Unfair Competition* (1995)).

Courts, therefore, frequently reject the notion that "summary judgment is the most appropriate—or, for that matter, the most effective—mechanism for adjudicating the fact-intensive questions of the existence of a trade secret … ." *Matrix Health Grp. v. Sowersby,* No. 18-61310-CIV, 2019 WL 4929917, at *6 (S.D. Fla. Oct. 7, 2019) (citation and internal quotation marks omitted). In *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 855 (11th Cir. 2017), for example, the Eleventh Circuit partially reversed a summary judgment and sanctions ruling in favor of defendant as to a trade secrets cause of action, finding, *inter alia*, that, "[w]ith no explanation as to how it reached its conclusion, the district court found that [plaintiff] 'failed to demonstrate that ... the manuals constituted trade secrets.' On a technical question such as this, the absence of analysis makes our task difficult." *See also, e.g.*, *Cheney v. IPD Analytics*, No. 08-23188-CIV, 2009 WL 4800247, at *5 (S.D. Fla. Dec. 11, 2009) (Torres, J.) (finding that "[a] careful review of the record shows that Defendants have proffered sufficient evidence to create a triable issue of fact on whether Defendants' research, compilation or customer information constitutes a 'trade secret.'"); *Default Proof Credit Card Sys., Inc. v. State St. Bank & Tr. Co.*, 753 F. Supp. 1566, 1573 (S.D. Fla. 1990) (rejecting defendant's claim that method creation was not a trade secret as a matter of law and that plaintiff's claims were "self-serving," concluding that "[w]hether Plaintiff possessed a trade secret in the case at bar, and the application of the instant facts to the factors articulated above presents a triable issue of fact."); *Coal. Am., Inc. v. Nat'l Health Benefits Corp.,* No. 1:03-CV-4012-CC, 2009 WL 10664900, at *5 (N.D. Ga. Feb. 6, 2009) (leaving the issue for the jury); *Nephron Pharm. Corp. v. Hulsey*, No. 618CV1573ORL31LRH, 2020 WL 7684863, at *9 (M.D. Fla. Oct. 7, 2020), *report and recommendation adopted,* No. 618CV1573ORL31LRH, 2020 WL 7137992 (M.D. Fla. Dec. 7, 2020) (concluding that "as

demonstrated by the parties' respective arguments and evidence cited in support, and drawing all reasonable inferences in the light most favorable to [plaintiff], there is a genuine issue of material fact as to whether the customer list is entitled to trade secret protection … .").

Instead of admitting what they already know to be the law, the Defendants have nonetheless cloaked one of the core questions in this case as a discovery issue through which they seek adjudication without briefing, while blocking Plaintiff's ability to conduct due-process discovery.

### B.  The Trade Secrets at Issue Have Been Identified in Extraordinary Detail

The detailed list of 532 trade secrets served on Defendants describes trade secrets with exacting particularity, such as "[t]he architecture underpinning [specific] algorithms surrounding Plaintiff's product offerings." Exhibit D. Additionally, in response to the Defendants' document requests seeking production of the misappropriated trade secrets, Scanz produced to Defendants tens of thousands of files and folders containing, *inter alia*, object code, non-binary algorithmic object code, and schematic diagrams disclosing the misappropriated architecture of Plaintiff's program. *See* Exhibits G-I.

Respected experts in this field conclude that Scanz' identification of trade secrets is fulsome in breadth and scope. Brian A. Berg is an expert witness, expert consultant and third party auditor in over 80 engagements, including 23 trade secrets cases and matters involving, e.g., source code analysis and comparisons, object code disassembly, hardware design analysis, benchmarking, and forensic computer media duplication, as well as forensic analysis of storage devices and file systems using tools including EnCase. After having reviewed the foregoing information and other materials, Mr. Berg concludes that Scanz's descriptions "paint *a distinct and detailed picture of the trade secrets alleged to have been stolen*" and are "*far beyond that of any other case for which I have been engaged.*" *See* Berg Declaration. Another well-known and respected expert, Monty G.

11

Myers, who has served as a computer and software expert witness in over 50 litigation matters, concludes likewise.  *See* Myers Declaration.

As part of the meet-and-confer efforts, Scanz also cited for the Defendants numerous comparable cases in rebuttal of their position. A selection of these and additional cases are attached hereto as an Appendix for the Court's convenience. The Defendants have never even taken the time to discuss *any* of the holdings within these decisions. The opinions include, for example, a plethora of adjudications demonstrating that Plaintiff's identification of the trade secrets is far more detailed than many—if not all—of the cited cases. *See, e.g.*, *XTec, Inc.,* 183 F. Supp. 3d at 1257 (after trial, holding that plaintiff's description to jury of "'entirety of the AuthentX system, confidential source code, system architecture, and technical infrastructure, as a compilation'" constituted reasonable identification); *Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*, No. 8:17-CV-190-T-23MAP, 2018 WL 3391379, at **6, 7 (M.D. Fla. June 12, 2018) (at summary judgment stage, holding that plaintiff sufficiently "quantifies the trade secrets at issue … [as] discrete software design elements and proprietary functions in Fintech's software [platform]. … [Defendant's] argument that [plaintiff] fatally relies only on circumstantial evidence of misappropriation, such as the similarity of the parties' software and the speed with which [Defendant] developed its product, is without merit."); *Digital Assurance*, 2018 WL 9669762 at *3–4 (denying motion to stay discovery, finding, *inter alia*, that "[h]ow the Plaintiff's platform works" in response to interrogatory sufficiently identified trade secret).

Plaintiff also identified cases supporting compilation trade secrets theories involving information that was technically accessible by others. *See, e.g., Developmental Techs., LLC v. Valmont Indus., Inc.*, No. 8:14-CV-2796-T-35JSS, 2016 WL 1271566 at *2 (M.D. Fla. Mar. 31, 2016) (finding sufficient "Plaintiff['s] respon[se] to Interrogatory No. 1 by stating that the trade secret that forms the basis of its misappropriation claim is a combination (or

compilation) trade secret" along with the statement that "'the collective information provided to Defendants about the Eco-ag Product and System was the unified process and design and operation of which, in unique combination, afforded a competitive advantage to Defendants and was, and is, a protected Trade Secret'"); *Jabil Inc.*, 2020 WL 708140 at \*4 (rejecting defendants' contention that plaintiff's "answer to Interrogatory No. 1 is insufficient in that it amounts to nothing more than a list of publicly available components of the TenX Printer" and finding that description of "eight design elements" with "scientific, technical, and engineering information" was sufficient, and noting that "[a] unique configuration of components, even if they are publicly available, may be considered a trade secret."); *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173, 174 (2d Cir. 1990) (holding that "'architecture' of [plaintiff's] system was a protectable trade secret," and reasoning that "the architecture of ICM's product" is "the 'way in which [plaintiff's] various components fit together as building blocks in order to form the unique whole'").

Also cited by Plaintiff were cases holding that the use of information "to assist or accelerate research or development" constitutes trade secrets misappropriation.  This includes the analogous district court opinion in *Monovis, Inc. v. Aquino*, 905 F. Supp. 1205, 1231 (W.D.N.Y. 1994), where District Judge Elfvin somewhat comparably found that "[t]he circumstances of [defendant's] speedy coming of age in [this] marketplace weigh decidedly in favor of the inference that they misappropriated the plaintiffs' trade secrets." *See also Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003) (citing *Restatement (Third) of Unfair Competition* (1995) (even publicly available data is often trade secret protected because it may constitute a valuable compilation). *See* Appendix (collecting additional cases); and *see*, Exhibits E and K.

Scanz is aware that, in making its detailed showing and further supporting it by expert testimony, it ventures beyond its obligations at this juncture. It is taking this step because the

13

Defendants are apparently determined to delay this case and attempt to run out the discovery clock. On this clear record, it cannot be reasonably disputed that an identification of the trade secrets has been more than sufficiently made to put Defendants on notice for discovery purposes. *Compare, e.g., Demit of Venezuela, C. A. v. Elec. Water Sys., Inc.,* 547 F. Supp. 850, 852 (S.D. Fla. 1982), *aff'd sub nom. Demit of Venezuela v. Elec.,* 740 F.2d 977 (11th Cir. 1984) (district courts "are not upon called to render … an opinion [whether certain information does not constitute a trade secret as a matter of law where] the Plaintiffs produced persuasive testimony showing that their treatment had beneficial value.").

### C. Defendants' Implied Claim that the Information is not a Trade Secret as a Matter of Law Fails

To the extent that the Defendants argue that the items Scanz alleges were misappropriated are not trade secrets as a matter of law, that position is also specious for the foregoing and additional reasons. As an initial matter, the Defendants carry the burden of persuading the Court that a type of information is not a trade secret as a matter of law. The Defendants had this opportunity in bringing their motions to dismiss, and this Court found that the Defendants did not provide "clear authority that the information identified by [Scanz] is not protected" as a matter of law. 2021 WL 65466, at *7 (citation omitted). Since that time, it is noteworthy that the Defendants have never brought the requisite proceedings before this Court to justify their self-imposed litigation stay.

Furthermore, a careful review of cases in which this question was decided as a matter of law reveals that courts will hesitate in making this finding in the affirmative regardless of the forum the Defendants may wish to choose to adjudicate the issue. *See, e.g., Marlite, Inc. v. Eckenrod*, No. 09-22607-CIV, 2010 WL 11506348, at *3 (S.D. Fla. June 9, 2010) (denying summary judgment on trade secret claim even though it was "questionable" whether that information

14

constituted trade secrets); *Nephron Pharm. Corp. v. Hulsey*, No. 618CV1573ORL31LRH, 2020 WL 7684863, at *10 (M.D. Fla. Oct. 7, 2020), *report and recommendation adopted,* No. 618CV1573ORL31LRH, 2020 WL 7137992 (M.D. Fla. Dec. 7, 2020) (on a conflicting record, finding that "Defendants have not established, as a matter of law, that Nephron's customer list is not entitled to trade secret protection."); *KW Plastics v. U.S. Can Co.*, No. CIV. A. 99-D-286-N, 2001 WL 237306, at *2 (M.D. Ala. Jan. 20, 2001) ("... the court cannot find as a matter of law that [the various] materials, when taken as a whole, do not constitute 'trade secrets'").

The cases in which information failed to qualify as a trade secret as a matter of law generally involved either a *clear failure to maintain the secrecy* of the information or a record that was *entirely devoid* of evidence to support plaintiff's claim;[5] or it involved a plaintiff who constructively *abandoned* the claim,[6] or the matter was *virtually identical* to a prior proceeding that determined as a matter of law that the information could not be a trade secret.[7]  However, in Florida district courts, even the latter argument is frequently rejected. S*ee, e.g., Matrix Health*, 2019 WL 4929917, at *7 (rejecting a similar argument, finding instead that "the Court may not, and should not, be in the business of adjudicating quintessentially factual questions—such as whether the 'time and expense' [plaintiff] invested in the compilation of the information at issue here was, or was not, 'significant.' To the contrary, these are precisely the kinds of factual disputes

---

[5] *See, Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300 (11th Cir. 2018) (affirming decision that trade secrets cause of action failed as a matter of law because plaintiff "failed to reasonably protect the information"); *M.C. Dean, Inc. v. City of Miami Beach, Fla*., 199 F. Supp. 3d 1349, 1355 (S.D. Fla. 2016) (same conclusion in dismissing with leave to amend); *Coal. Am., Inc.*, 2009 WL 10664900, at *3 ("the Court can determine that the information at issue is not a trade secret as a matter of law if there is *no* evidence in the record to support Coalition's claim") (emphasis added).

[6] *Id*, at *5 (plaintiff abandoned trade secrets claim).

[7] *See, Manuel v. Convergys Corp.*, 430 F.3d 1132, 1140 (11th Cir. 2005) (under Georgia law, "an employee's knowledge, training, and experience gained during employment do not constitute trade secrets as a matter of law" and finding that plaintiff's list of information was "virtually identical" to another case making this conclusion) (citing *Avnet, Inc. v. Wyle Laboratories, Inc.,* 263 Ga. 615, 437 S.E.2d 302, 303, 305 (1993)).

that jurors are best-equipped to resolve. ... ") (citing *Marlite, Inc. v. Eckenrod*, No. 09-22607-CIV, 2011 WL 39130, at *5 (S.D. Fla. Jan. 5, 2011), *aff'd sub nom. Marlite, Inc. v. Am. Canas*, 453 F. App'x 938 (11th Cir. 2012)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); and *see*, *Nephron Pharm. Corp*, 2020 WL 7137992, at *4 (M.D. Fla. Dec. 7, 2020) (same). *See also*, Appendix filed herewith (listing comparable cases).

Again, though summary judgment proceedings are obviously premature at this early juncture, there can be no genuine dispute that Scanz has made an overwhelming showing that its case may likely proceed to a trial and that it may, in any event, exercise its broad rights to discovery. In the context of the Defendants' self-imposed stay, the Defendants have been duly placed "'on notice of the nature of ... [Plaintiff's] claims" and the overwhelming production to date allows the Defendants to "discern the relevancy of any requested discovery on the trade secrets at issue.'" *Hagler Sys., Inc. v. Hagler Grp. Glob., LLC*, No. CV 120-026, 2020 WL 2042484, at *12 (S.D. Ga. Apr. 28, 2020) (citation omitted).

## IV.     THE DEFENDANTS' GAMBITS MUST BE DETERRED

The Court is respectfully requested to impose sanctions against the Defendants and their counsel under its inherent authority in an amount it deems just and proper. Alternatively, at a minimum, Plaintiff submits that the Court should admonish opposing counsel that further such tactics shall not be tolerated by this Court. In forging a stonewall-defense behind the façade of a discovery vehicle devoid of any briefing, the Defendants are clearly attempting to circumvent Magistrate Judge Torres' Order, obstruct the search for truth, intimidate and harass Scanz, gain access to Scanz' trade secrets without proportionally submitting to discovery, engage in a fishing expedition for defenses while testing the strength of Scanz' case, concoct a "bad faith" defense,

and distract from the Defendants' egregious theft in their "speedy coming of age"[8] scheme to become a fierce competitor of a nearly 20-year leader in the securities-scanning industry. Indeed, it is noteworthy that one of Plaintiff's experts is troubled by the Defendants' admissions made in a book they authored that the developer of their program is highly trained in "computer … hacking."[9] The reality is that this case presents the very unique question of how the Defendants somehow morphed themselves from stock traders to successful technology operators shortly following the termination of the License Agreement with Plaintiff.  To be sure, they have the money to hire a dozen or more lawyers and to pound away with every defense imaginable; but, as the Supreme Court explained, discovery rights are always broad so as to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co*., 356 U.S. 677, 682 (1958). That is because, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).[10]

Additionally, as Scanz submitted to the Defendants from the beginning, the defense position is not truly based on a legitimate interest but is, rather, self-serving: The Defendants do

---

[8] *Monovis*, 905 F. Supp. at 1231.

[9] The book, entitled *The Complete Penny Stock Course*, published in 2018 via Defendant Millionaire Publishing, LLC, is available here: https://completepennystockcourse.com/ or as a Google Play Book here: https://play.google.com/store/books/details/The_Complete_Penny_Stock_Course_Learn_How To Gener?id=5-pVDwAAQBAJ&hl=en_US&gl=US (last accessed on April 8, 2021).

[10] In a trade secrets misappropriation case, these rights are anything but limited, because, "[i]n most [such cases], direct evidence concerning the likelihood of wrongful disclosure or use does not exist." Michael A. Epstein, *Modern Intellectual Property* § 3.01[B][3], at 3-16 (3d ed. 1995). *See also, e.g., Upjohn Co. v. Hygieia Biological Lab'ys*, 151 F.R.D. 355, 358–59 (E.D. Cal. 1993) ("The court agrees with plaintiff that judicial resolution is not possible without permitting the requested discovery.[ ] To conclude otherwise would contravene [the rules of evidence] by insulating from judicial inquiry matters of alleged injustice simply by a party's assertion of trade secrets."); c*f., Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1229 (8th Cir. 1994) (approving of district court's decision that, "[d]uring discovery, … at [plaintiff's] request, that the nature of th[e] dispute required that [defendant] 'freeze in' a particular story regarding the development of [its product]. The court did so to prevent [defendant] from altering its story to conform to the scientific evidence eventually introduced.").

not claim that their discovery obligations should be stayed because Scanz is engaging in a "fishing expedition" to discover the Defendants' trade secrets. Indeed, the concern over discovery of the opponent's trade secrets is the core rationale that has given rise to the pre-identification discovery bar in the first place. *See, e.g., Arthrex, Inc. v. Parcus Med., LLC*, No. 210CV151FTM36DNF, 2010 WL 11622727, at *1 (M.D. Fla. Dec. 16, 2010) (citation omitted); *Ham-Let, USA, Inc. v. Guthrie*, No. 3:18-CV-679-ECM-SMD, 2019 WL 10734739, at **1, 2 (M.D. Ala. May 17, 2019) (granting plaintiff's motion to compel deposition over defendant's claim that plaintiff was on a fishing expedition of defendant's trade secrets, finding that protective order was in place, and that "Plaintiff's need outweighs the harm of disclosure"). Courts have expressly limited the pre-identification bar to discovery only as to the defendants' *trade secrets* and *only in appropriate cases* (which, Scanz respectfully submits, this one is not). *See, e.g., Revello Med. Mgmt.*, 50 So. 3d at 680 (holding that, because cross-claimant "has neither identified with reasonable particularity the nature of its claimed trade secret nor established that it exists[,] …  it was not entitled to discover the computer source code used in [plaintiff's] program."); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680–81 (N.D. Ga. 2007) ("plaintiff [must] sufficiently identify its trade secrets prior to allowing discovery on *the defendant's trade secrets*") (emphasis added).[11]

As Scanz also pointed out during the meet-and-confer process, any concerns over the disclosure of Defendants' trade secrets are mooted by the consensual protective order that is in place. Exhibit L (citing *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 299 (D. Del. 1985) (granting plaintiff's motion to compel, reasoning that "virtually all of th[e]

---

[11]        Courts outside of this Circuit have taken the same limited approach. *See, e.g., Dura Glob., Techs., Inc. v. Magna Donnelly Corp.*, No. CIV.A. 07-CV-10945-D, 2008 WL 2064516, at *3 (E.D. Mich. May 14, 2008) ("To the extent that Plaintiffs' discovery requests do not require disclosure of Defendant's trade secrets, Defendant should properly respond"); *Gentex Corp. v. Sutter*, No. CIV A 3:07-CV-1269, 2008 WL 5068825, at *1 (M.D. Pa. Nov. 25, 2008) ("Here, we deal with the question of what level of specificity a plaintiff should have to show before  obtaining discovery of  a defendant's trade secrets.").

[potential] harm [to the defendants] can be eliminated with stringent protective orders"); *Liberty Folder v. Curtiss Anthony Corp.*, 90 F.R.D. 80, 82 (S.D. Ohio 1981) (granting plaintiff's motion to compel on the basis that "[p]laintiffs' proposed protective order adequately guards against" the defendants' concerns over disclosure of sensitive information)). Finally, the Defendants do not assert that Plaintiff's discovery requests and deposition notices somehow seek "irrelevant" information. And *see, e.g., Ham-Let*, 2019 WL 10734739, at *2 (rejecting defendants' pre-identification objections because plaintiff's need to depose defendant was relevant to its trade secrets claims) (citing, e.g., *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978)).

To date, the Defendants have not responded to Scanz' letters delineating the foregoing points, nor have the Defendants reconsidered their intention to proceed on April 15, 2021 to attempt to have their "identification" claim adjudicated without briefing. To the contrary, at the March 31, 2021 meet-and-confer conference, Defendants' counsel unprofessionally attacked Scanz' counsel, aggressively shouting "Stop it!" and otherwise making derogatory comments such as suggesting that the undersigned should turn his attention to studying hornbooks on federal practice. *See*, Botwin Declaration.

Perhaps a brief preview into the Defendants' misconduct might explain the level of aggression and desperation that is reflected in their evasive and elaborate tactics: Defendant Timothy Sykes, the individual who is taking credit for the creation of the StocksToTrade ("STT") stock market scanning platform, together with an individual named Jamil Ben Alluch, who has a degree in "advanced computer security and hacking," published a book in 2018. Therein, Messrs. Sykes and Ben Alluch state that "version one" of the Defendants' platform, STT, was first made available as a "rebranded" product for two years before "version two" of STT came out in 2016, and that version two is Sykes' "brainchild." *See*, Berg Declaration. These dates track back to the actual operation of the License Agreement and boldly support and in fact underscore Plaintiff's

19

claims. The evidence will show the egregious intention of the JewMon Defendants and their associates in knowingly stealing Plaintiff's technologies to begin the Defendants' entree' into the securities-scanning business. Given the nature of the alleged blatant theft by the Defendants in this case—so blatant that they are nearly bragging about it in the public domain—it is perhaps not surprising they are attempting to block Scanz from obtaining deposition testimony in an ill-conceived effort to somehow gain an advantage.

"[T]he [court's] inherent power [to impose sanctions for litigation misconduct] extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 2134 (1991)). "A court employs its inherent power to sanction an attorney to punish and deter untoward conduct, not to compensate a litigant for his underlying injury." *Peer v. Lewis*, 571 F. App'x 840, 846 (11th Cir. 2014). Rule 11 is arguably impractical because there is no pleading on file by the Defendants, and the safe-harbor requirement would not allow for a timely Rule 11 notice before the diseconomies of Defendants' gambits have already taken hold. In any event, "the inherent power of a court 'can be invoked even if procedural rules exist which sanction the same conduct,' for these rules are not substitutes for the inherent power." 606 F.3d at 1314 (citing *Glatter v. Mroz*, 65 F.3d 1567, 1575 (11th Cir.1995)).

Should the Court not be inclined at this point to impose deterring sanctions, it is respectfully submitted that the Defendants should be admonished and directed to comply with Court orders and to conduct themselves in a professional manner in dealing with opposing counsel, while submitting to the same sort of discovery any other defendant would have to.

### Rule 7.1(a)(3) Certificate

Counsel for the Defendants represented that Defendants oppose the relief requested herein.

20

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that this Motion should be granted.

Dated: April 11, 2021                          Respectfully Submitted,

                                                                SQUIRE LAW GROUP, P.A.
                                                                305 W. Atlantic Ave, Suite 5
                                                                Delray Beach, FL 33444
                                                                Phone: 888.788.8816
                                                                Fax: 786.577.0425
                                                                dlage@squirelawgroup.com

                                                  By:     */s/Gustavo D. Lage*
                                                                Gustavo D. Lage
                                                                Florida Bar No. 972551

                                                  *Attorneys for Plaintiff*
                                                  *SCANZ TECHNOLOGIES, INC.*

**Certificate of Service**

I hereby certify that on April 11, 2021, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the Electronic

Service List for this Case.

 Dated: April 11, 2021                                  *s/Gustavo D. Lage*
                                                                Gustavo D. Lage