# EXHIBIT 8

**To Motion for Partial Summary Judgment**

**(Composite of STT and Westphal Responses to**

**Interrogatories)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

| | |
|---|---|
| SCANZ TECHNOLOGIES, INC., fka EQUITYFEED CORPORATION, A Canadian (Quebec) Corporation, | |
| Plaintiff, | Case No. 20-cv-22957 (RNS/EGT) |
| v. | |
| JEWMON ENTERPRISES, LLC, *et al.*, | |
| Defendants. | |

## DEFENDANT STT'S RESPONSES AND OBJECTIONS TO PLAINTIFF SCANZ'S AMENDED AND SUPERSEDED FIRST SET OF INTERROGATORIES TO STT

In accordance with Fed. R. Civ. P. 33, Defendant StocksToTrade.com, Inc. ("STT") hereby responds to Plaintiff Scanz Technologies, Inc. fka EquityFeed Corporation ("Scanz") Amended and Superseded First Set of Interrogatories ("Interrogatories" or "Requests") subject to the objections set forth below.

## GENERAL STATEMENT

The following responses are based on information presently known by STT and its attorneys. STT reserves the right to amend and/or supplement these responses as more information becomes available.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

STT incorporates the following general statements and objections into each response:

1.      STT responds to each Request as it understands the Request in light of the issues in this lawsuit. If Scanz has a different understanding and disputes STT's objections or response to the Request, STT invites Scanz to meet and confer regarding the Request in an attempt to resolve any differences. Upon meeting and conferring with Scanz, STT reserves the right to

1

amend or supplement its response.

2.      STT objects to each Request that seeks information protected by any privilege or immunity including, without limitation, the attorney-client privilege, the common interest doctrine, the work product doctrine, and privacy laws. STT will not provide any such information.

3.      STT objects to each Request to the extent that it calls for information that is publicly available or equally available to Scanz, and therefore are of no greater burden for Scanz to obtain than for STT to obtain. STT will not provide any such information.

## SPECIFIC RESPONSES AND OBJECTIONS

Each general statement and objection to definitions and instructions above is incorporated into each of the individual responses below, as if written therein.


**Interrogatory No. 1:**

Please describe all aspects concerning any involvement You have ever had with JewMon Enterprises, and for each aspect please describe the details concerning each and every one of the involvements You identified in Your response.

**Response to Interrogatory No. 1:**

STT objects to this request as unclear because the phrases "all aspects concerning any involvement" and "details concerning each and every one of the involvements" are unintelligible. STT further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT further objects to this request because it is not reasonably limited in scope or time as it seeks information regarding "all" aspects of "any" involvement "ever had." STT states that JewMon Enterprises LLC

2

("Jewmon") was organized as a Florida limited liability company on or about June 28, 2012 and changed its name from Jewmon to Millionaire Publishing LLC ("Millionaire Publishing") on or about October 19, 2017. JewMon entered into an agreement with Scopic Software on or about May 7, 2014 under the terms of which Scopic provided software development services to JewMon. STT entered into an agreement with Scopic Software on or about May 7, 2016 under the terms of which Scopic provided software development services to STT. STT further states that, under the May 7, 2014 and May 7, 2016 agreements with Scopic, JewMon and/or STT independently developed a stock research, scanning, educational, and trading platform (the STT platform).

**Interrogatory No. 2:**

Please describe all aspects concerning any involvement You have ever had with Millionaire Media, and for each aspect please describe the details concerning each and every one of the involvements You identified in Your response.

**Response to Interrogatory No. 2:**

STT objects to this request as unclear because the phrases "all aspects concerning any involvement" and "details concerning each and every one of the involvements" are unintelligible. STT further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT further objects to this request because it is not reasonably limited in scope or time as it seeks information regarding "all" aspects of "any" involvement "ever had." STT states that Millionaire Media LLC ("Millionaire Media") was organized as a Delaware limited liability company on or about May 11, 2007.. STT does not have any involvement with Millionaire Media.

**Interrogatory No. 3:**

Please describe all aspects concerning any involvement You have ever had with Millionaire Publishing, and for each aspect please describe the details concerning each and every one of the involvements You identified in Your response.

**Response to Interrogatory No. 3:**

STT objects to this request as unclear because the phrases "all aspects concerning any involvement" and "details concerning each and every one of the involvements" are unintelligible. STT further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT further objects to this request because it is not reasonably limited in scope or time as it seeks information regarding "all" aspects of "any" involvement "ever had." STT incorporates its Response to Interrogatory No. 1.

**Interrogatory No. 4:**

Identify any and all transfers, payments, remittances, movements or deliveries of property (hereafter "transfers") involving You, on the one hand, and any of the Defendants, on the other hand, including, without limitation, such transfers by You to any of the Defendants or by any of the Defendants to You. For each such transfer, please also describe the dates, amounts and all surrounding circumstances and explanations about and involving each such transfer.

**Response to Interrogatory No. 4:**

STT objects to this request as overly broad to the extent it seeks information regarding transfers unrelated to Scanz's allegation of trade secret misappropriation that are not relevant to

4

any parties claim or defense including monetary transactions conducted in the normal course of business between STT and companies or individuals of which one or more of such individuals is an owner, part-owner, or employee of one or more of such companies. STT further objects to this request because it is not reasonably limited in scope or time as it seeks information regarding "any and all" transfers.

**Interrogatory No. 5:**

For all periods from January 1, 2013 through and including the date upon which the Complaint in this Matter was filed, describe in detail Your involvement with any and all architectures, software applications, user interfaces and Scanning Platforms associated with, regarding or concerning the domain situated at www.stockstotrade.com, including but not limited to development, research, design, maintenance, compliance, testing, marketing, sales, management, leadership and business planning.

**Response to Interrogatory No. 5:**

STT objects to this request as unclear because the phrase "involvement with any and all architectures, software applications, user interfaces and Scanning Platforms associated with, regarding or concerning the domain situated at www.stockstotrade.com" is unintelligible. STT further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT states that on or about February 15, 2016, STT offered a stock research, scanning, educational, and trading platform (the STT platform) on www.stockstotrade.com. Since February 15, 2016, STT has operated and continues to operate the STT platform on www.stockstotrade.com. JewMon entered into an agreement with Scopic Software on or about May 7, 2014 under the terms of which Scopic provided software

5

development services to JewMon. STT entered into an agreement with Scopic Software on or about May 7, 2016 under the terms of which Scopic provided software development services to STT. STT further states that, under the May 7, 2014 and May 7, 2016 agreements with Scopic, JewMon and/or STT independently developed the STT platform.

**Interrogatory No. 6:**

If you have ever seen and formed an impression or understanding concerning the truthfulness or accuracy of the 2017 Colwell Letter, please identify and specifically describe for each such occasion where you've seen the 2017 Colwell Letter any and all beliefs You have ever had regarding the 2017 Colwell Letter, including, but not limited to, Your beliefs regarding (a) the accuracy or veracity of the 2017 Colwell letter and/or (b) whether or not the 2017 Colwell letter was a comprehensive and all-inclusive statement of Your defenses against the allegations of wrongdoing that said letter was purporting to address. If you have never seen and formed any impression or understanding concerning the truthfulness or accuracy of the 2017 Colwell Letter, please say so.

**Response to Interrogatory No. 6:**

STT objects to this request to the extent it seeks information regarding confidential communications between STT and its attorneys protected by the attorney-client privilege and the work product doctrine. STT further objects to this request as overly broad because it seeks information not relevant to any parties claim or defense as the 2017 Colwell letter is unrelated to Scanz's allegation of trade secret misappropriation. STT states that it believes the factual statements contained in the 2017 Colwell Letter were true and accurate.

**Interrogatory No. 7:**

With respect to the provision of the License Agreement embodied in the second sentence of Section 15 of the License Agreement (which sentence reads, "After termination of this Agreement, while it is acknowledged that JewMon may create and procure a competitive market analysis platform to offer to its customers, JewMon shall not utilize any portion of the Software and shall not copy the 'look and feel' of the Software/Website.") please describe Your belief, impression, interpretation, or understanding by You regarding the meaning of this particular provision of the License Agreement at the time You first became involved with architectures, software applications, user interfaces and Scanning Platforms other than the white label product identified in the License Agreement, including, but not limited to, at the time you first became involved with the Scanning Platforms that are now (as of the date of the filing of the Complaint in this Matter) associated with both STT and with the domain situated at www.stockstotrade.com. If you never formed such a belief, impression, interpretation or understanding regarding this particular provision of the License Agreement, please say so.

**Response to Interrogatory No. 7:**

STT objects to this request as unintelligible because it seeks information regarding its "belief, impression, interpretation, or understanding" of the meaning of a provision of an agreement to which it was not a party. STT further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT further objects to this request to the extent it seeks information regarding confidential communications between STT and its attorneys protected by the attorney-client privilege and the work product doctrine. STT states that it understands the quoted provision to be part of an agreement between EquityFeed and JewMon the terms of which speak for themselves.

7

**Interrogatory No. 8:**

With respect to Interrogatory No. 7 and the provision of the License Agreement embodied in the second sentence of Section 15 of the License Agreement (which sentence reads, "After termination of this Agreement, while it is acknowledged that JewMon may create and procure a competitive market analysis platform to offer to its customers, JewMon shall not utilize any portion of the Software and shall not copy the 'look and feel' of the Software/Website.") please describe any and all of Your discussions or communications of any kind with any Person (including, but not limited to, with any of the Defendants, with Scopic Software and with Jamil Ben Alluch) concerning Your belief, impression, interpretation, or understanding regarding the meaning of this particular provision of the License Agreement. If you never had any such discussions or communications with any of the Defendants regarding this particular provision of the License Agreement, please say so.

**Response to Interrogatory No. 8:**

STT objects to this request as unintelligible because it seeks information regarding its "belief, impression, interpretation, or understanding" of the meaning of a provision of an agreement to which it was not a party. STT further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT further objects to this request to the extent it seeks information regarding confidential communications between STT and its attorneys protected by the attorney-client privilege and the work product doctrine. STT states that it understands the quoted provision to be part of an agreement between EquityFeed and JewMon the terms of which speak for themselves.

**Interrogatory No. 9:**

For all periods from January 1, 2008 through and including the date upon which the Complaint in this Matter was filed, describe the circumstances surrounding or otherwise relating to and/or concerning all services rendered to any of the Defendants by Jamil Ben Alluch, including (a) the dates upon which said services were performed, (b) the payments made to Jamil Ben Alluch involving or concerning such services, including (without limitation) the dates and amounts of all such payments and (c) the reasons for all such payments to Jamil Ben Alluch including, but not limited to, a detailed description concerning the services provided by Jamil Ben Alluch not only with respect to all such payments but also with respect to any other reason of any kind whatever concerning said services.

**Response to Interrogatory No. 9:**

STT objects to this request as unclear because the phrases "circumstances surrounding or otherwise relating to and/or concerning all services rendered" and "not only with respect to all such payments but also with respect to any other reason of any kind whatever concerning said services" are unintelligible. STT further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT states that on or about September 2015, Jamil Ben Alluch provided consulting services to STT for which he was not compensated. STT further states that on or about February 10, 2016, STT hired Jamil Ben Alluch as Chief Technology Officer of STT, a position which Jamil Ben Alluch still holds. STT further states that Jamil Ben Alluch on behalf of STT and in collaboration with Scopic Software independently developed the STT platform.

**Interrogatory No. 10:**

For all periods from January 1, 2008 through and including the date upon which the Complaint in this Matter was filed, describe the circumstances surrounding or otherwise relating to and/or concerning all services rendered to any of the Defendants by Scopic Software, including (a) the dates upon which said services were performed, (b) the payments made to Scopic Software (by any of the Defendants) involving or concerning such services, including (without limitation) the dates and amounts of all such payments and (c) the reasons for all such payments to Scopic Software including, but not limited to, a detailed description concerning the services provided by Scopic Software not only with respect to all such payments but also with respect to any other reason of any kind whatever concerning said services.

**Response to Interrogatory No. 10:**

STT objects to this request as unclear because the phrases "circumstances surrounding or otherwise relating to and/or concerning all services rendered" and "not only with respect to all such payments but also with respect to any other reason of any kind whatever concerning said services" are unintelligible. STT further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT states that on or about February 15, 2016, STT offered a stock research, scanning, educational, and trading platform (the STT platform) on www.stockstotrade.com. Since February 15, 2016, STT has operated and continues to operate the STT platform on www.stockstotrade.com. JewMon entered into an agreement with Scopic Software on or about May 7, 2014 under the terms of which Scopic provided software development services to JewMon. STT entered into an agreement with Scopic Software on or about May 7, 2016 under the terms of which Scopic provided software development services to STT. STT further states that, under the May 7, 2014 and May 7, 2016 agreements with Scopic, JewMon and/or STT independently developed the STT platform. STT

10

further states that it will identify records pursuant to Fed. R. Civ. P. 33(d) responsive to this request.

**Interrogatory No. 11:**

From January 1, 2008 to the present, describe all communications between You and any other Person regarding or concerning the development of a Scanning Platform, architecture, software application or user interface that was intended at any time to be owned or controlled by any of the Defendants (involving a Scanning Platform other than the white label product identified in the License Agreement), including, but not limited to, the product and technologies currently (as of the date the Complaint in this Matter was filed) located at www.stockstotrade.com.

**Response to Interrogatory No. 11:**

STT objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT states that on or about February 15, 2016, STT offered a stock research, scanning, educational, and trading platform (the STT platform) on www.stockstotrade.com. Since February 15, 2016, STT has operated and continues to operate the STT platform on www.stockstotrade.com. JewMon entered into an agreement with Scopic Software on or about May 7, 2014 under the terms of which Scopic provided software development services to JewMon. STT entered into an agreement with Scopic Software on or about May 7, 2016 under the terms of which Scopic provided software development services to STT. STT further states that, under the May 7, 2014 and May 7, 2016 agreements with Scopic, JewMon and/or STT independently developed the STT platform.

**Interrogatory No. 12:**

Do you deny that You are legally responsible (in the manner set forth in the Complaint in this Matter) for and with respect to the occurrences and transactions described in the Complaint? If indeed you deny such legal responsibility (whether in whole or in part), please identify and explain all facts and circumstances regarding or supporting Your position that the Complaint's recitation and description of the bases for Your legal responsibility and liability are in truth and in fact inaccurate or otherwise wrong or incorrect.

**Response to Interrogatory No. 12:**

STT objects to this request as confusing and unintelligible. STT denies that it ever misappropriated anything, including any purported trade secrets, from Plaintiff at least for the reasons stated in STT's Answer to Plaintiff's Complaint and in STT's Motion to Dismiss.

**Interrogatory No. 13:**

For each of the calendar years 2015, 2016, 2017, 2018, 2019, 2020 – and for the period of time starting January 1, 2021 and concluding March 31, 2021 – what were the amounts of money You received from any sources concerning, regarding or related in any manner to the Scanning Platform available to the public through the domain www.stockstotrade.com or through any other source related to the technology delivered through www.stockstotrade.com.

**Response to Interrogatory No. 13:**

STT objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT states that it will identify financial statements pursuant to Fed. R. Civ. P. 33(d) responsive to this request, to the extent such records exist.

**<u>Interrogatory No. 14:</u>**

From a chronological perspective, please identify the earliest historical date on the Gregorian Calendar when any of the Defendants first communicated with an attorney, law firm or lawyer concerning or relating in any manner to a business, architecture software application or other technology involving a Scanning Platform other than the white label product identified in the License Agreement.

**<u>Response to Interrogatory No. 14:</u>**

STT objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. STT further objects to this request because it seeks information regarding confidential communications between STT and its attorneys protected by the attorney-client privilege and the work product doctrine.

13

Dated: May 22, 2021

SQUIRE PATTON BOGGS (US) LLP

/s/ *Raúl B. Mañón*

Raúl B. Mañón
Florida Bar No. 18847
200 South Biscayne Boulevard, Suite 4700
Miami, FL 33131
Phone: +1 305-577-7000
raul.manon@squirepb.com

Gabriel Colwell (admitted *pro hac vice*)
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Phone: +1 213-689-5126
gabriel.colwell@squirepb.com

Joseph A. Meckes (admitted *pro hac vice*)
275 Battery Street, Suite 2600
San Francisco, CA 94111
Phone: +1 415-954-0201
joseph.meckes@squirepb.com

David P. Prueter (admitted *pro hac vice*)
275 Battery Street, Suite 2600
San Francisco, CA 94111
Phone: +1 415-954-0200
david.prueter@squirepb.com

*Attorneys for Defendants StocksToTrade.com,
Inc. and Zachary Westphal*

14

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 22, 2021, a true and correct copy of the foregoing was served by electronic mail on all counsel of record.

*/s Raúl B. Mañón*
Raúl B. Mañón

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

SCANZ TECHNOLOGIES, INC., fka
EQUITYFEED CORPORATION, A Canadian
(Quebec) Corporation,

        Plaintiff,

        v.

JEWMON ENTERPRISES, LLC, *et al.*,

        Defendants.

Case No. 20-cv-22957 (RNS/EGT)

## DEFENDANT STT'S VERIFICATION OF RESPONSES AND OBJECTIONS TO PLAINTIFF SCANZ'S AMENDED AND SUPERSEDED FIRST SET OF INTERROGATORIES TO STT

I, Zachary Westphal, am authorized to make this verification on behalf of myself and StocksToTrade.com, Inc. ("STT"). I reviewed Scanz Technologies, Inc.'s, fka EquityFeed Corporation, ("Scanz") Amended and Superseded First Set of Interrogatories to STT and STT's responses thereto. STT's responses were prepared with the assistance of counsel. My understanding is that STT's responses are based on records and information currently available and, to the extent that I do not have personal knowledge, I have relied on others to gather the responsive information. Subject to the foregoing, I verify (or declare, certify, or state) under penalty of perjury under the laws of the United States that the responses as to STT are true and correct to the best of my knowledge.

5-23-21
_____
DATE

_____
Zachary Westphal

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

SCANZ TECHNOLOGIES, INC., fka
EQUITYFEED CORPORATION, A Canadian
(Quebec) Corporation,

             Plaintiff,

                 v.                                    Case No. 20-cv-22957 (RNS/EGT)

JEWMON ENTERPRISES, LLC, *et al.*,

             Defendants.

**DEFENDANT ZACHARY WESTPHAL'S RESPONSES AND OBJECTIONS TO
PLAINTIFF SCANZ'S AMENDED AND SUPERSEDED FIRST SET OF
INTERROGATORIES TO ZACHARY WESTPHAL**

In accordance with Fed. R. Civ. P. 33, Defendant Zachary Westphal ("Mr. Westphal")

hereby responds to Plaintiff Scanz Technologies, Inc. fka EquityFeed Corporation ("Scanz")

Amended and Superseded First Set of Interrogatories ("Interrogatories" or "Requests") subject to

the objections set forth below.

**GENERAL STATEMENT**

The following responses are based on information presently known by Mr. Westphal and

his attorneys. Mr. Westphal reserves the right to amend and/or supplement these responses as

more information becomes available.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

Mr. Westphal incorporates the following general statements and objections into each

response:

1.       Mr. Westphal responds to each Request as he understands the Request in light of

the issues in this lawsuit. If Scanz has a different understanding and disputes Mr. Westphal's

1

objections or response to the Request, Mr. Westphal invites Scanz to meet and confer regarding the Request in an attempt to resolve any differences. Upon meeting and conferring with Scanz, Mr. Westphal reserves the right to amend or supplement its response.

2.      Mr. Westphal objects to each Request that seeks information protected by any privilege or immunity including, without limitation, the attorney-client privilege, the common interest doctrine, the work product doctrine, and privacy laws. Mr. Westphal will not provide any such information.

3.      Mr. Westphal objects to each Request to the extent that it calls for information that is publicly available or equally available to Scanz, and therefore are of no greater burden for Scanz to obtain than for Mr. Westphal to obtain. Mr. Westphal will not provide any such information.

<u>**SPECIFIC RESPONSES AND OBJECTIONS**</u>

Each general statement and objection to definitions and instructions above is incorporated into each of the individual responses below, as if written therein.


<u>**Interrogatory No. 1:**</u>

Please describe all aspects concerning any involvement You have ever had with JewMon Enterprises, and for each aspect please describe the details concerning each and every one of the aspects you identified in your response.

<u>**Response to Interrogatory No. 1:**</u>

Mr. Westphal objects to this request as unclear because the phrases "all aspects concerning any involvement" and "details concerning each and every one of the aspects" are unintelligible. Mr. Westphal further objects to this request as overly broad because it seeks

2

information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal further objects to this request because it is not reasonably limited in scope or time as it seeks information regarding "all" aspects of "any" involvement "ever had." Mr. Westphal states that JewMon Enterprises LLC ("Jewmon") was organized as a Florida limited liability company on or about June 28, 2012 and changed its name from Jewmon to Millionaire Publishing LLC ("Millionaire Publishing") on or about October 19, 2017. Mr. Westphal was an owner of Jewmon and is an owner of Millionaire Publishing.

**Interrogatory No. 2:**

Please describe all aspects concerning any involvement You have ever had with Millionaire Media, and for each aspect please describe the details concerning each and every one of the involvements you identified in your response.

**Response to Interrogatory No. 2:**

Mr. Westphal objects to this request as unclear because the phrases "all aspects concerning any involvement" and "details concerning each and every one of the involvements" are unintelligible. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal further objects to this request because it is not reasonably limited in scope or time as it seeks information regarding "all" aspects of "any" involvement "ever had." Mr. Westphal states that he understands that Millionaire Media LLC ("Millionaire Media") was organized as a Delaware limited liability company on or about May 11, 2007. As he testified during his deposition, Mr. Westphal provided marketing services to Millionaire Media as an independent contractor.

3

**Interrogatory No. 3:**

Please describe all aspects concerning any involvement You have ever had with Millionaire Publishing, and for each aspect please describe the details concerning each and every one of the involvements you identified in your response.

**Response to Interrogatory No. 3:**

Mr. Westphal objects to this request as unclear because the phrases "all aspects concerning any involvement" and "details concerning each and every one of the involvements" are unintelligible. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal further objects to this request because it is not reasonably limited in scope or time as it seeks information regarding "all" aspects of "any" involvement "ever had." Mr. Westphal incorporates his Response to Interrogatory No. 1.

**Interrogatory No. 4:**

Please describe all aspects concerning any involvement You have ever had with STT, and for each aspect please describe the details concerning each and every one of the involvements you identified in your response.

**Response to Interrogatory No. 4:**

Mr. Westphal objects to this request as unclear because the phrases "all aspects concerning any involvement" and "details concerning each and every one of the involvements" are unintelligible. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal further objects to this request because it is not reasonably limited in scope or time as it seeks

4

information regarding "all" aspects of "any" involvement "ever had." Mr. Westphal states that StocksToTrade.com, Inc. ("STT") was organized as a Delaware corporation on or about June 11, 2015. Mr. Westphal is an owner of STT.

**Interrogatory No. 5:**

Identify any and all transfers, payments, remittances, movements or deliveries of property (hereafter "transfers") involving You, on the one hand, and any of the Defendants, on the other hand, including, without limitation, such transfers by you to any of the Defendants or by any of the Defendants to you. For each such transfer, please also describe the dates, amounts and all surrounding circumstances and explanations about and involving each such transfer.

**Response to Interrogatory No. 5:**

Mr. Westphal objects to this request as overly broad to the extent it seeks information regarding transfers unrelated to Scanz's allegation of trade secret misappropriation that are not relevant to any parties claim or defense including monetary transactions conducted in the normal course of business between Mr. Westphal and companies of which he is an owner, part-owner, or employee. Mr. Westphal further objects to this request because it is not reasonably limited in scope or time as it seeks information regarding "any and all" transfers.

**Interrogatory No. 6:**

Describe in detail Your experience and educational background regarding the business of, and industries related to, the following: online trading platforms, software applications, architecture and Scanning Platforms, including but not limited to business management, coding, compliance, information technology, marketing, programming, sales, software development,

software engineering, user interface development or evaluation, software languages, and web design.

**Response to Interrogatory No. 6:**

Mr. Westphal objects to this request as unclear because the phrase "experience and educational background regarding the business of, and industries related to" is unintelligible. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal states that he has a Bachelor's Degree in Business from Utah Valley University and a Master's Degree in Business Administration from the University of Southern California.

**Interrogatory No. 7:**

Describe in detail Your involvement with any and all architectures, software applications, user interfaces and Scanning Platforms associated with, regarding or concerning STT and/or the domain situated at www.stockstotrade.com, including but not limited to development, research, design, maintenance, compliance, testing, marketing, sales, management, leadership and business planning.

**Response to Interrogatory No. 7:**

Mr. Westphal objects to this request as unclear because the phrase "involvement with any and all architectures, software applications, user interfaces and Scanning Platforms associated with, regarding or concerning STT and/or the domain situated at www.stockstotrade.com" is unintelligible. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal states that on or about February 15, 2016, STT offered a stock research, scanning, educational, and

6

trading platform (the STT platform) on www.stockstotrade.com. Since February 15, 2016, STT has operated and continues to operate the STT platform on www.stockstotrade.com. JewMon entered into an agreement with Scopic Software on or about May 7, 2014 under the terms of which Scopic provided software development services to JewMon. STT entered into an agreement with Scopic Software on or about May 7, 2016 under the terms of which Scopic provided software development services to STT. Mr. Westphal further states that, under the May 7, 2014 and May 7, 2016 agreements with Scopic, JewMon and/or STT independently developed the STT platform. As he testified during his deposition, Mr. Westphal was not involved in the development of the STT platform.

**Interrogatory No. 8:**

If you have ever seen and formed an impression or understanding concerning the truthfulness or accuracy of the 2017 Colwell Letter, please identify and specifically describe for each such occasion where you've seen the 2017 Colwell Letter any and all beliefs You have ever had regarding the 2017 Colwell Letter, including, but not limited to, Your beliefs regarding (a) the accuracy or veracity of the 2017 Colwell letter and/or (b) whether or not the 2017 Colwell letter was a comprehensive and all-inclusive statement of Your defenses against the allegations of wrongdoing that said letter was purporting to address. If you have never seen and formed any impression or understanding concerning the truthfulness or accuracy of the 2017 Colwell Letter, please say so.

**Response to Interrogatory No. 8:**

Mr. Westphal objects to this request to the extent it seeks information regarding confidential communications between Mr. Westphal and his attorneys protected by the attorney-

client privilege and the work product doctrine. Mr. Westphal further objects to this request as overly broad because it seeks information not relevant to any parties claim or defense as the 2017 Colwell letter is unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal states that he saw the 2017 Colwell Letter on or about April 7, 2017 and that he believed the factual statements contained in the Letter were true and accurate.

**Interrogatory No. 9:**

With respect to the provision of the License Agreement embodied in the first sentence of Section 6 of the License Agreement (which sentence reads, "Each party shall keep confidential and not disclose to any third party or use (except as contemplated by this Agreement), any non-public information obtained from the other party that is marked or otherwise designated confidential ("Confidential Information") provided, however, that neither party shall be prohibited from disclosing or using Confidential Information that: (i) is publicly available or becomes publicly available through no act or omission of the receiving party, (ii) is or has been disclosed to such party by a third party who is not under an obligation of confidentiality with respect thereto, (iii) is or has been independently developed by such party, without use or reference to the other party's confidential information, by persons without access to the same, or (iv) must be used or disclosed under court order, request of a governmental agency or applicable law, provided such use or disclosure is to the minimum extent required by such court order, governmental request or applicable law.") please describe your belief, impression, interpretation, or understanding by You regarding the meaning of this particular provision of the License Agreement at all times prior to the time Timothy Sykes signed the License Agreement and at the time Timothy Sykes signed the License Agreement.

8

**Response to Interrogatory No. 9:**

Mr. Westphal objects to this request as unintelligible because it seeks information regarding his "belief, impression, interpretation, or understanding" of the meaning of a provision of an agreement to which he was not a party. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal further objects to this request to the extent it seeks information regarding confidential communications between Mr. Westphal and his attorneys protected by the attorney-client privilege and the work product doctrine. Mr. Westphal states that he understands the quoted provision to be part of an agreement between EquityFeed and JewMon the terms of which speak for themselves.

**Interrogatory No. 10:**

With respect to the provision of the License Agreement embodied in the fourth sentence of Section 8 of the License Agreement (which sentence reads, "Upon termination of this agreement for any reason, all use of the Software by JewMon shall cease, the provision of Services by EquityFeed shall cease, and each party shall return to the other party or destroy any Confidential Information obtained from the other party.") please describe your belief, impression, interpretation, or understanding by You regarding the meaning of this particular provision of the License Agreement at all times prior to the time Timothy Sykes signed the License Agreement and at the time Timothy Sykes signed the License Agreement.

**Response to Interrogatory No. 10:**

Mr. Westphal objects to this request as unintelligible because it seeks information regarding his "belief, impression, interpretation, or understanding" of the meaning of a provision

of an agreement to which he was not a party. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal further objects to this request to the extent it seeks information regarding confidential communications between Mr. Westphal and his attorneys protected by the attorney-client privilege and the work product doctrine. Mr. Westphal states that he understands the quoted provision to be part of an agreement between EquityFeed and JewMon the terms of which speak for themselves.

**Interrogatory No. 11:**

With respect to the provision of the License Agreement embodied in the fourth sentence of Section 13 of the License Agreement (which sentence reads, ". . . JewMon agrees and undertakes not to, except as permitted in this Agreement: (i) use the Software, or any part thereof, in an outsourcing agreement in support of any third-party; (ii) sell, lease, sublicense or distribute the Software, or part thereof, or otherwise transfer the Software other than as expressly permitted herein; (iii) reverse engineer, decompile, disassemble, or otherwise reduce to human-perceivable form the Software's source code, or part thereof; (iv) modify, revise, enhance, or alter the Software other than for internal use purposes in accordance with the terms set forth herein; or (v) claim any rights to or ownership of the Software.") please describe your belief, impression interpretation, or understanding by You regarding the meaning of this particular provision of the License Agreement at all times prior to the time Timothy Sykes signed the License Agreement and at the time Timothy Sykes signed the License Agreement.

**Response to Interrogatory No. 11:**

Mr. Westphal objects to this request as unintelligible because it seeks information

regarding his "belief, impression, interpretation, or understanding" of the meaning of a provision of an agreement to which he was not a party. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal further objects to this request to the extent it seeks information regarding confidential communications between Mr. Westphal and his attorneys protected by the attorney-client privilege and the work product doctrine. Mr. Westphal states that he understands the quoted provision to be part of an agreement between EquityFeed and JewMon the terms of which speak for themselves.

**Interrogatory No. 12:**

With respect to the provision of the License Agreement embodied in the second sentence of Section 15 of the License Agreement (which sentence reads, "After termination of this Agreement, while it is acknowledged that JewMon may create and procure a competitive market analysis platform to offer to its customers, JewMon shall not utilize any portion of the Software and shall not copy the 'look and feel' of the Software/Website.") please describe your belief, impression, interpretation, or understanding by You regarding the meaning of this particular provision of the License Agreement at all times prior to the time Timothy Sykes signed the License Agreement and at the time Timothy Sykes signed the License Agreement.

**Response to Interrogatory No. 12:**

Mr. Westphal objects to this request as unintelligible because it seeks information regarding his "belief, impression, interpretation, or understanding" of the meaning of a provision of an agreement to which he was not a party. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret

misappropriation. Mr. Westphal further objects to this request to the extent it seeks information regarding confidential communications between Mr. Westphal and his attorneys protected by the attorney-client privilege and the work product doctrine. Mr. Westphal states that he understands the quoted provision to be part of an agreement between EquityFeed and JewMon the terms of which speak for themselves.

**Interrogatory No. 13:**

With respect to Interrogatory No. 12 and the provision of the License Agreement embodied in the second sentence of Section 15 of the License Agreement (which sentence reads, "After termination of this Agreement, while it is acknowledged that JewMon may create and procure a competitive market analysis platform to offer to its customers, JewMon shall not utilize any portion of the Software and shall not copy the 'look and feel' of the Software/Website.") please describe any and all discussions or communications of any kind with any Person (including, but not limited to, with any of the Defendants, with Scopic Software and with Jamil Ben Alluch) concerning Your belief, impression, interpretation, or understanding regarding the meaning of this particular provision of the License Agreement.

**Response to Interrogatory No. 13:**

Mr. Westphal objects to this request as unintelligible because it seeks information regarding his "belief, impression, interpretation, or understanding" of the meaning of a provision of an agreement to which he was not a party. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal further objects to this request to the extent it seeks information regarding confidential communications between Mr. Westphal and his attorneys protected by the

12

attorney-client privilege and the work product doctrine. Mr. Westphal states that he understands the quoted provision to be part of an agreement between EquityFeed and JewMon the terms of which speak for themselves.

**Interrogatory No. 14:**

For all periods from January 1, 2008 through and including the date upon which the Complaint in this Matter was filed, describe the circumstances surrounding or otherwise relating to and/or concerning all services rendered to any of the Defendants by Jamil Ben Alluch, including (a) the dates upon which said services were performed, (b) the payments made to Jamil Ben Alluch involving or concerning such services, including (without limitation) the dates and amounts of all such payments and (c) the reasons for all such payments to Jamil Ben Alluch including, but not limited to, a detailed description concerning the services provided by Jamil Ben Alluch not only with respect to all such payments but also with respect to any other reason of any kind whatever concerning said services.

**Response to Interrogatory No. 14:**

Mr. Westphal objects to this request as unclear because the phrases "circumstances surrounding or otherwise relating to and/or concerning all services rendered" and "not only with respect to all such payments but also with respect to any other reason of any kind whatever concerning said services" are unintelligible. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal states that on or about September 2015, Jamil Ben Alluch provided consulting services to STT for which he was not compensated. Mr. Westphal further states that on or about February 10, 2016, STT hired Jamil Ben Alluch as Chief Technology

13

Officer of STT, a position which Jamil Ben Alluch still holds. Mr. Westphal further states that Jamil Ben Alluch on behalf of STT and in collaboration with Scopic Software independently developed the STT platform.

**Interrogatory No. 15:**

For all periods from January 1, 2008 through and including the date upon which the Complaint in this Matter was filed, describe the circumstances surrounding or otherwise relating to and/or concerning all services rendered to any of the Defendants by Scopic Software, including (a) the dates upon which said services were performed, (b) the payments made to Scopic Software (by any of the Defendants) involving or concerning such services, including (without limitation) the dates and amounts of all such payments and (c) the reasons for all such payments to Scopic Software including, but not limited to, a detailed description concerning the services provided by Scopic Software not only with respect to all such payments but also with respect to any other reason of any kind whatever concerning said services.

**Response to Interrogatory No. 15:**

Mr. Westphal objects to this request as unclear because the phrases "circumstances surrounding or otherwise relating to and/or concerning all services rendered" and "not only with respect to all such payments but also with respect to any other reason of any kind whatever concerning said services" are unintelligible. Mr. Westphal further objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal states that on or about February 15, 2016, STT offered a stock research, scanning, educational, and trading platform (the STT platform) on www.stockstotrade.com. Since February 15, 2016, STT has operated and continues to operate

14

the STT platform on www.stockstotrade.com. JewMon entered into an agreement with Scopic Software on or about May 7, 2014 under the terms of which Scopic provided software development services to JewMon. STT entered into an agreement with Scopic Software on or about May 7, 2016 under the terms of which Scopic provided software development services to STT. Mr. Westphal further states that, under the May 7, 2014 and May 7, 2016 agreements with Scopic, JewMon and/or STT independently developed the STT platform. Mr. Westphal further states that he or STT will identify records pursuant to Fed. R. Civ. P. 33(d) responsive to this request.

**Interrogatory No. 16:**

From January 1, 2008 to the present, describe all of Your interactions and communications with Stephan Touizer, including the date of such interactions and a detailed description regarding your location during all such communications (including, without limitation, all personal and/or in-person meetings) as well as the substance and content of all such communications.

**Response to Interrogatory No. 16:**

Mr. Westphal objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal states that he communicated by email and phone with Stephan Touizer and that such communications resulted in JewMon and EquityFeed signing a white label licensing agreement on or about April 2013.

**Interrogatory No. 17:**

From January 1, 2008 to the present, describe all of Your interactions and

communications with any Person regarding or concerning Scopic Software, including the date of such interactions and a detailed description regarding the content of all such communications.

**Response to Interrogatory No. 17:**

Mr. Westphal objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal states that on or about February 15, 2016, STT offered a stock research, scanning, educational, and trading platform (the STT platform) on www.stockstotrade.com. Since February 15, 2016, STT has operated and continues to operate the STT platform on www.stockstotrade.com. JewMon entered into an agreement with Scopic Software on or about May 7, 2014 under the terms of which Scopic provided software development services to JewMon. STT entered into an agreement with Scopic Software on or about May 7, 2016 under the terms of which Scopic provided software development services to STT. Mr. Westphal further states that, under the May 7, 2014 and May 7, 2016 agreements with Scopic, JewMon and/or STT independently developed the STT platform. As he testified during his deposition, Mr. Westphal was not involved in the development of the STT platform.


**Interrogatory No. 18:**

From January 1, 2008 to the present, describe all communications between You and any other Person regarding or concerning the development of a Scanning Platform, architecture, software application or user interface that was intended at any time to be owned or controlled by any of the Defendants (involving a Scanning Platform other than the white label product identified in the License Agreement), including, but not limited to, the product and technologies located at www.stockstotrade.com.

16

**Response to Interrogatory No. 18:**

Mr. Westphal objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal states that on or about February 15, 2016, STT offered a stock research, scanning, educational, and trading platform (the STT platform) on www.stockstotrade.com. Since February 15, 2016, STT has operated and continues to operate the STT platform on www.stockstotrade.com. JewMon entered into an agreement with Scopic Software on or about May 7, 2014 under the terms of which Scopic provided software development services to JewMon. STT entered into an agreement with Scopic Software on or about May 7, 2016 under the terms of which Scopic provided software development services to STT. Mr. Westphal further states that, under the May 7, 2014 and May 7, 2016 agreements with Scopic, JewMon and/or STT independently developed the STT platform. As he testified during his deposition, Mr. Westphal was not involved in the development of the STT platform.

**Interrogatory No. 19:**

For each of the calendar years 2015, 2016, 2017, 2018, 2019, 2020 -- and for the period of time starting January 1, 2021 and concluding March 31, 2021 -- what were the amounts of money You received from any sources concerning, regarding or related in any manner to the Scanning Platform available to the public through the domain www.stockstotrade.com or through any other source related to the technology delivered through www.stockstotrade.com.

**Response to Interrogatory No. 19:**

Mr. Westphal objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal states that he or

STT will identify financial statements pursuant to Fed. R. Civ. P. 33(d) responsive to this request, to the extent such records exist.


**Interrogatory No. 20:**

From a chronological perspective, please identify the earliest historical date on the Gregorian Calendar when any of the Defendants first communicated with an attorney, law firm or lawyer concerning or relating in any manner to a business, architecture, software application or other technology involving a Scanning Platform other than the white label product identified in the License Agreement.

**Response to Interrogatory No. 20:**

Mr. Westphal objects to this request as overly broad because it seeks information unrelated to Scanz's allegation of trade secret misappropriation. Mr. Westphal further objects to this request because it seeks information regarding confidential communications between Mr. Westphal and his attorneys protected by the attorney-client privilege and the work product doctrine.

Dated: May 22, 2021

SQUIRE PATTON BOGGS (US) LLP

/s/ *Raúl B. Mañón*

Raúl B. Mañón
Florida Bar No. 18847
200 South Biscayne Boulevard, Suite 4700
Miami, FL 33131
Phone: +1 305-577-7000
raul.manon@squirepb.com

Gabriel Colwell (admitted *pro hac vice*)
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Phone: +1 213-689-5126
gabriel.colwell@squirepb.com

Joseph A. Meckes (admitted *pro hac vice*)
275 Battery Street, Suite 2600
San Francisco, CA 94111
Phone: +1 415-954-0201
joseph.meckes@squirepb.com

David P. Prueter (admitted *pro hac vice*)
275 Battery Street, Suite 2600
San Francisco, CA 94111
Phone: +1 415-954-0200
david.prueter@squirepb.com

*Attorneys for Defendants StocksToTrade.com,*
*Inc. and Zachary Westphal*

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 22, 2021, a true and correct copy of the foregoing was

served by electronic mail on all counsel of record.


*/s Raúl B. Mañón*
Raúl B. Mañón

20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

---

SCANZ TECHNOLOGIES, INC., fka
EQUITYFEED CORPORATION, A Canadian
(Quebec) Corporation,

        Plaintiff,

        v.

JEWMON ENTERPRISES, LLC, *et al.*,

        Defendants.

---

Case No. 20-cv-22957 (RNS/EGT)

## DEFENDANT ZACHARY WESTPHAL'S VERIFICATION OF RESPONSES AND OBJECTIONS TO PLAINTIFF SCANZ'S AMENDED AND SUPERSEDED FIRST SET OF INTERROGATORIES

    I, Zachary Westphal, reviewed Plaintiff Scanz Technologies, Inc.'s, fka EquityFeed Corporation, ("Scanz") Amended and Superseded First Set of Interrogatories and my responses thereto. The responses were prepared with the assistance of counsel. My understanding is that the responses are based on records and information currently available and, to the extent that I do not have personal knowledge, I have relied on others to gather the responsive information. Subject to the foregoing, I verify (or declare, certify, or state) under penalty of perjury under the laws of the United States that the responses as to myself are true and correct to the best of my knowledge.

5-28-21
_____
DATE

_____
Zachary Westphal

1