UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

---------------------------------------------------------------------- x
                                                                                    :

SCANZ TECHNOLOGIES, INC. fka EQUITYFEED :
CORPORATION, a Canadian (Quebec) Corporation, :
                                                                                     :
                                   Plaintiff,                                            : **Case No. 20-cv-22957**
                                                                                     : **(RNS/EGT)**
    v.                                                                                        :
                                                                                         :
JEWMON ENTERPRISES, LLC, *et al.*,            :
                                                                                         :
                                   Defendants.                                          :
                                                                                         :
---------------------------------------------------------------------- x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION FOR SANCTIONS**

## **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................ 1

I.    Plaintiff and SLG Cannot Justify Their Extreme Discovery Misconduct .................. 1

II.   Plaintiff and SLG Fail to Establish Lack of Prejudice................................................. 3

III.  Plaintiff's and SLG's Discovery Misconduct is Sanctionable .................................... 5

   A. Sanctions Must Be Imposed on Plaintiff and SLG Pursuant to Rule 26(g)
      and 28 U.S.C. § 1927 ................................................................................................ 5

   B. Sanctions Should Be Imposed on Plaintiff Pursuant to Fed. R. Civ. P. 37(c) ........... 9

CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bernal v. All Am. Inv. Realty, Inc.*,
    479 F. Supp. 2d 1291 (S.D. Fla. 2006) ................................................................. 7, 8, 9

*Classic Soft Trim, Inc. v. Albert*,
    No. 6:18-cv-1237, 2020 WL 6734369 (M.D. Fla. June 15, 2020) ............................... 5

*EEOC v. M1 5100 Corp.*,
    No. 19-cv-81320, 2020 U.S. Dist. LEXIS 117243 (S.D. Fla. July 2, 2020) .................. 8

*First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*,
    No. 3:12-cv-281-J-32MCR, 2015 U.S. Dist. LEXIS 117123 (M.D. Fla. Mar.
    2, 2015) ............................................................................................................................ 9

*Goines v. Lee Mem'l Health Sys.*,
    No. 2:17-cv-656-FtM-29NPM, 2019 WL 4016147 (M.D. Fla. Aug. 26, 2019) ........ 6, 7

*Green Leaf Nursery v. E.I. duPont de Nemours and Co.*,
    341 F.3d 1292 (11th Cir. 2003) .................................................................................... 6

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    846 F. Supp. 2d 1335 (N.D. Ga. 2012) ..................................................................... 3, 8

*Indep. Mktg. Grp. v. Keen*,
    No. 3:11-cv-447-J-25MCR, 2012 WL 207032 (M.D. Fla. Jan. 24, 2012) ................... 9

*Mitchell v. Ford Motor Co.*,
    318 F. App'x 821 (11th Cir. 2009) ............................................................................... 3

*Mitchell v. Sch. Bd.*,
    No. 19-CV-81534, 2021 U.S. Dist. LEXIS 58313 (S.D. Fla. Mar. 25, 2021) ............... 9

*Moore v. Publicis Groupe*,
    287 F.R.D. 182 (S.D.N.Y. 2012) .................................................................................. 7

*New Wave Innovations, Inc. v. McClimond*,
    No. 13-22541-CIV-COOKE/TORRES, 2014 WL 11906628 (S.D. Fla. July 8,
    2014) ............................................................................................................................... 9

*Scanlon v. N3, LLC*,
    No. 1:08-CV-1069, 2009 WL 10699687 (N.D. Ga. May 26, 2009) ............................. 7

*Swofford v. Eslinger*,
    No. 6:08-cv-66-Orl-35, 2009 WL 1025223 (M.D. Fla. Apr. 14, 2009) .................. 9, 10

*Tampa Port Auth. v. M/V Duchess*,
    No. 94-1727-CIV-T-23C, 1997 WL 1175718 (M.D. Fla. June 6, 1997)........................7

*Taverna Imps., Inc. v. A&M Wine & Spirits, Inc.*,
    No. 15-24198-CIV, 2018 U.S. Dist. LEXIS 125906 (S.D. Fla. July 27, 2018) ...........8

*Treister v. PNC Bank*,
    No. 05-23207-CIV, 2007 U.S. Dist. LEXIS 10616 (S.D. Fla. Feb. 15, 2007) .............6

*U & I Corp. v. Advanced Med. Design, Inc.*,
    251 F.R.D. 667 (M.D. Fla. 2008).................................................................................10

*Valdes v. Greater Naples Fire Rescue Dist.*,
    No. 2:17-cv-417-FtM-29CM, 2018 WL 4281472 (M.D. Fla. Sep. 7, 2018).................9

*Venator v. Interstate Res., Inc.*,
    No. CV415-086, 2016 U.S. Dist. LEXIS 50964 (S.D. Ga. Apr. 15, 2016).......3, 4, 5, 8

*Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*,
    280 F.R.D. 681 (S.D. Fla. 2012)...................................................................................9

*Zanakis v. Scanreco Inc.*,
    No. 1:18-cv-21813, 2019 WL 4748392 (S.D. Fla. May 21, 2019).................................5

**RULES**

Fed. R. Civ. P. 26(g) .................................................................................................. passim

Fed. R. Civ. P. 37(c) ...........................................................................................1, 3, 5, 9

**STATUTES**

28 U.S.C. § 1927.................................................................................................1, 8, 9

Plaintiff's Opposition (ECF No. 153) to Defendants' Motion (ECF No. 145) relies on conclusory, irrelevant (and often false) assertions, rebuttals of straw man arguments, and attempts to rewrite history, but the record—and Plaintiff's silence as to large portions of it—speaks for itself. Defendants have incurred substantial time and expense unraveling Plaintiff's and SLG's falsehoods—which continue to this day—in order to obtain critical documents that were supposed to be produced on March 15. Indeed, but for Defendants efforts to force Plaintiff to comply with its most basic discovery obligations, Plaintiff would have *never* produced a single internal electronic communication related to this case. Plaintiff's and SLG's misconduct must be sanctioned pursuant to Fed. R. Civ. P. 26(g) and 28 U.S.C. § 1927, and should further be sanctioned pursuant to Fed. R. Civ. P. 37(c).[1]

## ARGUMENT

**I.    Plaintiff and SLG Cannot Justify Their Extreme Discovery Misconduct**

Rather than address the relevant facts laid out in the Motion, Plaintiff simply ignores most of them and argues that "no emails were willfully withheld, no misstatements were made by Plaintiff or its counsel, [and] no prejudice to Defendants resulted." (Opp. at 3.) But willfulness is not the standard (as discussed below), misstatements *were* made (as evidenced by the fact that hundreds of responsive communications existed despite repeated assertions to the contrary), and Defendants have clearly been prejudiced, including by being forced to incur substantial time and expense to obtain basic discovery.

With respect to Slack messages—Plaintiff's "primary method" of business communication—Plaintiff tries to blame the Defendants by suggesting that Defendants asked only for "emails." (Opp. at 6; ECF No. 153-2 at ¶¶ 16-17.) Plaintiff's contention is belied by the express language of Defendants' Requests, s*ee* Mot. at 3 ("Documents" defined to include "ESI" and "Communications"),[2] and Plaintiff's repeated confirmations that all "electronic communications" and "computer-based information" had been produced. *See, e.g.*, Mot. at 4-5, 7-8 (collecting examples). Plaintiff's boilerplate reservation of rights to produce documents on a "rolling basis," (Opp. at 7), is no excuse and simply cannot be reconciled with its *specific* and

---

[1] Capitalized terms not defined herein have the meaning assigned to them in the Motion.

[2] *See also* ECF No. 153-6 at 59:17-18 ("THE COURT: I'm sure [Defendants'] request says 'all documents or communications.' I mean, nobody says emails anymore. Right?").

1

*unequivocal* statements that no additional responsive documents existed—a patently false assertion. Plaintiff's claim that it "promptly provided links to all relevant Tweets" is also false. (Opp. at 6.) Plaintiff provided links in *June* after Defendants notified the Court they intended to move for sanctions. Plaintiff's contention also misses the larger point, recognized by the Court in April, that Plaintiff had not fulfilled its obligation to search for all relevant public statements. *See* ECF No. 146-7 at 53:10-16 ("THE COURT: … [Defendants'] request is for any public statements. That doesn't just include Twitter… They may not know of another source that [Plaintiff] made statements to on a public way. So there's nothing wrong with the question.").

      Plaintiff fails to explain why, despite filing this lawsuit, Plaintiff never (i) turned off the auto-delete function on its CEO's business e-mail account, (ii) implemented a document retention policy, or (iii) informed two of its three employees to preserve documents. (Mot. at 9-10.) Plaintiff fails to explain why SLG delegated the search, collection, and review of documents to Plaintiff's self-interested CEO, Stephan Touizer, a non-lawyer who has never been involved in U.S. litigation, has never read the Federal Rules of Civil Procedure and is, admittedly, "no e-mail expert." (*Id*. at 10-11.) Plaintiff offers no explanation or justification for SLG's certification of Plaintiff's R&Os (which Mr. Touizer verified under oath), which repeatedly represented that all responsive documents had been produced despite Mr. Touizer's knowledge that he had not (i) searched Slack; (ii) collected documents from Plaintiff's Chief Technology Officer, despite being informed that he had responsive documents; (iii) asked Plaintiff's only other employee to search for responsive documents; (iv) searched multiple company e-mail accounts that contained responsive information; (v) collected hundreds of responsive e-mails from his own e-mail accounts; or (vi) conducted any search for public statements—including those on social media—responsive to RFP No. 28. (*Id*. at 4, 7, 11-13.)

      Indeed, rather than investigate or conduct independent verification when put on notice of obvious deficiencies, SLG falsely represented for months—repeatedly and unequivocally—that no other responsive documents existed. (Mot. at 4-5 (collecting statements made by SLG in March); *id.* at 6-8 (collecting statements made to Court and in verified Interrogatory Responses in April and May).) Plaintiff provides no explanation for this dereliction of duty, nor is there one. Even when communications (including fewer than 100 Slack messages) *were* finally produced at the end of May, Defendants learned the production remained incomplete (among other concerning facts) only after taking a special 30(b)(6) deposition. (*Id*. at 12-13.)

2

Incredibly, SLG's misstatements continued during the pendency of this Motion. On *June 22*—the same day that Mr. Botwin submitted his Declaration to the Court that Plaintiff had produced "everything prior to the multiple sessions of Mr. Touizer's deposition," that "Mr. Reichard and [Mr. Botwin] carefully interviewed Plaintiff's CEO Mr. Touizer in order to assure that everything had been produced," and "[w]e are very confident that every Slack message responsive to the Defendants' request has been produced"—Defendants obtained, in response to a subpoena to the other party to those communications, ***at least 15 highly relevant Slack messages with Mr. Touizer that Plaintiff hadn't produced***. *Compare* ECF No. 153-2 at ¶ 17 *with* Ex. 18 (Slack messages produced by Josh Andrews on June 22, filed herewith).

## II. Plaintiff and SLG Fail to Establish Lack of Prejudice

Plaintiff's (unsupported) argument that Defendants have failed to prove prejudice misapprehends the law and ignores the facts. (Opp. at 8.) Prejudice is not a prerequisite to sanctions under Rule 26(g) and, under Rule 37(c), "[t]he burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party," *i.e. Plaintiff*. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citation omitted); *Venator v. Interstate Res., Inc.*, No. CV415-086, 2016 U.S. Dist. LEXIS 50964, at *34 (S.D. Ga. Apr. 15, 2016) ("[P]rejudice plays no role in assessing whether a Rule 26(g) violation exists," only the "appropriate sanction") (citation omitted).

Plaintiff argues that there is no prejudice because (1) no "smoking gun" evidence was withheld; and (2) Plaintiff's belated productions of hundreds of documents shortly before depositions were not overly time-consuming to review. (Opp. at 8-10.) While Defendants disagree with Plaintiff's characterization of the belatedly produced documents, no "smoking gun" evidence is required for the imposition of sanctions, and Plaintiff's purported survey of "trade secrets law" is wholly irrelevant. *See In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1349, 1353, 1365 (N.D. Ga. 2012) (imposing monetary sanctions pursuant to Rules 26(g) and 37(c)(1) despite the fact that belated production did "not appear to contain 'smoking gun' evidence" because that "does not excuse [] discovery failures and misrepresentations"). Likewise, Defendants disagree that there is no prejudice from having to review hundreds of documents—which should have been produced months earlier—on the eve of depositions, but, more importantly, Plaintiff ignores that, but for Defendants' continued

3

inquiries (including a special 30(b)(6) deposition) in the face of Plaintiff's denials, these documents *never* would have been produced. Nor does Plaintiff address the fact that it produced hundreds of e-mails and Slack messages only at the end of May, shortly before the June 2 special 30(b)(6) deposition, itself. *See Venator*, 2016 U.S. Dist. LEXIS 50964, at *35 (fact that documents were produced two weeks before a deposition did "not eliminate [] completely" "the prejudicial impact of untimely production."). And Plaintiff does not acknowledge that it failed to produce at least 15 Slack messages to which it was party, precluding Defendants from questioning Mr. Touizer about those documents during his deposition. *See supra* Section I.

Plaintiff notably also does *not* address the prejudice that is specifically laid out in the Motion, including "the significant expense incurred in connection with obtaining discovery to which Defendants were plainly entitled on March 15" and the diversion of "time and resources away from the substance of this litigation." (Mot at 2.) Nor does Plaintiff address most of the categories of Defendants' requested fees. (*Id.* at 2-3 (identifying reimbursable fees and expenses).) Plaintiff only expressly contests paying expenses for the April 15 Hearing and Defendants' purported "unilateral" choice to retain a forensics expert. (Opp. at 16-19.) In fact, SLG invited Defendants to do just that in light of Plaintiff's and SLG's apparent inability to locate responsive documents. *See* ECF No. 146-7 at 39:12-15 ("MR. LAGE: Now, if [Defendants' counsel] can locate something within the servers, within the computers, [it's] free to do so. It's beyond what we are capable of finding and what my client is capable of finding at this point."); *id.* at 34:22-25 (discussing possibility of forensics expert). Plaintiff's continuing refusal to comply with its discovery obligations forced Defendants to take matters into their own hands and hire an expert after the April 15 Hearing, which was disclosed to both Plaintiff and the Court. *See* ECF No. 153-6 at 46:3-18 (disclosing that Defendants hired a forensics expert).[3]

---

[3] Contrary to Plaintiff's mischaracterization, (Opp. at 17), the Motion states that Defendants learned about the 2016 date of the purported e-mail corruption event and availability of Mr. Touizer's e-mails only after, *inter alia*, serving additional interrogatories, hiring an expert, and subpoenaing Rackspace. (Mot. at 4-5.) Plaintiff's claim that it "candidly informed" Defendants in May 2021 that e-mails were lost in the first quarter of 2016, (Opp. at 17-18), omits that such information was provided only in response to the referenced supplemental interrogatories that Defendants were forced to serve, and contradicted earlier representations by SLG that e-mails were "missing" before *2017*. (Mot. at 4.) Likewise, Plaintiff disclosed the existence of e-mails on the Rackspace server only *after* Defendants consulted a forensics expert and subpoenaed Rackspace. (Mot. at 8-9; ECF No. 153-6 at 46:3-18.)

As evidenced by Plaintiff's and SLG's steadfast false assertions, but for Defendants' substantial efforts and continued diligence, Plaintiff *never* would have produced responsive communications. Defendants have suffered prejudice and the law is clear that they are entitled to appropriate sanctions, including associated fees and expenses. *See* Mot. at 15-17 (collecting cases under Rule 26(g)); *id.* at 19-20 (same for Rule 37(c)).[4]

### III.   Plaintiff's and SLG's Discovery Misconduct is Sanctionable

#### A.   Sanctions Must Be Imposed on Plaintiff and SLG Pursuant to Rule 26(g) and 28 U.S.C. § 1927

Sanctions under Rule 26(g) are required because SLG's failure to comply with Rule 26 lacks any justification, let alone a substantial one. (Mot. at 14-15 (discussing standard).) In arguing that Rule 26(g) sanctions should not be imposed, Plaintiff asserts that "[i]t would have been substantially *un*reasonable to conclude that the Rackspace emails were not lost even though Rackspace confirmed that the emails were lost." (Opp. at 11.) What is unreasonable is that SLG abandoned its obligations by entirely outsourcing document collection and review—and investigation of the Rackspace server issue—to Mr. Touizer. *See* Mot at 10-11; *Venator*, 2016 U.S. Dist. LEXIS 50964, at *33 ("Attorneys must do more than turn over requests to a client's employees and expect that person, particularly if he or she is a non-lawyer, to conduct an investigation that satisfies Rule 26(g). . . . Regardless, attorneys have a post-investigation obligation to make sure all responsive information is provided.") (citations omitted).[5]

---

[4] The cases cited by Plaintiff for the proposition that Defendants may not recover forensic expert fees are distinguishable. *See Zanakis v. Scanreco Inc.*, No. 1:18-cv-21813, 2019 WL 4748392, at *2 (S.D. Fla. May 21, 2019) (denying request to hire experts at plaintiff's expense because doing so would delay trial scheduled to begin in a week); *Classic Soft Trim, Inc. v. Albert*, No. 6:18-cv-1237, 2020 WL 6734369, at *1, 7-8 (M.D. Fla. June 15, 2020) (*non-party* unilaterally elected to conduct forensic examination of its *own* documents and sent requesting party the bill).

[5] After SLG instructed Mr. Touizer—multiple times—not to answer questions about whether counsel assisted in his search for responsive documents, (ECF No. 146-3 at 59, 61), Mr. Botwin has now submitted a Declaration purporting to describe his interactions with Mr. Touizer regarding the same issue, making the conclusory assertion that he does so "without waiving attorney client and work product privileges." *See, e.g.*, ECF No. 153-2 at ¶¶ 14, 18. That is not how privilege works and is improper. But, in any event, Mr. Botwin's Declaration only confirms that SLG took no steps to independently investigate the Rackspace server issue or ensure that Plaintiff's Slack account or other e-mail accounts (which were unaffected by the claimed corruption event) were searched prior to certifying that Plaintiff's production was complete.

5

Moreover, in selectively focusing on e-mails on the Rackspace server, Plaintiff simply ignores most of the misconduct at issue. Plaintiff's counsel certified that Plaintiff had produced "all responsive documents currently in Defendants' possession, custody, and/or control" despite Plaintiff's failure to search numerous obvious sources for responsive information. (Mot. at 11-14.) Plaintiff and SLG provide no explanation for this, nor is there one. Plaintiff has **three** employees; it is plainly unreasonable that SLG failed to identify Slack as a source of responsive communications or ensure that other sources of responsive electronic communications— including employee e-mail accounts—were adequately searched before certifying (and maintaining for months) that all responsive documents had been produced. *See Treister v. PNC Bank*, No. 05-23207-CIV, 2007 U.S. Dist. LEXIS 10616, at *7 (S.D. Fla. Feb. 15, 2007) (Torres, J.) (Rule 26(g) "squarely requires an attorney's signature on every discovery response to ensure that the lawyer has made reasonable inquiry to determine that her client's responses are fully complete") (citing *Green Leaf Nursery v. E.I. duPont de Nemours and Co.*, 341 F.3d 1292, 1305 (11th Cir. 2003) for the proposition that "signature of counsel certifies that counsel has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand").

SLG also certified Plaintiff's verified Interrogatory Responses despite having failed to investigate or remedy any of the foregoing failures, despite being put on repeated notice by Defendants of the significant production deficiencies, and despite the Court's observation that the purported lack of responsive emails was "a little hard to believe." (Mot. at 6, 16.) There is no justification for this; Plaintiff and SLG were obviously aware of the existence of the Slack account and additional e-mail accounts that had not been searched because they were disclosed in the ***same document*** as the false representations that Plaintiff had "***look[ed] through all relevant devices, severs, and cloud locations***" and that "***the computer-based information already turned over in discovery represents all possible responsive computer-based information*** in Plaintiff's possession, custody, and control." (ECF No. 146-9 at 3, 12, 14 (emphases added).)

The cases cited by Plaintiff in opposition are unavailing. In *Goines v. Lee Mem'l Health Sys.*, the court declined to impose Rule 26(g) sanctions where there was *one* responsive Facebook post that had not been produced, expressly noting that counsel "would not have been able to access the account to check for responsive posts" because it had been either deactivated

or deleted and therefore could not "independently verify" whether any existed. No. 2:17-cv-656-FtM-29NPM, 2019 WL 4016147, at *5 (M.D. Fla. Aug. 26, 2019). Here, Plaintiff claimed to have no responsive electronic communications when there were, in reality, at least *hundreds* of e-mails and Slack messages in accounts that were identified and accessible. SLG should have immediately taken steps to investigate and remedy the obvious deficiencies in Plaintiff's March 15 production. Instead, SLG simply repeated its false representations. *See, e.g.*, ECF No. 146-10 at 2-3 (Mr. Botwin representing on May 10 that "[t]here are no responsive emails").

Likewise, in *Tampa Port Auth. v. M/V Duchess*, the court expressly recognized that Rule 26(g) requires "that the attorney had [made] a reasonable effort to assure his client has provided all of the responsive documents" and noted that the relevant attorneys had "assisted in gathering the documents" and "reviewed the documents for relevancy and privilege." No. 94-1727-CIV-T-23C, 1997 WL 1175718, at *6 (M.D. Fla. June 6, 1997). Here, Mr. Touizer testified that he led the search for responsive documents, that no one other than his two employees was involved, and that he, himself, made relevancy determinations based on his "own intelligence" even though he could not testify that he had read Defendants' Requests. (Mot. at 10-11.) Further, the court in *Tampa Port Auth.* imposed Rule 37 sanctions, including the payment of fees and costs incurred "in conducting supplemental discovery, filing the motion for sanctions, and for appearing at the sanctions hearing" after noting that "[a]ll of the documents were in plaintiff's possession throughout th[e] case and were easily discoverable." 1997 WL 1175718, at *8-9.[6]

Plaintiff's attempts to distinguish the cases cited by Defendants also fall flat. *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2006) is directly on point and Plaintiff's attempt to distinguish it by arguing the attorney in *Bernal* filed a false affidavit

---

[6] The other cases cited by Plaintiff are inapposite. *Scanlon v. N3, LLC*, which Plaintiff cites for the proposition that "absent reason to doubt a client's veracity, an attorney is entitled to rely on a client for information for which there is no other source," (Mot. at 11), does not even address Rule 26(g) and is distinguishable because here there *were* other sources of the responsive information, which Plaintiff at all times had access to. No. 1:08-CV-1069, 2009 WL 10699687 (N.D. Ga. May 26, 2009). And *Moore v. Publicis Groupe* is a Southern District of New York case that does not apply the law of this Circuit; it also involved "over three million e-mails," leading the court to observe that "no lawyer using any search method could honestly certify that its production is 'complete.'" 287 F.R.D. 182, 188 (S.D.N.Y. 2012). Here, Plaintiff has produced fewer than 1,000 e-mails, and SLG certified completeness notwithstanding that e-mails had not even been collected from all three of Plaintiff's employees and nobody had searched the company's "primary method" of business communications.

ignores that it was not the basis for the court's recommendation of Rule 26(g) sanctions. (Opp. at 12.) As relevant here, the *Bernal* court recommended sanctions—including attorneys' fees— against both the lawyer and client under Rule 26(g) due to the lawyer's certification of false interrogatory responses that were "highly improbable" and his failure to "make a reasonable investigation to assure that his clients had provided all available responsive information." 479 F. Supp. 2d at 1333-34. Those same circumstances exist here. So too with *In re Delta/AirTran Baggage Fee Antitrust Litig.*, in which the court imposed monetary sanctions under Rule 26(g) because "Delta repeatedly represented to the Court and Plaintiffs that it had produced 'a full and complete record'" but "[t]ime has proved those representations to be woefully inaccurate." 846 F. Supp. 2d 1335, 1353 & n.13 (N.D. Ga. 2012). Plaintiff's attempt to distinguish *Venator* based on the purported lack of prejudice to Defendants is equally unavailing. As noted above, the court in *Venator* recognized that prejudice is not a requirement for sanctions and imposed monetary sanctions pursuant to Rule 26(g) where "defendants and defense counsel ha[d] consistently failed to turn over important discoverable documents . . . and engage in the reasonable inquiries required by Rule 26(g)." 2016 U.S. Dist. LEXIS 50964, at *35. And, as discussed above and in the Motion, Defendants have suffered prejudice.

Finally, in *EEOC v. M1 5100 Corp.*, the court was "greatly trouble[d] and concern[ed]" by the "'self-collection' of discovery documents, and especially of ESI, by [a party] . . . without adequate knowledge, supervision, or participation by counsel," but declined to order an inspection *at that time* because there were still five months left in the discovery period and expressly reserved jurisdiction as to "an award of costs and attorney's fees." No. 19-cv-81320, 2020 U.S. Dist. LEXIS 117243, at *4, 10-11, 13 (S.D. Fla. July 2, 2020). Here, not only did Plaintiff fail to produce *any* responsive communications until three weeks before the fact discovery deadline, but these productions followed *months* of false representations about the completeness of production. (Mot. at 8-9, 12 & n.6.) Rule 26(g) sanctions are certainly appropriate. *See In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d at 1351 (imposing sanctions where failure to conduct a reasonable investigation was "compound[ed]" by "repeated" and "unequivocal nature of [] representations" that party "had produced everything").

Sanctions are likewise appropriate under 28 U.S.C. § 1927 because SLG's "objectively reckless" conduct is "sufficient to justify sanctions under § 1927 even if the attorney does not act knowingly and malevolently." *Taverna Imps., Inc. v. A&M Wine & Spirits, Inc.*, No. 15-24198-

8

CIV, 2018 U.S. Dist. LEXIS 125906, at *25 (S.D. Fla. July 27, 2018); *Bernal*, 479 F. Supp. 2d at 1332 ("Reckless conduct" is "conduct that grossly deviates from reasonable conduct"). Plaintiff misreads *Bernal*, in which the court found that the attorney "was reckless . . . when he relied solely on the word of his client" before filing a false affidavit solicited by his client from a third-party. *Id*. at 1303, 1332. Here, SLG certified multiple false, sworn-to discovery responses and made repeated misrepresentations to Defendants and the Court based "solely on the word" of its client, despite obvious red flags. This resulted in numerous additional discovery requests and proceedings that otherwise would not have been necessary, justifying sanctions under § 1927. *See id.* at 1332-33; Mot. at 17 & n.8.[7]

### B. Sanctions Should Be Imposed on Plaintiff Pursuant to Fed. R. Civ. P. 37(c)

Plaintiff largely ignores the substantial body of case law from this Circuit cited by Defendants holding that sanctions under Rule 37(c)(1) are warranted under the circumstances to compensate parties for unnecessarily incurred expense and to deter future misconduct. *See, e.g.*, Mot. at 19-20 (collecting cases); *see also First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*, No. 3:12-cv-281-J-32MCR, 2015 U.S. Dist. LEXIS 117123, at *28, 34-35 (M.D. Fla. Mar. 2, 2015) ("[T]he sheer number of supplemental responses and the volume of documents produced after claiming that all responsive documents have been produced, which turned out to be false, in the face of Plaintiff's inquiries and statements that responsive documents did exist, . . . indicates that Defendant made no reasonable inquiry to ensure that all responsive documents have been produced and constitutes, at a minimum, gross negligence rising to the level of bad faith.").

Rather than address this on-point authority, Plaintiff cites to four cases that do not address Rule 37(c), (Opp. at 15-16),[8] and *Swofford v. Eslinger*, in which the court denied as

---

[7] The Court may properly consider Defendants' request under 28 U.S.C. § 1927 because the legal and factual bases have been adequately briefed by the parties. *See, e.g.*, *Mitchell v. Sch. Bd.*, No. 19-CV-81534, 2021 U.S. Dist. LEXIS 58313, at *32 (S.D. Fla. Mar. 25, 2021) (addressing claim raised in footnote on the "merits" because "the parties have adequately briefed the relevant issues").

[8] *See Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 681, 685 (S.D. Fla. 2012) (motion to compel under Rule 37(a)); *Valdes v. Greater Naples Fire Rescue Dist.*, No. 2:17-cv-417-FtM-29CM, 2018 WL 4281472, at *1-2 (M.D. Fla. Sep. 7, 2018) (same); *Indep. Mktg. Grp. v. Keen*, No. 3:11-cv-447-J-25MCR, 2012 WL 207032, at *1-2 (M.D. Fla. Jan. 24, 2012) (same); *New Wave Innovations, Inc. v. McClimond*, No. 13-22541-CIV-COOKE/TORRES, 2014 WL 11906628, at *1, 3 (S.D. Fla. July 8, 2014) (no sanctions under Rule 37(b) where party had not

untimely a request brought "[w]ell after the conclusion of the discovery period" to re-open discovery (with associated fees) and for an adverse inference instruction. No. 6:08-cv-66-Orl-35, 2009 WL 1025223, at *1 (M.D. Fla. Apr. 14, 2009).

The only cited case that Plaintiff attempts to address is *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667 (M.D. Fla. 2008) ("*AMD*"), arguing in summation that, "[i]n essence, for this Court to impose sanctions *against* Scanz under the circumstances would support the novel proposition that a plaintiff with colorable claims has lost its right to sue or must face sanctions simply because its emails were inadvertently lost." (Mot. at 15.) Not so. Once again, Plaintiff narrowly focuses on the purported "corruption" event, arguing that, unlike in *AMD*, "Defendants here were well-aware of the undisputed evidence that Plaintiff lost its emails for reasons beyond its control." (Mot. at 15.) That is not true. The "undisputed evidence" is that Plaintiff did *not* lose its e-mails; even many of Mr. Touizer's purportedly "lost" e-mails were, in fact, available. But, more importantly, Plaintiff entirely fails to address why it did not disclose the so-called "corruption" event until questioned by Defendants, nor has it ever attempted to explain how that event—which covered a single e-mail account for a period pre-dating 2016—excuses its failure to produce *any* responsive communications, from *any* account (e-mail or Slack), from *any* time period, when such documents indisputably existed and were readily accessible. Such misconduct is *exactly* what the court in *AMD* sanctioned. *See AMD*, 251 F.R.D. at 675 (plaintiff failed to disclose that certain e-mails were "unrecoverable" at the time "it initially responded to [defendant's] document request"); *id*. (plaintiff made "sporadic and incomplete document production" after asserting requests had been "fully responded to" and caused defendant to incur "unnecessary expense and delays in attempting to obtain [] compliance with legitimate discovery requests"); *id.* (plaintiff failed "to produce any responsive internal documents between [its] employees" or other responsive e-mails that "would not have been affected by [plaintiff's] alleged server problem"). Sanctions here are likewise warranted.

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion and award Defendants their requested relief, along with any such further relief that the Court deems just and proper.

---

violated court order, but leaving open possibility of future sanctions upon a showing that "representations [about the completeness of production] were incorrect"). Plaintiff and SLG have made repeated misrepresentations about the completeness of production.

| | |
|---|---|
| Dated:  June 29, 2021 | Respectfully Submitted, |

/s/ *Justin B. Elegant*
Justin B. Elegant
Florida Bar No. 0134597
Sabrina T. Zarco
Florida Bar No. 1025800
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Phone: (305) 755-9500
jelegant@bergersingerman.com
szarco@bergersingerman.com

ALSTON & BIRD LLP
Brett D. Jaffe (admitted *pro hac vice*)
Steven R. Campbell (admitted *pro hac vice*)
Gregg A. Fish (admitted *pro hac vice*)
90 Park Avenue
New York, New York 10016-1387
Phone: 212-210-9400
brett.jaffe@alston.com
steven.campbell@alston.com
gregg.fish@alston.com

David S. Frist (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309-3424
Phone: 404-881-7000
david.frist@alston.com

*Attorneys for Defendants Jewmon Enterprises, LLC, Timothy Sykes, Millionaire Publishing, LLC, and Millionaire Media, LLC*

SQUIRE PATTON BOGGS (US) LLP
Raúl B. Mañón
Florida Bar No. 18847
200 South Biscayne Boulevard, Suite 4700
Miami, FL 33131
Phone: +1 305-577-7000
raul.manon@squirepb.com

Gabriel Colwell (admitted *pro hac vice*)
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Phone: +1 213-689-5126
gabriel.colwell@squirepb.com

Joseph A. Meckes (admitted *pro hac vice*)
275 Battery Street, Suite 2600
San Francisco, CA 94111
Phone: +1 415-954-0201
joseph.meckes@squirepb.com

*Attorneys for Defendants StocksToTrade.com, Inc. and Zachary Westphal*